**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| ContentGuard Holdings, Inc.,<br><br>         Plaintiff,<br><br>  -against-<br><br>Amazon.com, Inc.; Apple Inc.; BlackBerry Corporation (fka Research In Motion Corporation); Huawei Device USA, Inc.; and Motorola Mobility LLC.<br><br>         Defendants. | Civil Action No. 2:13-cv-1112<br><br>JURY TRIAL DEMANDED |

## COMPLAINT FOR PATENT INFRINGEMENT

ContentGuard Holdings, Inc. ("ContentGuard"), by and through its undersigned attorneys, based upon personal knowledge with respect to its own actions and on information and belief as to other matters, for its complaint avers as follows:

### THE PARTIES

**A.  ContentGuard**

1.  ContentGuard is a leading innovator, developer, and licensor of digital rights management ("DRM") and related digital content distribution products and technologies. ContentGuard is a corporation organized under the laws of the state of Texas with its principal place of business at 6900 N. Dallas Parkway, Suite 850, Plano, Texas, 75024.

2.  ContentGuard's long history of innovation in the DRM space began in the 1990s at Xerox Corporation's legendary Palo Alto Research Center ("Xerox PARC"), where brilliant scientists envisioned a future in which people would rely on the Internet to supply the broadest

array of digital content the world had ever seen.  At that time, however, no one had yet invented an effective means to prevent piracy of digital content, which could be readily copied and distributed by personal computers.  Many believed that the problem was essentially unsolvable— and that, as a consequence, the distribution of movies, videos, music, books, "apps," and other digital content over the Internet would be blocked by copyright owners and others with a vested interest in protecting such content.

3.      A well-known commentator—John Perry Barlow—summarized the "digitized property" challenge as follows: "If our property can be infinitely reproduced and instantaneously distributed all over the planet without cost, without our knowledge, without its even leaving our possession, how can we protect it?  How are we going to get paid for the work we do with our minds?  And, if we can't get paid, what will assure the continued creation and distribution of such work?  Since we don't have a solution to what is a profoundly new kind of challenge, and are apparently unable to delay the galloping digitization of everything not obstinately physical, we are sailing into the future on a sinking ship."

4.      While they fully understood the "profoundly new kind of challenge" posed by the arrival of the Internet, Xerox PARC's scientists had a different vision of the future, firmly believing that a solution to what Barlow called the "immense, unsolved conundrum . . . of digitized property" could in fact be found.  Xerox PARC's scientists thus began to explore DRM solutions that would not only prevent piracy, but would also enable musicians, authors, photographers, publishers, and producers to share, track, and control their content.  Through a series of revolutionary inventions in the 1990s, Xerox PARC's scientists laid the technological foundation for what would ultimately become the prevailing paradigm for distributing digital content over the Internet.

5.     In 2000, Xerox Corporation partnered with Microsoft Corporation to form a new company, ContentGuard, to pursue the DRM business.  Xerox contributed key personnel, as well as all of its then-existing and future DRM-related inventions and technologies to ContentGuard. In the press release announcing the formation of ContentGuard, Steve Ballmer, Microsoft's President and Chief Executive Officer, hailed ContentGuard's innovations in the DRM space, noting that "the secure and safe delivery of digital media is of primary importance to not only everyone in the business of content distribution, but consumers of this information as well."  The joint Xerox and Microsoft press release announcing the formation of ContentGuard, and an advertisement produced at the time, are attached hereto as Exhibits A and B.

6.     Staffed by a team of scientists and technology veterans from Xerox and Microsoft, ContentGuard continued its path of innovation, developing both hardware and software solutions to solve the vexing problem of digital piracy.  ContentGuard has invested more than $100 million to develop these DRM solutions and bring them to market.

7.     ContentGuard expanded its commitment to research and innovation by developing end-to-end DRM systems and products embodying ContentGuard's inventions, an effort that continues today.  ContentGuard also provided DRM research expertise to various industry players that wished to have the freedom to custom-build and operate their own DRM systems.  In addition to its extensive collaboration with Microsoft, ContentGuard also partnered with companies such as Hewlett-Packard, Adobe, TimeWarner, and Accenture to assist them in developing DRM solutions.

8.     To further accelerate the evolution of the marketplace for digital content, ContentGuard also led the way in enabling industry groups to better understand DRM system requirements and to develop appropriate DRM specifications and industry standards that would

allow for DRM interoperability between content providers, distributors, and device manufacturers. Among other things, recognizing the need for standardized mechanisms to facilitate trusted interoperability between DRM systems, ContentGuard engineers developed a standards-based rights description language called eXtensible Rights Markup Language ("XrML"). XrML, which is deployed in Microsoft DRM products, advanced the state of the art of rights expression languages by introducing features such as improved identification capabilities of the digital resource, user, and issuer.

9. ContentGuard's important contributions to the DRM field have been widely recognized. The *New York Times* hailed ContentGuard as a "pioneer in th[e] field of digital-rights management." The *Los Angeles Times* similarly noted that ContentGuard held "the technological building blocks necessary to make the digital delivery of music, movies and other files secure." Another market commentator remarked that ContentGuard "has almost single-handedly driven DRM interoperability."

10. To this day, ContentGuard continues to innovate and invest in researching new and innovative DRM technologies and products that enable the distribution of rich multimedia content on smartphones, tablets, e-readers, laptop computers, smart televisions, set top boxes, and other electronic devices manufactured and sold worldwide. Among other things, ContentGuard recently released an "app" under its own name that allows users to share documents, PDFs, and photos securely and privately. To determine the areas of research and development investment, ContentGuard leverages the expertise of its engineers and product development team.

11. ContentGuard's DRM innovations remain immensely relevant—and immensely valuable—today. The availability of rich multimedia content is a key driver of the enormous

success experienced by manufacturers of devices such as smartphones, tablets, and e-readers—including Defendants—whose commercial value is largely driven by the capability of such devices to download, play, and display digital content. Without effective DRM protection, many owners of digital content would not allow their content to be available on those devices. As the president of the World Wide Web Consortium remarked in pointed language "Reject DRM and you risk walling off parts of the web."

12. Virtually every smartphone, tablet, and e-reader produced and sold around the world relies on ContentGuard's DRM technology. ContentGuard's new content-sharing "app" and other products that are currently under development similarly rely on ContentGuard's foundational DRM technology. Without that technology, many companies that invest billions of dollars to produce movies, videos, books, music, and "apps" would be unwilling to distribute such digital content over the Internet.

**B.  The Defendants**

13. Defendant Amazon.com Inc. ("Amazon") is a corporation organized under the laws of the State of Delaware and registered to do business in the State of Texas, with a principal place of business at 410 Terry Ave, North Seattle, WA 98109. Amazon is doing business and infringing ContentGuard's DRM patents in the Eastern District of Texas and elsewhere in the United States.

14. Defendant Apple, Inc. ("Apple") is a corporation organized under the laws of California and registered to do business in the State of Texas, with a principal place of business is 1 Infinite Loop, Cupertino, CA 95014. Apple is doing business and infringing ContentGuard's DRM patents in the Eastern District of Texas and elsewhere in the United States.

15. BlackBerry Corporation ("BlackBerry," fka Research In Motion Corporation) is a corporation organized and existing under the laws of the State of Delaware and registered to do

business in the State of Texas, with a principal place of business at 5000 Riverside Drive, Irving, Texas 75039.  BlackBerry is doing business and infringing ContentGuard's DRM patents in the Eastern District of Texas and elsewhere in the United States.

16.     Huawei Device USA, Inc. ("Huawei") is a corporation organized and existing under the laws of Texas and registered to do business in the State of Texas, with a principal place of business at 5700 Tennyson Parkway Suite 500, Plano, TX 75024.  Huawei is doing business and infringing ContentGuard's DRM patents in the Eastern District of Texas and elsewhere in the United States.

17.     Defendant Motorola Mobility LLC ("Motorola") is a corporation organized and existing under the laws of Delaware and registered to do business in the State of Texas, with a principal place of business at 1303 East Algonquin Road, Schaumberg, Illinois.  Motorola is doing business and infringing ContentGuard's DRM patents in the Eastern District of Texas and elsewhere in the United States.

### JURISDICTION AND VENUE

18.     This is a civil action arising in part under laws of the United States relating to patents (35 U.S.C. §§ 271, 281, 283, 284, and 285).  This court has federal jurisdiction of such federal question claims pursuant to 28 U.S.C. §§ 1331 and 1338(a).

19.     Personal jurisdiction is proper in the State of Texas and in this judicial district. Among other things, Defendants conduct business, sell infringing products, and are engaged in activities that lead to infringement of ContentGuard's DRM patents in the State of Texas and in this judicial district.

20.     Venue is proper under 28 U.S.C. §§ 1391(b) and 1400(b).

**THE PATENTS IN SUIT**

21.     On November 8, 2005, the USPTO duly and legally issued United States Patent No. 6,963,859 ("the '859 Patent") entitled "Content rendering repository."   ContentGuard holds all right, title and interest to the '859 Patent.   A true and correct copy of the '859 Patent is attached as Exhibit C.

22.     On April 21, 2009, the USPTO duly and legally issued United States Patent No. 7,523,072 ("the '072 Patent") entitled "System for controlling the distribution and use of digital works."   ContentGuard holds all right, title and interest to the '072 Patent.   A true and correct copy of the '072 Patent is attached as Exhibit D.

23.     On August 10, 2010, the USPTO duly and legally issued United States Patent No. 7,774,280 ("the '280 Patent") entitled "System and method for managing transfer of rights using shared state variables."   ContentGuard holds all right, title and interest to the '280 Patent.   A true and correct copy of the '280 Patent is attached as Exhibit E.

24.     On August 16, 2011, the USPTO duly and legally issued United States Patent No. 8,001,053 ("the '053 Patent") entitled "System and method for rights offering and granting using shared state variables."   ContentGuard holds all right, title and interest to the '053 Patent.   A true and correct copy of the '053 Patent is attached as Exhibit F.

25.     On September 11, 2007, the USPTO duly and legally issued United States Patent No. 7,269,576 ("the '576 Patent") entitled "Content rendering apparatus."   ContentGuard holds all right, title and interest to the '576 Patent.   A true and correct copy of the '576 Patent is attached as Exhibit G.

26.     On February 5, 2013, the USPTO duly and legally issued United States Patent No. 8,370,956 ("the '956 Patent") entitled "System and method for rendering digital content in

accordance with usage rights information."  ContentGuard holds all right, title and interest to the '956 Patent.  A true and correct copy of the '956 Patent is attached as Exhibit H.

27.     On March 5, 2013, the USPTO duly and legally issued United States Patent No. 8,393,007 ("the '007 Patent") entitled "System and method for distributing digital content in accordance with usage rights information."  ContentGuard holds all right, title and interest to the '007 Patent.  A true and correct copy of the '007 Patent is attached as Exhibit I.

28.     On May 29, 2007, the USPTO duly and legally issued United States Patent No. 7,225,160 ("the '160 Patent") entitled "Digital works having usage rights and method for creating the same."  ContentGuard holds all right, title and interest to the '160 Patent.  A true and correct copy of the '160 Patent is attached as Exhibit J.

29.     On November 12, 2013, the USPTO duly and legally issued United States Patent No. 8,583,556 ("the '556 Patent") entitled "Method for providing a digital asset for distribution."  ContentGuard holds all right, title and interest to the '556 Patent.  A true and correct copy of the '556 Patent is attached as Exhibit K.

## CONTENTGUARD'S EFFORTS TO LICENSE DEFENDANTS' USE OF ITS DRM TECHNOLOGIES

30.     Throughout its history, ContentGuard has prided itself in being an innovator and leader in the DRM field.  ContentGuard's revolutionary DRM technologies are embodied in its extensive portfolio of DRM patents and patent applications, which was developed during the past two decades and now comprises over 300 issued patents and 160 pending applications.

31.     Following its early partnerships with companies such as Hewlett-Packard, Adobe, Microsoft, Technicolor and TimeWarner, ContentGuard successfully licensed its DRM technologies for use in smartphones and tablets to companies around the world, including Casio, Fujitsu, Hitachi, LG Electronics, NEC, Nokia, Panasonic, Pantech, Sanyo, Sharp, Sony, Toshiba,

and others.   These companies embraced ContentGuard's DRM technologies and agreed to license use of those technologies for substantial royalties.

32.     ContentGuard's numerous patent license agreements were executed without ContentGuard having to take legal action, or even threaten litigation, to protect its intellectual property rights.

33.     Defendants have refused to take a license, instead choosing to infringe ContentGuard's DRM patents and free-ride, notwithstanding ContentGuard's willingness to accept the fair and reasonable terms agreed to by Defendants' competitors.

34.     ContentGuard has made numerous attempts to negotiate a license agreement with Amazon.  Despite ContentGuard's good-faith efforts, Amazon has refused to pay for its use of ContentGuard's DRM technologies.

35.     ContentGuard has made numerous attempts to negotiate a license agreement with Apple.   Despite ContentGuard's good-faith efforts, Apple has refused to pay for its use of ContentGuard's DRM technologies.

36.     ContentGuard has made numerous attempts to negotiate a license agreement with BlackBerry.  Despite ContentGuard's good-faith efforts, BlackBerry has refused to pay for its use of ContentGuard's DRM technologies.

37.     ContentGuard has made numerous attempts to negotiate a license agreement with Huawei.  Despite ContentGuard's good-faith efforts, Huawei has refused to pay for its use of ContentGuard's DRM technologies.

38.     ContentGuard has made numerous attempts to negotiate a license agreement with Motorola.  Despite ContentGuard's good-faith efforts, Motorola has refused to pay for its use of ContentGuard's DRM technologies.

39.     Defendants' refusal to agree to pay for their use of ContentGuard's DRM technologies on the fair and reasonable terms and conditions agreed to by competitors has left ContentGuard no choice but to commence this litigation.

## DEFENDANTS' COMMON ACTS OF INFRINGEMENT

40.     Defendants are properly joined in this action because (a) ContentGuard's claims herein are based on the same transaction(s), occurrence(s) or series of transactions or occurrences relating to Defendants' making, using, offering for sale, and selling of the accused products and processes; and (b) questions of fact common to all Defendants will arise in the action.

41.     For example, all Defendants (a) provide access to the Amazon Kindle "app," either preloaded or via their online stores, on one or more of their devices, (b) provide hardware and software components required by the claims of the ContentGuard DRM patents to enable the Kindle DRM solution to operate on their devices, and/or (c) test the Amazon Kindle "app" to ensure it will work reliably for users of their devices.  These devices include, merely by way of example, the Apple iPad, the Amazon Kindle Fire, the BlackBerry Z10, the Huawei Ascend, and the Motorola Moto X.  In each of these devices and many other devices supplied by Defendants, the Amazon Kindle "app" is and has been used to practice ContentGuard's DRM patents.

42.     In addition, there is a logical relationship and many actual links between the infringement claims against the Defendants arising out of their common use of the Amazon Kindle "app."  Amazon supplies the Kindle "app" that is used by all Defendants and/or their customers to practice the claimed inventions, and the Kindle "app" operates the same way relative to the patents in providing the claimed DRM functionality on Defendants' products.  Moreover, on information and belief, there are licensing and/or technology agreements between Amazon and the other Defendants in connection with the Kindle "app," and, on information and belief, Amazon and the other Defendants collaborate in developing, testing, supporting, and/or

optimizing the Kindle "app" for the different accused products.  These are just a few of the many actual links between the infringement claims against Amazon and the other Defendants indicating that all the Defendants have been properly joined in this action.

43.     Similarly, on information and belief, each of the Defendants have accused products and methods that use one or more of the Google Play "apps" (Google Play Books, Google Play Movies, and Google Play Music) to practice the claimed inventions.  For example, Google Play Books and Google Play Music are available and have been used in accused devices made by each of the Defendants, including, merely by way of example, the Apple iPad, the Amazon Kindle Fire, the BlackBerry Z10, the Huawei Ascend, and the Motorola Moto X.  In each of these devices and many other devices supplied by Defendants, Google Play Books and Google Play Music are and have been used to practice ContentGuard's DRM patents.  In addition, Google Play Movies is and has been used to practice ContentGuard's DRM patents on accused devices.

44.     In addition, there is a logical relationship and many actual links between the infringement claims against the Defendants arising out of their common use of the Google Play "apps".  Google supplies the Google Play "apps" that are used by all Defendants to practice the claimed inventions, and the Google Play "apps" operate the same way relative to the patents in providing the claimed DRM functionality on Defendants' products.  These are just a few of the many actual links between the infringement claims against the Defendants in relation to the Google Play "apps" indicating that all the Defendants have been properly joined in this action.

45.     Similarly, on information and belief, each of the Defendants have accused products and methods that implement one or more versions of a standard known as Unique Identifier Technology Solution or "UITS."  UITS is a specification that describes a way to

embed metadata into unprotected media files so that it is possible to detect when the metadata is modified.  The UITS specification requires metadata about the content and distributor, and identifiers that distinguish between different purchase events.  The metadata is arranged in a standard way and is cryptographically signed so that tampering can be detected.  UITS can be used for a number of different purposes, such as communicating the copyright or parental advisory status of a file, verifying retailer sales, transporting redemption codes, and more. Products practicing the UITS specification infringe at least the '556 patent.  Accused devices made by each of the Defendants, including, merely by way of example, the Apple iPad, the Amazon Kindle Fire, the BlackBerry Z10, the Huawei Ascend, and the Motorola Moto X, practice the UITS specification.

46.    For these reasons, infringement issues in this case will include for all defendants common questions of fact concerning the Kindle application, the Google Play "apps," and the UITS specification, resulting in substantial evidentiary overlap with respect to the design and operation of the accused devices, as applied to the claims of the asserted patents.

## COUNT 1:  INFRINGEMENT OF THE '859 PATENT

### (AGAINST ALL DEFENDANTS)

47.    Paragraphs 1 through 46 are incorporated by reference as if fully stated herein.

48.    Amazon has been and is now directly infringing and/or indirectly infringing the '859 Patent by way of inducement and/or contributory infringement, literally and/or under the doctrine of equivalents, in this District, and elsewhere, in violation of 35 U.S.C. § 271, including by making, using, selling, and/or offering for sale in the United States or importing into the United States products covered by at least one claim of the '859 Patent.  Amazon has notice of the '859 Patent.  Amazon actively induces content providers and/or end users  of Amazon

products to infringe the '859 Patent by, among other things, (a) providing access to certain "apps" (such as the iTunes client, the Amazon Kindle, Amazon Instant Video, and/or Google Play "apps") that use the ContentGuard DRM solution claimed in the '859 Patent, (b) providing instructions for using such "apps"; (c) providing advertisings for using such "apps"; and (d) providing hardware and software components required by the claims of the '859 Patent.[1] Amazon engages in the foregoing activities because it specifically intends end users of Amazon products to use "apps" that deploy, and content providers to distribute content that is protected by, the ContentGuard DRM solutions claimed in the '859 Patent.  Amazon thereby specifically intends end users and content providers to infringe the '859 Patent.  Amazon derives revenue from both its own and the third-party infringers' infringing activities.  Indeed, Amazon's ability to sell the accused products is wholly dependent upon the availability of these "apps" and the digital content they make available to users.  Amazon also contributorily infringes the '859 Patent because there is no substantial non-infringing use of these "apps" on the accused Amazon products.  These "apps" cannot be used with accused Amazon products without infringing the '859 Patent.

49.     Apple has been and is now directly infringing and/or indirectly infringing the '859 Patent by way of inducement and/or contributory infringement, literally and/or under the doctrine of equivalents, in this District, and elsewhere, in violation of 35 U.S.C. § 271, including by making, using, selling, and/or offering for sale in the United States or importing into the

---

[1] *See, e.g.*, http://www.amazon.com/kindle-fire-hd-best-family-kids-tablet/dp/B00CU0NSCU; http://www.amazon.com/gp/help/customer/display.html?nodeId=201240840; http://www.amazon.com/gp/feature.html/ref=kcp_iph_ln_ar?docId=1000301301; http://www.amazon.com/gp/help/customer/display.html?nodeId=200729450; http://www.amazon.com/gp/help/customer/display.html?nodeId=201009460; http://www.amazon.com/kindle-fire-hd-best-family-kids-tablet/dp/B00CU0NSCU; https://developer.amazon.com/sdk/fire/specifications.html.

United States products covered by at least one claim of the '859 Patent.  Apple has notice of the '859 Patent.  Apple actively induces content providers and/or end users  of Apple products to infringe the '859 Patent by, among other things, (a) providing access to certain "apps" (such as the iTunes client, the Amazon Kindle, Amazon Instant Video, and/or Google Play "apps") that use the ContentGuard DRM solution claimed in the '859 Patent, (b) providing instructions for using such "apps"; (c) providing advertisings for using such "apps"; and (d) providing hardware and software components required by the claims of the '859 Patent.[2]  Apple engages in the foregoing activities because it specifically intends end users of Apple products to use "apps" that deploy, and content providers to distribute content that is protected by, the ContentGuard DRM solutions claimed in the '859 Patent.  Apple thereby specifically intends end users and content providers to infringe the '859 Patent.  Apple derives revenue from both its own and the third-party infringers' infringing activities.  Indeed, Apple's ability to sell the accused products is wholly dependent upon the availability of these "apps" and the digital content they make available to users.  Apple also contributorily infringes the '859 Patent because there is no substantial non-infringing use of these "apps" on the accused Apple products.  These "apps" cannot be used with accused Apple products without infringing the '859 Patent.

50.     BlackBerry has been and is now directly infringing and/or indirectly infringing the '859 Patent by way of inducement and/or contributory infringement, literally and/or under

---

[2] *See, e.g.*, http://www.apple.com/itunes/features/#store;
http://www.apple.com/itunes/;
https://itunes.apple.com/in/app/kindle/id302584613;
https://itunes.apple.com/us/app/google-play-books/id400989007;
https://itunes.apple.com/us/app/app-for-google-music-free/id485638799;
https://itunes.apple.com/us/app/google-tv-remote/id422137859?l=es&mt=8;
http://www.apple.com/in/iphone-5s/specs/;
http://www.apple.com/in/ipad/specs/;
http://www.apple.com/in/ipod-touch/specs.html.

the doctrine of equivalents, in this District, and elsewhere, in violation of 35 U.S.C. § 271, including by making, using, selling, and/or offering for sale in the United States or importing into the United States products covered by at least one claim of the '859 Patent.  BlackBerry has notice of the '859 Patent.  BlackBerry actively induces content providers and/or end users  of BlackBerry products to infringe the '859 Patent by, among other things, (a) providing access to certain "apps" (such as the iTunes client, the Amazon Kindle, Amazon Instant Video, and/or Google Play "apps") that use the ContentGuard DRM solution claimed in the '859 Patent, (b) providing instructions for using such "apps"; (c) providing advertisings for using such "apps"; and (d) providing hardware and software components required by the claims of the '859 Patent.[3] BlackBerry engages in the foregoing activities because it specifically intends end users of BlackBerry products to use "apps" that deploy, and content providers to distribute content that is protected by, the ContentGuard DRM solutions claimed in the '859 Patent.  BlackBerry thereby specifically intends end users and content providers to infringe the '859 Patent.   BlackBerry derives revenue from both its own and the third-party infringers' infringing activities.   Indeed, BlackBerry's ability to sell the accused products is wholly dependent upon the availability of these "apps" and the digital content they make available to users.  BlackBerry also contributorily infringes the '859 Patent because there is no substantial non-infringing use of these "apps" on the accused BlackBerry products.  These "apps" cannot be used with accused BlackBerry products without infringing the '859 Patent.

---

[3] *See, e.g.*, http://in.blackberry.com/apps/blackberry-world.html#tab-1;
http://appworld.blackberry.com/webstore/content/25058915/?countrycode=IN&lang=en;
http://appworld.blackberry.com/webstore/content/65525/?countrycode=US&lang=en;
http://in.blackberry.com/apps/blackberry-world.html#tab-1;
http://appworld.blackberry.com/webstore/content/25058915/?countrycode=IN&lang=en;
http://in.blackberry.com/smartphones/blackberry-z30/specifications.html.

51.     Huawei has been and is now directly infringing and/or indirectly infringing the '859 Patent by way of inducement and/or contributory infringement, literally and/or under the doctrine of equivalents, in this District, and elsewhere, in violation of 35 U.S.C. § 271, including by making, using, selling, and/or offering for sale in the United States or importing into the United States products covered by at least one claim of the '859 Patent.  Huawei has notice of the '859 Patent.   Huawei actively induces content providers and/or end users  of Huawei products to infringe the '859 Patent by, among other things, (a) providing access to certain "apps" (such as the iTunes client, the Amazon Kindle, Amazon Instant Video, and/or Google Play "apps") that use the ContentGuard DRM solution claimed in the '859 Patent, (b) providing instructions for using such "apps"; (c) providing advertisings for using such "apps"; and (d) providing hardware and software components required by the claims of the '859 Patent.[4] Huawei engages in the foregoing activities because it specifically intends end users of Huawei products to use "apps" that deploy, and content providers to distribute content that is protected by, the ContentGuard DRM solutions claimed in the '859 Patent.  Huawei thereby specifically intends end users and content providers to infringe the '859 Patent.  Huawei derives revenue from both its own and the third-party infringers' infringing activities.  Indeed, Huawei's ability to sell the accused products is wholly dependent upon the availability of these "apps" and the digital content they make available to users.  Huawei also contributorily infringes the '859 Patent

---

[4] *See, e.g.*, http://huaweimobile.com;
http://www.huaweidevice.com/worldwide/productMobile.do?method=index&directoryId=6001&treeId=3745;
http://www.huaweidevice.com/worldwide/productFeatures.do?pinfoId=3298&directoryId=6001&treeId=3745&tab=0;
http://www.huaweidevice.com/worldwide/technicaIndex.do?method=gotoProductSupport&prodId=3942&tb=0%29;
http://www.huaweidevice.com/worldwide/downloadCenter.do?method=toDownloadFile&flay=document&softid=NDcxOTM=;
http://www.uscellular.com/uscellular/pdf/huawei-ascend-y-google-play.pdf.

because there is no substantial non-infringing use of these "apps" on the accused Huawei products.  These "apps" cannot be used with accused Huawei products without infringing the '859 Patent.

52.     Motorola has been and is now directly infringing and/or indirectly infringing the '859 Patent by way of inducement and/or contributory infringement, literally and/or under the doctrine of equivalents, in this District, and elsewhere, in violation of 35 U.S.C. § 271, including by making, using, selling, and/or offering for sale in the United States or importing into the United States products covered by at least one claim of the '859 Patent.  Motorola has notice of the '859 Patent.  Motorola actively induces content providers and/or end users  of Motorola products to infringe the '859 Patent by, among other things, (a) providing access to certain "apps" (such as the iTunes client, the Amazon Kindle, Amazon Instant Video, and/or Google Play "apps") that use the ContentGuard DRM solution claimed in the '859 Patent, (b) providing instructions for using such "apps"; (c) providing advertisings for using such "apps"; and (d) providing hardware and software components required by the claims of the '859 Patent.[5] Motorola engages in the foregoing activities because it specifically intends end users of Motorola products to use "apps" that deploy, and content providers to distribute content that is protected by, the ContentGuard DRM solutions claimed in the '859 Patent.  Motorola thereby specifically intends end users and content providers to infringe the '859 Patent.  Motorola derives revenue from both its own and the third-party infringers' infringing activities.  Indeed, Motorola's ability

---

[5] *See, e.g.*, http://www.motorola.com/us/FLEXR1-1/Moto-X/FLEXR1.html;
https://motorola-global-
portal.custhelp.com/app/product_page/faqs/p/30,6720,8882/session/L3RpbWUvMTM4Mzc3MT
A0MS9zaWQvblhuRklIRWw%3D#/how_do_i;
http://www.motorola.com/us/ANDROID/m-Android-Overview.html;
http://www.mobileworldlive.com/verizon-preloads-amazon-kindle-app-on-android-devices;
https://motorola-global-portal.custhelp.com/app/answers/detail/a_id/70762/action/auth.

to sell the accused products is wholly dependent upon the availability of these "apps" and the digital content they make available to users.  Motorola also contributorily infringes the '859 Patent because there is no substantial non-infringing use of these "apps" on the accused Motorola products.  These "apps" cannot be used with accused Motorola products without infringing the '859 Patent.

## COUNT 2:  INFRINGEMENT OF THE '072 PATENT

## (AGAINST ALL DEFENDANTS)

53.     Paragraphs 1 through 46 are incorporated by reference as if fully stated herein.

54.     Amazon has been and is now directly infringing and/or indirectly infringing the '072 Patent by way of inducement and/or contributory infringement, literally and/or under the doctrine of equivalents, in this District, and elsewhere, in violation of 35 U.S.C. § 271, including by making, using, selling, and/or offering for sale in the United States or importing into the United States products covered by at least one claim of the '072 Patent.  Amazon has notice of the '072 Patent.  Amazon actively induces content providers and/or end users  of Amazon products to infringe the '072 Patent by, among other things, (a) providing access to certain "apps" (such as the iTunes client, the Amazon Kindle, Amazon Instant Video, and/or Google Play "apps") that use the ContentGuard DRM solution claimed in the '072 Patent, (b) providing instructions for using such "apps"; (c) providing advertisements for using such "apps"; and (d) providing hardware and software components required by the claims of the '072 Patent.[6]

---

[6] *See, e.g.*, http://www.amazon.com/kindle-fire-hd-best-family-kids-tablet/dp/B00CU0NSCU;
http://www.amazon.com/gp/help/customer/display.html?nodeId=201240840;
http://www.amazon.com/gp/feature.html/ref=kcp_iph_ln_ar?docId=1000301301;
http://www.amazon.com/gp/help/customer/display.html?nodeId=200729450;
http://www.amazon.com/gp/help/customer/display.html?nodeId=201009460;
http://www.amazon.com/kindle-fire-hd-best-family-kids-tablet/dp/B00CU0NSCU;
https://developer.amazon.com/sdk/fire/specifications.html.

Amazon engages in the foregoing activities because it specifically intends end users of Amazon products to use "apps" that deploy, and content providers to distribute content that is protected by, the ContentGuard DRM solutions claimed in the '072 Patent. Amazon thereby specifically intends end users and content providers to infringe the '072 Patent. Amazon derives revenue from both its own and the third-party infringers' infringing activities. Indeed, Amazon's ability to sell the accused products is wholly dependent upon the availability of these "apps" and the digital content they make available to users. Amazon also contributorily infringes the '072 Patent because there is no substantial non-infringing use of these "apps" on the accused Amazon products. These "apps" cannot be used with accused Amazon products without infringing the '072 Patent.

55. Apple has been and is now directly infringing and/or indirectly infringing the '072 Patent by way of inducement and/or contributory infringement, literally and/or under the doctrine of equivalents, in this District, and elsewhere, in violation of 35 U.S.C. § 271, including by making, using, selling, and/or offering for sale in the United States or importing into the United States products covered by at least one claim of the '072 Patent. Apple has notice of the '072 Patent. Apple actively induces content providers and/or end users of Apple products to infringe the '072 Patent by, among other things, (a) providing access to certain "apps" (such as the iTunes client, the Amazon Kindle, Amazon Instant Video, and/or Google Play "apps") that use the ContentGuard DRM solution claimed in the '072 Patent, (b) providing instructions for using such "apps"; (c) providing advertisements for using such "apps"; and (d) providing hardware and software components required by the claims of the '072 Patent.[7] Apple engages in the

---

[7] *See, e.g.*, http://www.apple.com/itunes/features/#store;
http://www.apple.com/itunes/;
https://itunes.apple.com/in/app/kindle/id302584613;

foregoing activities because it specifically intends end users of Apple products to use "apps" that deploy, and content providers to distribute content that is protected by, the ContentGuard DRM solutions claimed in the '072 Patent.  Apple thereby specifically intends end users and content providers to infringe the '072 Patent.  Apple derives revenue from both its own and the third-party infringers' infringing activities.  Indeed, Apple's ability to sell the accused products is wholly dependent upon the availability of these "apps" and the digital content they make available to users.  Apple also contributorily infringes the '072 Patent because there is no substantial non-infringing use of these "apps" on the accused Apple products.  These "apps" cannot be used with accused Apple products without infringing the '072 Patent.

56.     BlackBerry has been and is now directly infringing and/or indirectly infringing the '072 Patent by way of inducement and/or contributory infringement, literally and/or under the doctrine of equivalents, in this District, and elsewhere, in violation of 35 U.S.C. § 271, including by making, using, selling, and/or offering for sale in the United States or importing into the United States products covered by at least one claim of the '072 Patent.  BlackBerry has notice of the '072 Patent.  BlackBerry actively induces content providers and/or end users  of BlackBerry products to infringe the '072 Patent by, among other things, (a) providing access to certain "apps" (such as the iTunes client, the Amazon Kindle, Amazon Instant Video, and/or Google Play "apps") that use the ContentGuard DRM solution claimed in the '072 Patent, (b) providing instructions for using such "apps"; (c) providing advertisings for using such "apps";

https://itunes.apple.com/us/app/google-play-books/id400989007;
https://itunes.apple.com/us/app/app-for-google-music-free/id485638799;
https://itunes.apple.com/us/app/google-tv-remote/id422137859?l=es&mt=8;
http://www.apple.com/in/iphone-5s/specs/;
http://www.apple.com/in/ipad/specs/;
http://www.apple.com/in/ipod-touch/specs.html.

and (d) providing hardware and software components required by the claims of the '072 Patent.[8] BlackBerry engages in the foregoing activities because it specifically intends end users of BlackBerry products to use "apps" that deploy, and content providers to distribute content that is protected by, the ContentGuard DRM solutions claimed in the '072 Patent.  BlackBerry thereby specifically intends end users and content providers to infringe the '072 Patent.  BlackBerry derives revenue from both its own and the third-party infringers' infringing activities.  Indeed, BlackBerry's ability to sell the accused products is wholly dependent upon the availability of these "apps" and the digital content they make available to users.  BlackBerry also contributorily infringes the '072 Patent because there is no substantial non-infringing use of these "apps" on the accused BlackBerry products.  These "apps" cannot be used with accused BlackBerry products without infringing the '072 Patent.

57.     Huawei has been and is now directly infringing and/or indirectly infringing the '072 Patent by way of inducement and/or contributory infringement, literally and/or under the doctrine of equivalents, in this District, and elsewhere, in violation of 35 U.S.C. § 271, including by making, using, selling, and/or offering for sale in the United States or importing into the United States products covered by at least one claim of the '072 Patent.  Huawei has notice of the '072 Patent.  Huawei actively induces content providers and/or end users  of Huawei products to infringe the '072 Patent by, among other things, (a) providing access to certain "apps" (such as the iTunes client, the Amazon Kindle, Amazon Instant Video, and/or Google Play "apps") that use the ContentGuard DRM solution claimed in the '072 Patent, (b) providing

---

[8] *See, e.g.*, http://in.blackberry.com/apps/blackberry-world.html#tab-1;
http://appworld.blackberry.com/webstore/content/25058915/?countrycode=IN&lang=en;
http://appworld.blackberry.com/webstore/content/65525/?countrycode=US&lang=en;
http://in.blackberry.com/apps/blackberry-world.html#tab-1;
http://appworld.blackberry.com/webstore/content/25058915/?countrycode=IN&lang=en;
http://in.blackberry.com/smartphones/blackberry-z30/specifications.html.

instructions for using such "apps"; (c) providing advertisings for using such "apps"; and (d) providing hardware and software components required by the claims of the '072 Patent.[9] Huawei engages in the foregoing activities because it specifically intends end users of Huawei products to use "apps" that deploy, and content providers to distribute content that is protected by, the ContentGuard DRM solutions claimed in the '072 Patent.  Huawei thereby specifically intends end users and content providers to infringe the '072 Patent.  Huawei derives revenue from both its own and the third-party infringers' infringing activities.  Indeed, Huawei's ability to sell the accused products is wholly dependent upon the availability of these "apps" and the digital content they make available to users.  Huawei also contributorily infringes the '072 Patent because there is no substantial non-infringing use of these "apps" on the accused Huawei products.  These "apps" cannot be used with accused Huawei products without infringing the '072 Patent.

58.     Motorola has been and is now directly infringing and/or indirectly infringing the '072 Patent by way of inducement and/or contributory infringement, literally and/or under the doctrine of equivalents, in this District, and elsewhere, in violation of 35 U.S.C. § 271, including by making, using, selling, and/or offering for sale in the United States or importing into the United States products covered by at least one claim of the '072 Patent.  Motorola has notice of the '072 Patent.  Motorola actively induces content providers and/or end users  of Motorola

---

[9] *See, e.g.*, http://huaweimobile.com;
http://www.huaweidevice.com/worldwide/productMobile.do?method=index&directoryId=6001
&treeId=3745;
http://www.huaweidevice.com/worldwide/productFeatures.do?pinfoId=3298&directoryId=6001
&treeId=3745&tab=0;
http://www.huaweidevice.com/worldwide/technicaIndex.do?method=gotoProductSupport&prod
uctId=3942&tb=0%29;
http://www.huaweidevice.com/worldwide/downloadCenter.do?method=toDownloadFile&flay=d
ocument&softid=NDcxOTM=;
http://www.uscellular.com/uscellular/pdf/huawei-ascend-y-google-play.pdf.

products to infringe the '072 Patent by, among other things, (a) providing access to certain "apps" (such as the iTunes client, the Amazon Kindle, Amazon Instant Video, and/or Google Play "apps") that use the ContentGuard DRM solution claimed in the '072 Patent, (b) providing instructions for using such "apps"; (c) providing advertisings for using such "apps"; and (d) providing hardware and software components required by the claims of the '072 Patent.[10] Motorola engages in the foregoing activities because it specifically intends end users of Motorola products to use "apps" that deploy, and content providers to distribute content that is protected by, the ContentGuard DRM solutions claimed in the '072 Patent.  Motorola thereby specifically intends end users and content providers to infringe the '072 Patent.  Motorola derives revenue from both its own and the third-party infringers' infringing activities.  Indeed, Motorola's ability to sell the accused products is wholly dependent upon the availability of these "apps" and the digital content they make available to users.  Motorola also contributorily infringes the '072 Patent because there is no substantial non-infringing use of these "apps" on the accused Motorola products.  These "apps" cannot be used with accused Motorola products without infringing the '072 Patent.

## COUNT 3:  INFRINGEMENT OF THE '280 PATENT

## (AGAINST APPLE, BLACKBERRY, HUAWEI, AND MOTOROLA)

59.     Paragraphs 1 through 46 are incorporated by reference as if fully stated herein.

---

[10] *See, e.g.*, http://www.motorola.com/us/FLEXR1-1/Moto-X/FLEXR1.html;
https://motorola-global-portal.custhelp.com/app/product_page/faqs/p/30,6720,8882/session/L3RpbWUvMTM4Mzc3MTA0MS9zaWQvblhuRklIRWw%3D#/how_do_i;
http://www.motorola.com/us/ANDROID/m-Android-Overview.html;
http://www.mobileworldlive.com/verizon-preloads-amazon-kindle-app-on-android-devices;
https://motorola-global-portal.custhelp.com/app/answers/detail/a_id/70762/action/auth.

60.     Apple has been and is now directly infringing and/or indirectly infringing the '280 Patent by way of inducement and/or contributory infringement, literally and/or under the doctrine of equivalents, in this District, and elsewhere, in violation of 35 U.S.C. § 271, including by making, using, selling, and/or offering for sale in the United States or importing into the United States products covered by at least one claim of the '280 Patent.  Apple has notice of the '280 Patent.  Apple actively induces content providers and/or end users  of Apple products to infringe the '280 Patent by, among other things, (a) providing access to certain "apps" (such as the iTunes client, the Amazon Kindle, Amazon Instant Video, and/or Google Play "apps") that use the ContentGuard DRM solution claimed in the '280 Patent, (b) providing instructions for using such "apps"; (c) providing advertisings for using such "apps"; and (d) providing hardware and software components required by the claims of the '280 Patent.[11]  Apple engages in the foregoing activities because it specifically intends end users of Apple products to use "apps" that deploy, and content providers to distribute content that is protected by, the ContentGuard DRM solutions claimed in the '280 Patent.  Apple thereby specifically intends end users and content providers to infringe the '280 Patent.  Apple derives revenue from both its own and the third-party infringers' infringing activities.  Indeed, Apple's ability to sell the accused products is wholly dependent upon the availability of these "apps" and the digital content they make available to users.  Apple also contributorily infringes the '280 Patent because there is no

---

[11] *See, e.g.*, http://www.apple.com/itunes/features/#store;
http://www.apple.com/itunes/;
https://itunes.apple.com/in/app/kindle/id302584613;
https://itunes.apple.com/us/app/google-play-books/id400989007;
https://itunes.apple.com/us/app/app-for-google-music-free/id485638799;
https://itunes.apple.com/us/app/google-tv-remote/id422137859?l=es&mt=8;
http://www.apple.com/in/iphone-5s/specs/;
http://www.apple.com/in/ipad/specs/;
http://www.apple.com/in/ipod-touch/specs.html.

substantial non-infringing use of these "apps" on the accused Apple products.  These "apps" cannot be used with accused Apple products without infringing the '280 Patent.

61.    BlackBerry has been and is now directly infringing and/or indirectly infringing the '280 Patent by way of inducement and/or contributory infringement, literally and/or under the doctrine of equivalents, in this District, and elsewhere, in violation of 35 U.S.C. § 271, including by making, using, selling, and/or offering for sale in the United States or importing into the United States products covered by at least one claim of the '280 Patent.  BlackBerry has notice of the '280 Patent.  BlackBerry actively induces content providers and/or end users  of BlackBerry products to infringe the '280 Patent by, among other things, (a) providing access to certain "apps" (such as the iTunes client, the Amazon Kindle, Amazon Instant Video, and/or Google Play "apps") that use the ContentGuard DRM solution claimed in the '280 Patent, (b) providing instructions for using such "apps"; (c) providing advertisings for using such "apps"; and (d) providing hardware and software components required by the claims of the '280 Patent.[12] BlackBerry engages in the foregoing activities because it specifically intends end users of BlackBerry products to use "apps" that deploy, and content providers to distribute content that is protected by, the ContentGuard DRM solutions claimed in the '280 Patent.  BlackBerry thereby specifically intends end users and content providers to infringe the '280 Patent.  BlackBerry derives revenue from both its own and the third-party infringers' infringing activities.  Indeed, BlackBerry's ability to sell the accused products is wholly dependent upon the availability of these "apps" and the digital content they make available to users.  BlackBerry also contributorily

---

[12] *See, e.g.*, http://in.blackberry.com/apps/blackberry-world.html#tab-1; http://appworld.blackberry.com/webstore/content/25058915/?countrycode=IN&lang=en; http://appworld.blackberry.com/webstore/content/65525/?countrycode=US&lang=en; http://in.blackberry.com/apps/blackberry-world.html#tab-1; http://appworld.blackberry.com/webstore/content/25058915/?countrycode=IN&lang=en; http://in.blackberry.com/smartphones/blackberry-z30/specifications.html.

infringes the '280 Patent because there is no substantial non-infringing use of these "apps" on the accused BlackBerry products.  These "apps" cannot be used with accused BlackBerry products without infringing the '280 Patent.

62.    Huawei has been and is now directly infringing and/or indirectly infringing the '280 Patent by way of inducement and/or contributory infringement, literally and/or under the doctrine of equivalents, in this District, and elsewhere, in violation of 35 U.S.C. § 271, including by making, using, selling, and/or offering for sale in the United States or importing into the United States products covered by at least one claim of the '280 Patent.  Huawei has notice of the '280 Patent.   Huawei actively induces content providers and/or end users  of Huawei products to infringe the '280 Patent by, among other things, (a) providing access to certain "apps" (such as the iTunes client, the Amazon Kindle, Amazon Instant Video, and/or Google Play "apps") that use the ContentGuard DRM solution claimed in the '280 Patent, (b) providing instructions for using such "apps"; (c) providing advertisings for using such "apps"; and (d) providing hardware and software components required by the claims of the '280 Patent.[13] Huawei engages in the foregoing activities because it specifically intends end users of Huawei products to use "apps" that deploy, and content providers to distribute content that is protected by, the ContentGuard DRM solutions claimed in the '280 Patent.  Huawei thereby specifically intends end users and content providers to infringe the '280 Patent.  Huawei derives revenue

---

[13] *See, e.g.*, http://huaweimobile.com;
http://www.huaweidevice.com/worldwide/productMobile.do?method=index&directoryId=6001&treeId=3745;
http://www.huaweidevice.com/worldwide/productFeatures.do?pinfoId=3298&directoryId=6001&treeId=3745&tab=0;
http://www.huaweidevice.com/worldwide/technicaIndex.do?method=gotoProductSupport&prodctId=3942&tb=0%29;
http://www.huaweidevice.com/worldwide/downloadCenter.do?method=toDownloadFile&flay=document&softid=NDcxOTM=;
http://www.uscellular.com/uscellular/pdf/huawei-ascend-y-google-play.pdf.

from both its own and the third-party infringers' infringing activities.  Indeed, Huawei's ability to sell the accused products is wholly dependent upon the availability of these "apps" and the digital content they make available to users.  Huawei also contributorily infringes the '280 Patent because there is no substantial non-infringing use of these "apps" on the accused Huawei products.  These "apps" cannot be used with accused Huawei products without infringing the '280 Patent.

63.     Motorola has been and is now directly infringing and/or indirectly infringing the '280 Patent by way of inducement and/or contributory infringement, literally and/or under the doctrine of equivalents, in this District, and elsewhere, in violation of 35 U.S.C. § 271, including by making, using, selling, and/or offering for sale in the United States or importing into the United States products covered by at least one claim of the '280 Patent.  Motorola has notice of the '280 Patent.  Motorola actively induces content providers and/or end users  of Motorola products to infringe the '280 Patent by, among other things, (a) providing access to certain "apps" (such as the iTunes client, the Amazon Kindle, Amazon Instant Video, and/or Google Play "apps") that use the ContentGuard DRM solution claimed in the '280 Patent, (b) providing instructions for using such "apps"; (c) providing advertisements for using such "apps"; and (d) providing hardware and software components required by the claims of the '280 Patent.[14] Motorola engages in the foregoing activities because it specifically intends end users of Motorola products to use "apps" that deploy, and content providers to distribute content that is protected

---

[14] *See, e.g.*, http://www.motorola.com/us/FLEXR1-1/Moto-X/FLEXR1.html;
https://motorola-global-
portal.custhelp.com/app/product_page/faqs/p/30,6720,8882/session/L3RpbWUvMTM4Mzc3MT
A0MS9zaWQvbIhuRklIRWw%3D#/how_do_i;
http://www.motorola.com/us/ANDROID/m-Android-Overview.html;
http://www.mobileworldlive.com/verizon-preloads-amazon-kindle-app-on-android-devices;
https://motorola-global-portal.custhelp.com/app/answers/detail/a_id/70762/action/auth.

by, the ContentGuard DRM solutions claimed in the '280 Patent.  Motorola thereby specifically intends end users and content providers to infringe the '280 Patent.  Motorola derives revenue from both its own and the third-party infringers' infringing activities.  Indeed, Motorola's ability to sell the accused products is wholly dependent upon the availability of these "apps" and the digital content they make available to users.  Motorola also contributorily infringes the '280 Patent because there is no substantial non-infringing use of these "apps" on the accused Motorola products.  These "apps" cannot be used with accused Motorola products without infringing the '280 Patent.

## COUNT 4:  INFRINGEMENT OF THE '053 PATENT

## (AGAINST APPLE, BLACKBERRY, HUAWEI AND MOTOROLA))

64.     Paragraphs 1 through 46 are incorporated by reference as if fully stated herein.

65.     Apple has been and is now directly infringing and/or indirectly infringing the '053 Patent by way of inducement and/or contributory infringement, literally and/or under the doctrine of equivalents, in this District, and elsewhere, in violation of 35 U.S.C. § 271, including by making, using, selling, and/or offering for sale in the United States or importing into the United States products covered by at least one claim of the '053 Patent.  Apple has notice of the '053 Patent.  Apple actively induces content providers and/or end users  of Apple products to infringe the '053 Patent by, among other things, (a) providing access to certain "apps" (such as the iTunes client, the Amazon Kindle, Amazon Instant Video, and/or Google Play "apps") that use the ContentGuard DRM solution claimed in the '053 Patent, (b) providing instructions for using such "apps"; (c) providing advertisings for using such "apps"; and (d) providing hardware

and software components required by the claims of the '053 Patent.[15]   Apple engages in the foregoing activities because it specifically intends end users of Apple products to use "apps" that deploy, and content providers to distribute content that is protected by, the ContentGuard DRM solutions claimed in the '053 Patent.   Apple thereby specifically intends end users and content providers to infringe the '053 Patent.   Apple derives revenue from both its own and the third-party infringers' infringing activities.   Indeed, Apple's ability to sell the accused products is wholly dependent upon the availability of these "apps" and the digital content they make available to users.   Apple also contributorily infringes the '053 Patent because there is no substantial non-infringing use of these "apps" on the accused Apple products.   These "apps" cannot be used with accused Apple products without infringing the '053 Patent.

66.     BlackBerry has been and is now directly infringing and/or indirectly infringing the '053 Patent by way of inducement and/or contributory infringement, literally and/or under the doctrine of equivalents, in this District, and elsewhere, in violation of 35 U.S.C. § 271, including by making, using, selling, and/or offering for sale in the United States or importing into the United States products covered by at least one claim of the '053 Patent.   BlackBerry has notice of the '053 Patent.   BlackBerry actively induces content providers and/or end users  of BlackBerry products to infringe the '053 Patent by, among other things, (a) providing access to certain "apps" (such as the iTunes client, the Amazon Kindle, Amazon Instant Video, and/or

---

[15] *See, e.g.*, http://www.apple.com/itunes/features/#store;
http://www.apple.com/itunes/;
https://itunes.apple.com/in/app/kindle/id302584613;
https://itunes.apple.com/us/app/google-play-books/id400989007;
https://itunes.apple.com/us/app/app-for-google-music-free/id485638799;
https://itunes.apple.com/us/app/google-tv-remote/id422137859?l=es&mt=8;
http://www.apple.com/in/iphone-5s/specs/;
http://www.apple.com/in/ipad/specs/;
http://www.apple.com/in/ipod-touch/specs.html.

Google Play "apps") that use the ContentGuard DRM solution claimed in the '053 Patent, (b) providing instructions for using such "apps"; (c) providing advertisings for using such "apps"; and (d) providing hardware and software components required by the claims of the '053 Patent.[16] BlackBerry engages in the foregoing activities because it specifically intends end users of BlackBerry products to use "apps" that deploy, and content providers to distribute content that is protected by, the ContentGuard DRM solutions claimed in the '053 Patent.  BlackBerry thereby specifically intends end users and content providers to infringe the '053 Patent.  BlackBerry derives revenue from both its own and the third-party infringers' infringing activities.  Indeed, BlackBerry's ability to sell the accused products is wholly dependent upon the availability of these "apps" and the digital content they make available to users.  BlackBerry also contributorily infringes the '053 Patent because there is no substantial non-infringing use of these "apps" on the accused BlackBerry products.  These "apps" cannot be used with accused BlackBerry products without infringing the '053 Patent.

67.     Huawei has been and is now directly infringing and/or indirectly infringing the '053 Patent by way of inducement and/or contributory infringement, literally and/or under the doctrine of equivalents, in this District, and elsewhere, in violation of 35 U.S.C. § 271, including by making, using, selling, and/or offering for sale in the United States or importing into the United States products covered by at least one claim of the '053 Patent.  Huawei has notice of the '053 Patent.  Huawei actively induces content providers and/or end users  of Huawei products to infringe the '053 Patent by, among other things, (a) providing access to certain

---

[16] *See, e.g.*, http://in.blackberry.com/apps/blackberry-world.html#tab-1;
http://appworld.blackberry.com/webstore/content/25058915/?countrycode=IN&lang=en;
http://appworld.blackberry.com/webstore/content/65525/?countrycode=US&lang=en;
http://in.blackberry.com/apps/blackberry-world.html#tab-1;
http://appworld.blackberry.com/webstore/content/25058915/?countrycode=IN&lang=en;
http://in.blackberry.com/smartphones/blackberry-z30/specifications.html.

"apps" (such as the iTunes client, the Amazon Kindle, Amazon Instant Video, and/or Google Play "apps") that use the ContentGuard DRM solution claimed in the '053 Patent, (b) providing instructions for using such "apps"; (c) providing advertisements for using such "apps"; and (d) providing hardware and software components required by the claims of the '053 Patent.[17] Huawei engages in the foregoing activities because it specifically intends end users of Huawei products to use "apps" that deploy, and content providers to distribute content that is protected by, the ContentGuard DRM solutions claimed in the '053 Patent.  Huawei thereby specifically intends end users and content providers to infringe the '053 Patent.  Huawei derives revenue from both its own and the third-party infringers' infringing activities.  Indeed, Huawei's ability to sell the accused products is wholly dependent upon the availability of these "apps" and the digital content they make available to users.  Huawei also contributorily infringes the '053 Patent because there is no substantial non-infringing use of these "apps" on the accused Huawei products.  These "apps" cannot be used with accused Huawei products without infringing the '053 Patent.

68.     Motorola has been and is now directly infringing and/or indirectly infringing the '053 Patent by way of inducement and/or contributory infringement, literally and/or under the doctrine of equivalents, in this District, and elsewhere, in violation of 35 U.S.C. § 271, including by making, using, selling, and/or offering for sale in the United States or importing into the

---

[17] *See, e.g.*, http://huaweimobile.com;
http://www.huaweidevice.com/worldwide/productMobile.do?method=index&directoryId=6001&treeId=3745;
http://www.huaweidevice.com/worldwide/productFeatures.do?pinfoId=3298&directoryId=6001&treeId=3745&tab=0;
http://www.huaweidevice.com/worldwide/technicaIndex.do?method=gotoProductSupport&prod uctId=3942&tb=0%29;
http://www.huaweidevice.com/worldwide/downloadCenter.do?method=toDownloadFile&flay=d ocument&softid=NDcxOTM=;
http://www.uscellular.com/uscellular/pdf/huawei-ascend-y-google-play.pdf.

United States products covered by at least one claim of the '053 Patent.  Motorola has notice of the '053 Patent.  Motorola actively induces content providers and/or end users  of Motorola products to infringe the '053 Patent by, among other things, (a) providing access to certain "apps" (such as the iTunes client, the Amazon Kindle, Amazon Instant Video, and/or Google Play "apps") that use the ContentGuard DRM solution claimed in the '053 Patent, (b) providing instructions for using such "apps"; (c) providing advertisings for using such "apps"; and (d) providing hardware and software components required by the claims of the '053 Patent.[18] Motorola engages in the foregoing activities because it specifically intends end users of Motorola products to use "apps" that deploy, and content providers to distribute content that is protected by, the ContentGuard DRM solutions claimed in the '053 Patent.  Motorola thereby specifically intends end users and content providers to infringe the '053 Patent.  Motorola derives revenue from both its own and the third-party infringers' infringing activities.  Indeed, Motorola's ability to sell the accused products is wholly dependent upon the availability of these "apps" and the digital content they make available to users.  Motorola also contributorily infringes the '053 Patent because there is no substantial non-infringing use of these "apps" on the accused Motorola products.  These "apps" cannot be used with accused Motorola products without infringing the '053 Patent.

---

[18] *See, e.g.*, http://www.motorola.com/us/FLEXR1-1/Moto-X/FLEXR1.html; https://motorola-global-portal.custhelp.com/app/product_page/faqs/p/30,6720,8882/session/L3RpbWUvMTM4Mzc3MTA0MS9zaWQvblhuRklIRWw%3D#/how_do_i; http://www.motorola.com/us/ANDROID/m-Android-Overview.html; http://www.mobileworldlive.com/verizon-preloads-amazon-kindle-app-on-android-devices; https://motorola-global-portal.custhelp.com/app/answers/detail/a_id/70762/action/auth.

## COUNT 5:  INFRINGEMENT OF THE '576 PATENT

## (AGAINST ALL DEFENDANTS)

69.     Paragraphs 1 through 46 are incorporated by reference as if fully stated herein.

70.     Amazon has been and is now directly infringing and/or indirectly infringing the '576 Patent by way of inducement and/or contributory infringement, literally and/or under the doctrine of equivalents, in this District, and elsewhere, in violation of 35 U.S.C. § 271, including by making, using, selling, and/or offering for sale in the United States or importing into the United States products covered by at least one claim of the '576 Patent.  Amazon has notice of the '576 Patent.  Amazon actively induces content providers and/or end users  of Amazon products to infringe the '576 Patent by, among other things, (a) providing access to certain "apps" (such as the iTunes client, the Amazon Kindle, Amazon Instant Video, and/or Google Play "apps") that use the ContentGuard DRM solution claimed in the '576 Patent, (b) providing instructions for using such "apps"; (c) providing advertisings for using such "apps"; and (d) providing hardware and software components required by the claims of the '576 Patent.[19] Amazon engages in the foregoing activities because it specifically intends end users of Amazon products to use "apps" that deploy, and content providers to distribute content that is protected by, the ContentGuard DRM solutions claimed in the '576 Patent.  Amazon thereby specifically intends end users and content providers to infringe the '576 Patent.  Amazon derives revenue from both its own and the third-party infringers' infringing activities.  Indeed, Amazon's ability

---

[19] *See, e.g.*, http://www.amazon.com/kindle-fire-hd-best-family-kids-tablet/dp/B00CU0NSCU;
http://www.amazon.com/gp/help/customer/display.html?nodeId=201240840;
http://www.amazon.com/gp/feature.html/ref=kcp_iph_ln_ar?docId=1000301301;
http://www.amazon.com/gp/help/customer/display.html?nodeId=200729450;
http://www.amazon.com/gp/help/customer/display.html?nodeId=201009460;
http://www.amazon.com/kindle-fire-hd-best-family-kids-tablet/dp/B00CU0NSCU;
https://developer.amazon.com/sdk/fire/specifications.html.

to sell the accused products is wholly dependent upon the availability of these "apps" and the digital content they make available to users.  Amazon also contributorily infringes the '576 Patent because there is no substantial non-infringing use of these "apps" on the accused Amazon products.  These "apps" cannot be used with accused Amazon products without infringing the '576 Patent.

71.     Apple has been and is now directly infringing and/or indirectly infringing the '576 Patent by way of inducement and/or contributory infringement, literally and/or under the doctrine of equivalents, in this District, and elsewhere, in violation of 35 U.S.C. § 271, including by making, using, selling, and/or offering for sale in the United States or importing into the United States products covered by at least one claim of the '576 Patent.  Apple has notice of the '576 Patent.  Apple actively induces content providers and/or end users  of Apple products to infringe the '576 Patent by, among other things, (a) providing access to certain "apps" (such as the iTunes client, the Amazon Kindle, Amazon Instant Video, and/or Google Play "apps") that use the ContentGuard DRM solution claimed in the '576 Patent, (b) providing instructions for using such "apps"; (c) providing advertisings for using such "apps"; and (d) providing hardware and software components required by the claims of the '576 Patent.[20]  Apple engages in the foregoing activities because it specifically intends end users of Apple products to use "apps" that deploy, and content providers to distribute content that is protected by, the ContentGuard DRM

---

[20] *See, e.g.*, http://www.apple.com/itunes/features/#store;
http://www.apple.com/itunes/;
https://itunes.apple.com/in/app/kindle/id302584613;
https://itunes.apple.com/us/app/google-play-books/id400989007;
https://itunes.apple.com/us/app/app-for-google-music-free/id485638799;
https://itunes.apple.com/us/app/google-tv-remote/id422137859?l=es&mt=8;
http://www.apple.com/in/iphone-5s/specs/;
http://www.apple.com/in/ipad/specs/;
http://www.apple.com/in/ipod-touch/specs.html.

solutions claimed in the '576 Patent.  Apple thereby specifically intends end users and content providers to infringe the '576 Patent.  Apple derives revenue from both its own and the third-party infringers' infringing activities.  Indeed, Apple's ability to sell the accused products is wholly dependent upon the availability of these "apps" and the digital content they make available to users.  Apple also contributorily infringes the '576 Patent because there is no substantial non-infringing use of these "apps" on the accused Apple products.  These "apps" cannot be used with accused Apple products without infringing the '576 Patent.

72.     BlackBerry has been and is now directly infringing and/or indirectly infringing the '576 Patent by way of inducement and/or contributory infringement, literally and/or under the doctrine of equivalents, in this District, and elsewhere, in violation of 35 U.S.C. § 271, including by making, using, selling, and/or offering for sale in the United States or importing into the United States products covered by at least one claim of the '576 Patent.  BlackBerry has notice of the '576 Patent.  BlackBerry actively induces content providers and/or end users  of BlackBerry products to infringe the '576 Patent by, among other things, (a) providing access to certain "apps" (such as the iTunes client, the Amazon Kindle, Amazon Instant Video, and/or Google Play "apps") that use the ContentGuard DRM solution claimed in the '576 Patent, (b) providing instructions for using such "apps"; (c) providing advertisings for using such "apps"; and (d) providing hardware and software components required by the claims of the '576 Patent.[21] BlackBerry engages in the foregoing activities because it specifically intends end users of BlackBerry products to use "apps" that deploy, and content providers to distribute content that is

---

[21] *See, e.g.*, http://in.blackberry.com/apps/blackberry-world.html#tab-1;
http://appworld.blackberry.com/webstore/content/25058915/?countrycode=IN&lang=en;
http://appworld.blackberry.com/webstore/content/65525/?countrycode=US&lang=en;
http://in.blackberry.com/apps/blackberry-world.html#tab-1;
http://appworld.blackberry.com/webstore/content/25058915/?countrycode=IN&lang=en;
http://in.blackberry.com/smartphones/blackberry-z30/specifications.html.

protected by, the ContentGuard DRM solutions claimed in the '576 Patent.  BlackBerry thereby specifically intends end users and content providers to infringe the '576 Patent.  BlackBerry derives revenue from both its own and the third-party infringers' infringing activities.  Indeed, BlackBerry's ability to sell the accused products is wholly dependent upon the availability of these "apps" and the digital content they make available to users.  BlackBerry also contributorily infringes the '576 Patent because there is no substantial non-infringing use of these "apps" on the accused BlackBerry products.  These "apps" cannot be used with accused BlackBerry products without infringing the '576 Patent.

73.    Huawei has been and is now directly infringing and/or indirectly infringing the '576 Patent by way of inducement and/or contributory infringement, literally and/or under the doctrine of equivalents, in this District, and elsewhere, in violation of 35 U.S.C. § 271, including by making, using, selling, and/or offering for sale in the United States or importing into the United States products covered by at least one claim of the '576 Patent.  Huawei has notice of the '576 Patent.  Huawei actively induces content providers and/or end users  of Huawei products to infringe the '576 Patent by, among other things, (a) providing access to certain "apps" (such as the iTunes client, the Amazon Kindle, Amazon Instant Video, and/or Google Play "apps") that use the ContentGuard DRM solution claimed in the '576 Patent, (b) providing instructions for using such "apps"; (c) providing advertisements for using such "apps"; and (d) providing hardware and software components required by the claims of the '576 Patent.[22]

---

[22] *See, e.g.*, http://huaweimobile.com;
http://www.huaweidevice.com/worldwide/productMobile.do?method=index&directoryId=6001&treeId=3745;
http://www.huaweidevice.com/worldwide/productFeatures.do?pinfoId=3298&directoryId=6001&treeId=3745&tab=0;
http://www.huaweidevice.com/worldwide/technicaIndex.do?method=gotoProductSupport&productId=3942&tb=0%29;

Huawei engages in the foregoing activities because it specifically intends end users of Huawei products to use "apps" that deploy, and content providers to distribute content that is protected by, the ContentGuard DRM solutions claimed in the '576 Patent.  Huawei thereby specifically intends end users and content providers to infringe the '576 Patent.  Huawei derives revenue from both its own and the third-party infringers' infringing activities.  Indeed, Huawei's ability to sell the accused products is wholly dependent upon the availability of these "apps" and the digital content they make available to users.  Huawei also contributorily infringes the '576 Patent because there is no substantial non-infringing use of these "apps" on the accused Huawei products.  These "apps" cannot be used with accused Huawei products without infringing the '576 Patent.

74.      Motorola has been and is now directly infringing and/or indirectly infringing the '576 Patent by way of inducement and/or contributory infringement, literally and/or under the doctrine of equivalents, in this District, and elsewhere, in violation of 35 U.S.C. § 271, including by making, using, selling, and/or offering for sale in the United States or importing into the United States products covered by at least one claim of the '576 Patent.  Motorola has notice of the '576 Patent.  Motorola actively induces content providers and/or end users  of Motorola products to infringe the '576 Patent by, among other things, (a) providing access to certain "apps" (such as the iTunes client, the Amazon Kindle, Amazon Instant Video, and/or Google Play "apps") that use the ContentGuard DRM solution claimed in the '576 Patent, (b) providing instructions for using such "apps"; (c) providing advertisings for using such "apps"; and (d)

---

http://www.huaweidevice.com/worldwide/downloadCenter.do?method=toDownloadFile&flay=document&softid=NDcxOTM=;
http://www.uscellular.com/uscellular/pdf/huawei-ascend-y-google-play.pdf.

providing hardware and software components required by the claims of the '576 Patent.[23]

Motorola engages in the foregoing activities because it specifically intends end users of Motorola

products to use "apps" that deploy, and content providers to distribute content that is protected

by, the ContentGuard DRM solutions claimed in the '576 Patent. Motorola thereby specifically

intends end users and content providers to infringe the '576 Patent. Motorola derives revenue

from both its own and the third-party infringers' infringing activities. Indeed, Motorola's ability

to sell the accused products is wholly dependent upon the availability of these "apps" and the

digital content they make available to users. Motorola also contributorily infringes the '576

Patent because there is no substantial non-infringing use of these "apps" on the accused Motorola

products. These "apps" cannot be used with accused Motorola products without infringing the

'576 Patent.

## COUNT 6: INFRINGEMENT OF THE '956 PATENT

## (AGAINST ALL DEFENDANTS)

75. Paragraphs 1 through 46 are incorporated by reference as if fully stated herein.

76. Amazon has been and is now directly infringing and/or indirectly infringing the

'956 Patent by way of inducement and/or contributory infringement, literally and/or under the

doctrine of equivalents, in this District, and elsewhere, in violation of 35 U.S.C. § 271, including

by making, using, selling, and/or offering for sale in the United States or importing into the

United States products covered by at least one claim of the '956 Patent. Amazon has notice of

---

[23] *See, e.g.*, http://www.motorola.com/us/FLEXR1-1/Moto-X/FLEXR1.html;
https://motorola-global-
portal.custhelp.com/app/product_page/faqs/p/30,6720,8882/session/L3RpbWUvMTM4Mzc3MT
A0MS9zaWQvblhuRklIRWw%3D#/how_do_i;
http://www.motorola.com/us/ANDROID/m-Android-Overview.html;
http://www.mobileworldlive.com/verizon-preloads-amazon-kindle-app-on-android-devices;
https://motorola-global-portal.custhelp.com/app/answers/detail/a_id/70762/action/auth.

the '956 Patent.  Amazon actively induces content providers and/or end users  of Amazon products to infringe the '956 Patent by, among other things, (a) providing access to certain "apps" (such as the iTunes client, the Amazon Kindle, Amazon Instant Video, and/or Google Play "apps") that use the ContentGuard DRM solution claimed in the '956 Patent, (b) providing instructions for using such "apps"; (c) providing advertisings for using such "apps"; and (d) providing hardware and software components required by the claims of the '956 Patent.[24] Amazon engages in the foregoing activities because it specifically intends end users of Amazon products to use "apps" that deploy, and content providers to distribute content that is protected by, the ContentGuard DRM solutions claimed in the '956 Patent.  Amazon thereby specifically intends end users and content providers to infringe the '956 Patent.  Amazon derives revenue from both its own and the third-party infringers' infringing activities.  Indeed, Amazon's ability to sell the accused products is wholly dependent upon the availability of these "apps" and the digital content they make available to users.  Amazon also contributorily infringes the '956 Patent because there is no substantial non-infringing use of these "apps" on the accused Amazon products.  These "apps" cannot be used with accused Amazon products without infringing the '956 Patent.

77.     Apple has been and is now directly infringing and/or indirectly infringing the '956 Patent by way of inducement and/or contributory infringement, literally and/or under the doctrine of equivalents, in this District, and elsewhere, in violation of 35 U.S.C. § 271, including

---

[24] *See, e.g.*, http://www.amazon.com/kindle-fire-hd-best-family-kids-tablet/dp/B00CU0NSCU;
http://www.amazon.com/gp/help/customer/display.html?nodeId=201240840;
http://www.amazon.com/gp/feature.html/ref=kcp_iph_ln_ar?docId=1000301301;
http://www.amazon.com/gp/help/customer/display.html?nodeId=200729450;
http://www.amazon.com/gp/help/customer/display.html?nodeId=201009460;
http://www.amazon.com/kindle-fire-hd-best-family-kids-tablet/dp/B00CU0NSCU;
https://developer.amazon.com/sdk/fire/specifications.html.

by making, using, selling, and/or offering for sale in the United States or importing into the United States products covered by at least one claim of the '956 Patent.  Apple has notice of the '956 Patent.  Apple actively induces content providers and/or end users  of Apple products to infringe the '956 Patent by, among other things, (a) providing access to certain "apps" (such as the iTunes client, the Amazon Kindle, Amazon Instant Video, and/or Google Play "apps") that use the ContentGuard DRM solution claimed in the '956 Patent, (b) providing instructions for using such "apps"; (c) providing advertisings for using such "apps"; and (d) providing hardware and software components required by the claims of the '956 Patent.[25]  Apple engages in the foregoing activities because it specifically intends end users of Apple products to use "apps" that deploy, and content providers to distribute content that is protected by, the ContentGuard DRM solutions claimed in the '956 Patent.  Apple thereby specifically intends end users and content providers to infringe the '956 Patent.  Apple derives revenue from both its own and the third-party infringers' infringing activities.  Indeed, Apple's ability to sell the accused products is wholly dependent upon the availability of these "apps" and the digital content they make available to users.  Apple also contributorily infringes the '956 Patent because there is no substantial non-infringing use of these "apps" on the accused Apple products.  These "apps" cannot be used with accused Apple products without infringing the '956 Patent.

---

[25] *See, e.g.*, http://www.apple.com/itunes/features/#store;
http://www.apple.com/itunes/;
https://itunes.apple.com/in/app/kindle/id302584613;
https://itunes.apple.com/us/app/google-play-books/id400989007;
https://itunes.apple.com/us/app/app-for-google-music-free/id485638799;
https://itunes.apple.com/us/app/google-tv-remote/id422137859?l=es&mt=8;
http://www.apple.com/in/iphone-5s/specs/;
http://www.apple.com/in/ipad/specs/;
http://www.apple.com/in/ipod-touch/specs.html.

78.     BlackBerry has been and is now directly infringing and/or indirectly infringing the '956 Patent by way of inducement and/or contributory infringement, literally and/or under the doctrine of equivalents, in this District, and elsewhere, in violation of 35 U.S.C. § 271, including by making, using, selling, and/or offering for sale in the United States or importing into the United States products covered by at least one claim of the '956 Patent. BlackBerry has notice of the '956 Patent. BlackBerry actively induces content providers and/or end users of BlackBerry products to infringe the '956 Patent by, among other things, (a) providing access to certain "apps" (such as the iTunes client, the Amazon Kindle, Amazon Instant Video, and/or Google Play "apps") that use the ContentGuard DRM solution claimed in the '956 Patent, (b) providing instructions for using such "apps"; (c) providing advertisings for using such "apps"; and (d) providing hardware and software components required by the claims of the '956 Patent.[26] BlackBerry engages in the foregoing activities because it specifically intends end users of BlackBerry products to use "apps" that deploy, and content providers to distribute content that is protected by, the ContentGuard DRM solutions claimed in the '956 Patent. BlackBerry thereby specifically intends end users and content providers to infringe the '956 Patent. BlackBerry derives revenue from both its own and the third-party infringers' infringing activities. Indeed, BlackBerry's ability to sell the accused products is wholly dependent upon the availability of these "apps" and the digital content they make available to users. BlackBerry also contributorily infringes the '956 Patent because there is no substantial non-infringing use of these "apps" on the

---

[26] *See, e.g.*, http://in.blackberry.com/apps/blackberry-world.html#tab-1;
http://appworld.blackberry.com/webstore/content/25058915/?countrycode=IN&lang=en;
http://appworld.blackberry.com/webstore/content/65525/?countrycode=US&lang=en;
http://in.blackberry.com/apps/blackberry-world.html#tab-1;
http://appworld.blackberry.com/webstore/content/25058915/?countrycode=IN&lang=en;
http://in.blackberry.com/smartphones/blackberry-z30/specifications.html.

accused BlackBerry products.  These "apps" cannot be used with accused BlackBerry products without infringing the '956 Patent.

79.     Huawei has been and is now directly infringing and/or indirectly infringing the '956 Patent by way of inducement and/or contributory infringement, literally and/or under the doctrine of equivalents, in this District, and elsewhere, in violation of 35 U.S.C. § 271, including by making, using, selling, and/or offering for sale in the United States or importing into the United States products covered by at least one claim of the '956 Patent.  Huawei has notice of the '956 Patent.  Huawei actively induces content providers and/or end users  of Huawei products to infringe the '956 Patent by, among other things, (a) providing access to certain "apps" (such as the iTunes client, the Amazon Kindle, Amazon Instant Video, and/or Google Play "apps") that use the ContentGuard DRM solution claimed in the '956 Patent, (b) providing instructions for using such "apps"; (c) providing advertisings for using such "apps"; and (d) providing hardware and software components required by the claims of the '956 Patent.[27] Huawei engages in the foregoing activities because it specifically intends end users of Huawei products to use "apps" that deploy, and content providers to distribute content that is protected by, the ContentGuard DRM solutions claimed in the '956 Patent.  Huawei thereby specifically intends end users and content providers to infringe the '956 Patent.  Huawei derives revenue from both its own and the third-party infringers' infringing activities.  Indeed, Huawei's ability

---

[27] *See, e.g.*, http://huaweimobile.com;
http://www.huaweidevice.com/worldwide/productMobile.do?method=index&directoryId=6001&treeId=3745;
http://www.huaweidevice.com/worldwide/productFeatures.do?pinfoId=3298&directoryId=6001&treeId=3745&tab=0;
http://www.huaweidevice.com/worldwide/technicaIndex.do?method=gotoProductSupport&prodId=3942&tb=0%29;
http://www.huaweidevice.com/worldwide/downloadCenter.do?method=toDownloadFile&flay=document&softid=NDcxOTM=;
http://www.uscellular.com/uscellular/pdf/huawei-ascend-y-google-play.pdf.

to sell the accused products is wholly dependent upon the availability of these "apps" and the digital content they make available to users.  Huawei also contributorily infringes the '956 Patent because there is no substantial non-infringing use of these "apps" on the accused Huawei products.  These "apps" cannot be used with accused Huawei products without infringing the '956 Patent.

80.     Motorola has been and is now directly infringing and/or indirectly infringing the '956 Patent by way of inducement and/or contributory infringement, literally and/or under the doctrine of equivalents, in this District, and elsewhere, in violation of 35 U.S.C. § 271, including by making, using, selling, and/or offering for sale in the United States or importing into the United States products covered by at least one claim of the '956 Patent.  Motorola has notice of the '956 Patent.  Motorola actively induces content providers and/or end users  of Motorola products to infringe the '956 Patent by, among other things, (a) providing access to certain "apps" (such as the iTunes client, the Amazon Kindle, Amazon Instant Video, and/or Google Play "apps") that use the ContentGuard DRM solution claimed in the '956 Patent, (b) providing instructions for using such "apps"; (c) providing advertisings for using such "apps"; and (d) providing hardware and software components required by the claims of the '956 Patent.[28] Motorola engages in the foregoing activities because it specifically intends end users of Motorola products to use "apps" that deploy, and content providers to distribute content that is protected by, the ContentGuard DRM solutions claimed in the '956 Patent.  Motorola thereby specifically

---

[28] *See, e.g.*, http://www.motorola.com/us/FLEXR1-1/Moto-X/FLEXR1.html;
https://motorola-global-
portal.custhelp.com/app/product_page/faqs/p/30,6720,8882/session/L3RpbWUvMTM4Mzc3MT
A0MS9zaWQvblhuRklIRWw%3D#/how_do_i;
http://www.motorola.com/us/ANDROID/m-Android-Overview.html;
http://www.mobileworldlive.com/verizon-preloads-amazon-kindle-app-on-android-devices;
https://motorola-global-portal.custhelp.com/app/answers/detail/a_id/70762/action/auth.

intends end users and content providers to infringe the '956 Patent.  Motorola derives revenue from both its own and the third-party infringers' infringing activities.  Indeed, Motorola's ability to sell the accused products is wholly dependent upon the availability of these "apps" and the digital content they make available to users.  Motorola also contributorily infringes the '956 Patent because there is no substantial non-infringing use of these "apps" on the accused Motorola products.  These "apps" cannot be used with accused Motorola products without infringing the '956 Patent.

## COUNT 7:  INFRINGEMENT OF THE '007 PATENT

## (AGAINST ALL DEFENDANTS)

81.     Paragraphs 1 through 46 are incorporated by reference as if fully stated herein.

82.     Amazon has been and is now directly infringing and/or indirectly infringing the '007 Patent by way of inducement and/or contributory infringement, literally and/or under the doctrine of equivalents, in this District, and elsewhere, in violation of 35 U.S.C. § 271, including by making, using, selling, and/or offering for sale in the United States or importing into the United States products covered by at least one claim of the '007 Patent.  Amazon has notice of the '007 Patent.   Amazon actively induces content providers and/or end users  of Amazon products to infringe the '007 Patent by, among other things, (a) providing access to certain "apps" (such as the iTunes client, the Amazon Kindle, Amazon Instant Video, and/or Google Play "apps") that use the ContentGuard DRM solution claimed in the '007 Patent, (b) providing instructions for using such "apps"; (c) providing advertisings for using such "apps"; and (d) providing  hardware  and  software  components  required  by  the  claims  of  the  '007  Patent.[29]

---

[29] *See, e.g.*, http://www.amazon.com/kindle-fire-hd-best-family-kids-tablet/dp/B00CU0NSCU;
http://www.amazon.com/gp/help/customer/display.html?nodeId=201240840;
http://www.amazon.com/gp/feature.html/ref=kcp_iph_ln_ar?docId=1000301301;

Amazon engages in the foregoing activities because it specifically intends end users of Amazon products to use "apps" that deploy, and content providers to distribute content that is protected by, the ContentGuard DRM solutions claimed in the '007 Patent.  Amazon thereby specifically intends end users and content providers to infringe the '007 Patent.  Amazon derives revenue from both its own and the third-party infringers' infringing activities.  Indeed, Amazon's ability to sell the accused products is wholly dependent upon the availability of these "apps" and the digital content they make available to users.  Amazon also contributorily infringes the '007 Patent because there is no substantial non-infringing use of these "apps" on the accused Amazon products.  These "apps" cannot be used with accused Amazon products without infringing the '007 Patent.

83.     Apple has been and is now directly infringing and/or indirectly infringing the '007 Patent by way of inducement and/or contributory infringement, literally and/or under the doctrine of equivalents, in this District, and elsewhere, in violation of 35 U.S.C. § 271, including by making, using, selling, and/or offering for sale in the United States or importing into the United States products covered by at least one claim of the '007 Patent.  Apple has notice of the '007 Patent.  Apple actively induces content providers and/or end users  of Apple products to infringe the '007 Patent by, among other things, (a) providing access to certain "apps" (such as the iTunes client, the Amazon Kindle, Amazon Instant Video, and/or Google Play "apps") that use the ContentGuard DRM solution claimed in the '007 Patent, (b) providing instructions for using such "apps"; (c) providing advertisings for using such "apps"; and (d) providing hardware

---

http://www.amazon.com/gp/help/customer/display.html?nodeId=200729450;
http://www.amazon.com/gp/help/customer/display.html?nodeId=201009460;
http://www.amazon.com/kindle-fire-hd-best-family-kids-tablet/dp/B00CU0NSCU;
https://developer.amazon.com/sdk/fire/specifications.html.

and software components required by the claims of the '007 Patent.[30]   Apple engages in the foreground activities because it specifically intends end users of Apple products to use "apps" that deploy, and content providers to distribute content that is protected by, the ContentGuard DRM solutions claimed in the '007 Patent.  Apple thereby specifically intends end users and content providers to infringe the '007 Patent.  Apple derives revenue from both its own and the third-party infringers' infringing activities.  Indeed, Apple's ability to sell the accused products is wholly dependent upon the availability of these "apps" and the digital content they make available to users.  Apple also contributorily infringes the '007 Patent because there is no substantial non-infringing use of these "apps" on the accused Apple products.  These "apps" cannot be used with accused Apple products without infringing the '007 Patent.

84.   BlackBerry has been and is now directly infringing and/or indirectly infringing the '007 Patent by way of inducement and/or contributory infringement, literally and/or under the doctrine of equivalents, in this District, and elsewhere, in violation of 35 U.S.C. § 271, including by making, using, selling, and/or offering for sale in the United States or importing into the United States products covered by at least one claim of the '007 Patent.  BlackBerry has notice of the '007 Patent.  BlackBerry actively induces content providers and/or end users  of BlackBerry products to infringe the '007 Patent by, among other things, (a) providing access to certain "apps" (such as the iTunes client, the Amazon Kindle, Amazon Instant Video, and/or

---

[30] *See, e.g.*, http://www.apple.com/itunes/features/#store;
http://www.apple.com/itunes/;
https://itunes.apple.com/in/app/kindle/id302584613;
https://itunes.apple.com/us/app/google-play-books/id400989007;
https://itunes.apple.com/us/app/app-for-google-music-free/id485638799;
https://itunes.apple.com/us/app/google-tv-remote/id422137859?l=es&mt=8;
http://www.apple.com/in/iphone-5s/specs/;
http://www.apple.com/in/ipad/specs/;
http://www.apple.com/in/ipod-touch/specs.html.

Google Play "apps") that use the ContentGuard DRM solution claimed in the '007 Patent, (b) providing instructions for using such "apps"; (c) providing advertisings for using such "apps"; and (d) providing hardware and software components required by the claims of the '007 Patent.[31] BlackBerry engages in the foregoing activities because it specifically intends end users of BlackBerry products to use "apps" that deploy, and content providers to distribute content that is protected by, the ContentGuard DRM solutions claimed in the '007 Patent.  BlackBerry thereby specifically intends end users and content providers to infringe the '007 Patent.  BlackBerry derives revenue from both its own and the third-party infringers' infringing activities.  Indeed, BlackBerry's ability to sell the accused products is wholly dependent upon the availability of these "apps" and the digital content they make available to users.  BlackBerry also contributorily infringes the '007 Patent because there is no substantial non-infringing use of these "apps" on the accused BlackBerry products.  These "apps" cannot be used with accused BlackBerry products without infringing the '007 Patent.

85.    Huawei has been and is now directly infringing and/or indirectly infringing the '007 Patent by way of inducement and/or contributory infringement, literally and/or under the doctrine of equivalents, in this District, and elsewhere, in violation of 35 U.S.C. § 271, including by making, using, selling, and/or offering for sale in the United States or importing into the United States products covered by at least one claim of the '007 Patent.  Huawei has notice of the '007 Patent.  Huawei actively induces content providers and/or end users  of Huawei products to infringe the '007 Patent by, among other things, (a) providing access to certain

---

[31] *See, e.g.*, http://in.blackberry.com/apps/blackberry-world.html#tab-1;
http://appworld.blackberry.com/webstore/content/25058915/?countrycode=IN&lang=en;
http://appworld.blackberry.com/webstore/content/65525/?countrycode=US&lang=en;
http://in.blackberry.com/apps/blackberry-world.html#tab-1;
http://appworld.blackberry.com/webstore/content/25058915/?countrycode=IN&lang=en;
http://in.blackberry.com/smartphones/blackberry-z30/specifications.html.

"apps" (such as the iTunes client, the Amazon Kindle, Amazon Instant Video, and/or Google Play "apps") that use the ContentGuard DRM solution claimed in the '007 Patent, (b) providing instructions for using such "apps"; (c) providing advertisements for using such "apps"; and (d) providing hardware and software components required by the claims of the '007 Patent.[32] Huawei engages in the foregoing activities because it specifically intends end users of Huawei products to use "apps" that deploy, and content providers to distribute content that is protected by, the ContentGuard DRM solutions claimed in the '007 Patent.  Huawei thereby specifically intends end users and content providers to infringe the '007 Patent.  Huawei derives revenue from both its own and the third-party infringers' infringing activities.  Indeed, Huawei's ability to sell the accused products is wholly dependent upon the availability of these "apps" and the digital content they make available to users.  Huawei also contributorily infringes the '007 Patent because there is no substantial non-infringing use of these "apps" on the accused Huawei products.  These "apps" cannot be used with accused Huawei products without infringing the '007 Patent.

86.    Motorola has been and is now directly infringing and/or indirectly infringing the '007 Patent by way of inducement and/or contributory infringement, literally and/or under the doctrine of equivalents, in this District, and elsewhere, in violation of 35 U.S.C. § 271, including by making, using, selling, and/or offering for sale in the United States or importing into the

---

[32] *See, e.g.*, http://huaweimobile.com;
http://www.huaweidevice.com/worldwide/productMobile.do?method=index&directoryId=6001&treeId=3745;
http://www.huaweidevice.com/worldwide/productFeatures.do?pinfoId=3298&directoryId=6001&treeId=3745&tab=0;
http://www.huaweidevice.com/worldwide/technicaIndex.do?method=gotoProductSupport&prodctId=3942&tb=0%29;
http://www.huaweidevice.com/worldwide/downloadCenter.do?method=toDownloadFile&flay=document&softid=NDcxOTM=;
http://www.uscellular.com/uscellular/pdf/huawei-ascend-y-google-play.pdf.

United States products covered by at least one claim of the '007 Patent.  Motorola has notice of the '007 Patent.  Motorola actively induces content providers and/or end users  of Motorola products to infringe the '007 Patent by, among other things, (a) providing access to certain "apps" (such as the iTunes client, the Amazon Kindle, Amazon Instant Video, and/or Google Play "apps") that use the ContentGuard DRM solution claimed in the '007 Patent, (b) providing instructions for using such "apps"; (c) providing advertisings for using such "apps"; and (d) providing hardware and software components required by the claims of the '007 Patent.[33] Motorola engages in the foregoing activities because it specifically intends end users of Motorola products to use "apps" that deploy, and content providers to distribute content that is protected by, the ContentGuard DRM solutions claimed in the '007 Patent.  Motorola thereby specifically intends end users and content providers to infringe the '007 Patent.  Motorola derives revenue from both its own and the third-party infringers' infringing activities.  Indeed, Motorola's ability to sell the accused products is wholly dependent upon the availability of these "apps" and the digital content they make available to users.  Motorola also contributorily infringes the '007 Patent because there is no substantial non-infringing use of these "apps" on the accused Motorola products.  These "apps" cannot be used with accused Motorola products without infringing the '007 Patent.

---

[33] *See, e.g.*, http://www.motorola.com/us/FLEXR1-1/Moto-X/FLEXR1.html; https://motorola-global-portal.custhelp.com/app/product_page/faqs/p/30,6720,8882/session/L3RpbWUvMTM4Mzc3MTA0MS9zaWQvblhuRklIRWw%3D#/how_do_i; http://www.motorola.com/us/ANDROID/m-Android-Overview.html; http://www.mobileworldlive.com/verizon-preloads-amazon-kindle-app-on-android-devices; https://motorola-global-portal.custhelp.com/app/answers/detail/a_id/70762/action/auth.

## COUNT 8:  INFRINGEMENT OF THE '160 PATENT

## (AGAINST ALL DEFENDANTS)

87.     Paragraphs 1 through 46 are incorporated by reference as if fully stated herein.

88.     Amazon has been and is now directly infringing and/or indirectly infringing the
'160 Patent by way of inducement and/or contributory infringement, literally and/or under the
doctrine of equivalents, in this District, and elsewhere, in violation of 35 U.S.C. § 271, including
by making, using, selling, and/or offering for sale in the United States or importing into the
United States products covered by at least one claim of the '160 Patent.  Amazon has notice of
the '160 Patent.  Amazon actively induces content providers and/or end users  of Amazon
products to infringe the '160 Patent by, among other things, (a) providing access to certain
"apps" (such as the iTunes client, the Amazon Kindle, Amazon Instant Video, and/or Google
Play "apps") that use the ContentGuard DRM solution claimed in the '160 Patent, (b) providing
instructions for using such "apps"; (c) providing advertisings for using such "apps"; and (d)
providing hardware and software components required by the claims of the '160 Patent.[34]
Amazon engages in the foregoing activities because it specifically intends end users of Amazon
products to use "apps" that deploy, and content providers to distribute content that is protected
by, the ContentGuard DRM solutions claimed in the '160 Patent.  Amazon thereby specifically
intends end users and content providers to infringe the '160 Patent.  Amazon derives revenue
from both its own and the third-party infringers' infringing activities.  Indeed, Amazon's ability

---

[34] *See, e.g.*, http://www.amazon.com/kindle-fire-hd-best-family-kids-tablet/dp/B00CU0NSCU;
http://www.amazon.com/gp/help/customer/display.html?nodeId=201240840;
http://www.amazon.com/gp/feature.html/ref=kcp_iph_ln_ar?docId=1000301301;
http://www.amazon.com/gp/help/customer/display.html?nodeId=200729450;
http://www.amazon.com/gp/help/customer/display.html?nodeId=201009460;
http://www.amazon.com/kindle-fire-hd-best-family-kids-tablet/dp/B00CU0NSCU;
https://developer.amazon.com/sdk/fire/specifications.html.

to sell the accused products is wholly dependent upon the availability of these "apps" and the digital content they make available to users. Amazon also contributorily infringes the '160 Patent because there is no substantial non-infringing use of these "apps" on the accused Amazon products. These "apps" cannot be used with accused Amazon products without infringing the '160 Patent.

89. Apple has been and is now directly infringing and/or indirectly infringing the '160 Patent by way of inducement and/or contributory infringement, literally and/or under the doctrine of equivalents, in this District, and elsewhere, in violation of 35 U.S.C. § 271, including by making, using, selling, and/or offering for sale in the United States or importing into the United States products covered by at least one claim of the '160 Patent. Apple has notice of the '160 Patent. Apple actively induces content providers and/or end users of Apple products to infringe the '160 Patent by, among other things, (a) providing access to certain "apps" (such as the iTunes client, the Amazon Kindle, Amazon Instant Video, and/or Google Play "apps") that use the ContentGuard DRM solution claimed in the '160 Patent, (b) providing instructions for using such "apps"; (c) providing advertisings for using such "apps"; and (d) providing hardware and software components required by the claims of the '160 Patent.[35] Apple engages in the foregoing activities because it specifically intends end users of Apple products to use "apps" that deploy, and content providers to distribute content that is protected by, the ContentGuard DRM

---

[35] *See, e.g.*, http://www.apple.com/itunes/features/#store;
http://www.apple.com/itunes/;
https://itunes.apple.com/in/app/kindle/id302584613;
https://itunes.apple.com/us/app/google-play-books/id400989007;
https://itunes.apple.com/us/app/app-for-google-music-free/id485638799;
https://itunes.apple.com/us/app/google-tv-remote/id422137859?l=es&mt=8;
http://www.apple.com/in/iphone-5s/specs/;
http://www.apple.com/in/ipad/specs/;
http://www.apple.com/in/ipod-touch/specs.html.

solutions claimed in the '160 Patent.  Apple thereby specifically intends end users and content providers to infringe the '160 Patent.  Apple derives revenue from both its own and the third-party infringers' infringing activities.  Indeed, Apple's ability to sell the accused products is wholly dependent upon the availability of these "apps" and the digital content they make available to users.  Apple also contributorily infringes the '160 Patent because there is no substantial non-infringing use of these "apps" on the accused Apple products.  These "apps" cannot be used with accused Apple products without infringing the '160 Patent.

90.     BlackBerry has been and is now directly infringing and/or indirectly infringing the '160 Patent by way of inducement and/or contributory infringement, literally and/or under the doctrine of equivalents, in this District, and elsewhere, in violation of 35 U.S.C. § 271, including by making, using, selling, and/or offering for sale in the United States or importing into the United States products covered by at least one claim of the '160 Patent.  BlackBerry has notice of the '160 Patent.  BlackBerry actively induces content providers and/or end users  of BlackBerry products to infringe the '160 Patent by, among other things, (a) providing access to certain "apps" (such as the iTunes client, the Amazon Kindle, Amazon Instant Video, and/or Google Play "apps") that use the ContentGuard DRM solution claimed in the '160 Patent, (b) providing instructions for using such "apps"; (c) providing advertisings for using such "apps"; and (d) providing hardware and software components required by the claims of the '160 Patent.[36] BlackBerry engages in the foregoing activities because it specifically intends end users of BlackBerry products to use "apps" that deploy, and content providers to distribute content that is

---

[36] *See, e.g.*, http://in.blackberry.com/apps/blackberry-world.html#tab-1;
http://appworld.blackberry.com/webstore/content/25058915/?countrycode=IN&lang=en;
http://appworld.blackberry.com/webstore/content/65525/?countrycode=US&lang=en;
http://in.blackberry.com/apps/blackberry-world.html#tab-1;
http://appworld.blackberry.com/webstore/content/25058915/?countrycode=IN&lang=en;
http://in.blackberry.com/smartphones/blackberry-z30/specifications.html.

protected by, the ContentGuard DRM solutions claimed in the '160 Patent.  BlackBerry thereby specifically intends end users and content providers to infringe the '160 Patent.  BlackBerry derives revenue from both its own and the third-party infringers' infringing activities.  Indeed, BlackBerry's ability to sell the accused products is wholly dependent upon the availability of these "apps" and the digital content they make available to users.  BlackBerry also contributorily infringes the '160 Patent because there is no substantial non-infringing use of these "apps" on the accused BlackBerry products.  These "apps" cannot be used with accused BlackBerry products without infringing the '160 Patent.

91.    Huawei has been and is now directly infringing and/or indirectly infringing the '160 Patent by way of inducement and/or contributory infringement, literally and/or under the doctrine of equivalents, in this District, and elsewhere, in violation of 35 U.S.C. § 271, including by making, using, selling, and/or offering for sale in the United States or importing into the United States products covered by at least one claim of the '160 Patent.  Huawei has notice of the '160 Patent.  Huawei actively induces content providers and/or end users  of Huawei products to infringe the '160 Patent by, among other things, (a) providing access to certain "apps" (such as the iTunes client, the Amazon Kindle, Amazon Instant Video, and/or Google Play "apps") that use the ContentGuard DRM solution claimed in the '160 Patent, (b) providing instructions for using such "apps"; (c) providing advertisements for using such "apps"; and (d) providing hardware and software components required by the claims of the '160 Patent.[37]

---

[37] *See, e.g.*, http://huaweimobile.com;
http://www.huaweidevice.com/worldwide/productMobile.do?method=index&directoryId=6001
&treeId=3745;
http://www.huaweidevice.com/worldwide/productFeatures.do?pinfoId=3298&directoryId=6001
&treeId=3745&tab=0;
http://www.huaweidevice.com/worldwide/technicaIndex.do?method=gotoProductSupport&prod
uctId=3942&tb=0%29;

Huawei engages in the foregoing activities because it specifically intends end users of Huawei products to use "apps" that deploy, and content providers to distribute content that is protected by, the ContentGuard DRM solutions claimed in the '160 Patent.  Huawei thereby specifically intends end users and content providers to infringe the '160 Patent.  Huawei derives revenue from both its own and the third-party infringers' infringing activities.  Indeed, Huawei's ability to sell the accused products is wholly dependent upon the availability of these "apps" and the digital content they make available to users.  Huawei also contributorily infringes the '160 Patent because there is no substantial non-infringing use of these "apps" on the accused Huawei products.  These "apps" cannot be used with accused Huawei products without infringing the '160 Patent.

92.     Motorola has been and is now directly infringing and/or indirectly infringing the '160 Patent by way of inducement and/or contributory infringement, literally and/or under the doctrine of equivalents, in this District, and elsewhere, in violation of 35 U.S.C. § 271, including by making, using, selling, and/or offering for sale in the United States or importing into the United States products covered by at least one claim of the '160 Patent.  Motorola has notice of the '160 Patent.  Motorola actively induces content providers and/or end users  of Motorola products to infringe the '160 Patent by, among other things, (a) providing access to certain "apps" (such as the iTunes client, the Amazon Kindle, Amazon Instant Video, and/or Google Play "apps") that use the ContentGuard DRM solution claimed in the '160 Patent, (b) providing instructions for using such "apps"; (c) providing advertisings for using such "apps"; and (d)

---

http://www.huaweidevice.com/worldwide/downloadCenter.do?method=toDownloadFile&flay=document&softid=NDcxOTM=;
http://www.uscellular.com/uscellular/pdf/huawei-ascend-y-google-play.pdf.

providing hardware and software components required by the claims of the '160 Patent.[38] Motorola engages in the foregoing activities because it specifically intends end users of Motorola products to use "apps" that deploy, and content providers to distribute content that is protected by, the ContentGuard DRM solutions claimed in the '160 Patent.  Motorola thereby specifically intends end users and content providers to infringe the '160 Patent.  Motorola derives revenue from both its own and the third-party infringers' infringing activities.  Indeed, Motorola's ability to sell the accused products is wholly dependent upon the availability of these "apps" and the digital content they make available to users.  Motorola also contributorily infringes the '160 Patent because there is no substantial non-infringing use of these "apps" on the accused Motorola products.  These "apps" cannot be used with accused Motorola products without infringing the '160 Patent.

## COUNT 9:  INFRINGEMENT OF THE '556 PATENT

## (AGAINST ALL DEFENDANTS)

93.     Paragraphs 1 through 46 are incorporated by reference as if fully stated herein.

94.     Amazon has been and is now directly infringing and/or indirectly infringing the '556 Patent by way of inducement and/or contributory infringement, literally and/or under the doctrine of equivalents, in this District, and elsewhere, in violation of 35 U.S.C. § 271, including by making, using, selling, and/or offering for sale in the United States or importing into the United States products covered by at least one claim of the '556 Patent.  Amazon has notice of

---

[38] *See, e.g.*, http://www.motorola.com/us/FLEXR1-1/Moto-X/FLEXR1.html;
https://motorola-global-
portal.custhelp.com/app/product_page/faqs/p/30,6720,8882/session/L3RpbWUvMTM4Mzc3MT
A0MS9zaWQvblhuRklIRWw%3D#/how_do_i;
http://www.motorola.com/us/ANDROID/m-Android-Overview.html;
http://www.mobileworldlive.com/verizon-preloads-amazon-kindle-app-on-android-devices;
https://motorola-global-portal.custhelp.com/app/answers/detail/a_id/70762/action/auth.

the '556 Patent.   Amazon actively induces content providers and/or end users  of Amazon products to infringe the '556 Patent by, among other things, (a) providing access to certain "apps" (such as the iTunes client, the Amazon Kindle, Amazon Instant Video, and/or Google Play "apps") that use the ContentGuard DRM solution claimed in the '556 Patent, (b) providing instructions for using such "apps"; (c) providing advertisings for using such "apps"; and (d) providing hardware and software components required by the claims of the '556 Patent.[39] Amazon engages in the foregoing activities because it specifically intends end users of Amazon products to use "apps" that deploy, and content providers to distribute content that is protected by, the ContentGuard DRM solutions claimed in the '556 Patent.   Amazon thereby specifically intends end users and content providers to infringe the '556 Patent.   Amazon derives revenue from both its own and the third-party infringers' infringing activities.   Indeed, Amazon's ability to sell the accused products is wholly dependent upon the availability of these "apps" and the digital content they make available to users.   Amazon also contributorily infringes the '556 Patent because there is no substantial non-infringing use of these "apps" on the accused Amazon products.   These "apps" cannot be used with accused Amazon products without infringing the '556 Patent.

95.    Apple has been and is now directly infringing and/or indirectly infringing the '556 Patent by way of inducement and/or contributory infringement, literally and/or under the doctrine of equivalents, in this District, and elsewhere, in violation of 35 U.S.C. § 271, including

---

[39] *See, e.g.*, http://www.amazon.com/kindle-fire-hd-best-family-kids-tablet/dp/B00CU0NSCU;
http://www.amazon.com/gp/help/customer/display.html?nodeId=201240840;
http://www.amazon.com/gp/feature.html/ref=kcp_iph_ln_ar?docId=1000301301;
http://www.amazon.com/gp/help/customer/display.html?nodeId=200729450;
http://www.amazon.com/gp/help/customer/display.html?nodeId=201009460;
http://www.amazon.com/kindle-fire-hd-best-family-kids-tablet/dp/B00CU0NSCU;
https://developer.amazon.com/sdk/fire/specifications.html.

by making, using, selling, and/or offering for sale in the United States or importing into the United States products covered by at least one claim of the '556 Patent.  Apple has notice of the '556 Patent.  Apple actively induces content providers and/or end users  of Apple products to infringe the '556 Patent by, among other things, (a) providing access to certain "apps" (such as the iTunes client, the Amazon Kindle, Amazon Instant Video, and/or Google Play "apps") that use the ContentGuard DRM solution claimed in the '556 Patent, (b) providing instructions for using such "apps"; (c) providing advertisings for using such "apps"; and (d) providing hardware and software components required by the claims of the '556 Patent.[40]  Apple engages in the foregoing activities because it specifically intends end users of Apple products to use "apps" that deploy, and content providers to distribute content that is protected by, the ContentGuard DRM solutions claimed in the '556 Patent.  Apple thereby specifically intends end users and content providers to infringe the '556 Patent.  Apple derives revenue from both its own and the third-party infringers' infringing activities.  Indeed, Apple's ability to sell the accused products is wholly dependent upon the availability of these "apps" and the digital content they make available to users.  Apple also contributorily infringes the '556 Patent because there is no substantial non-infringing use of these "apps" on the accused Apple products.  These "apps" cannot be used with accused Apple products without infringing the '556 Patent.

---

[40] *See, e.g.*, http://www.apple.com/itunes/features/#store;
http://www.apple.com/itunes/;
https://itunes.apple.com/in/app/kindle/id302584613;
https://itunes.apple.com/us/app/google-play-books/id400989007;
https://itunes.apple.com/us/app/app-for-google-music-free/id485638799;
https://itunes.apple.com/us/app/google-tv-remote/id422137859?l=es&mt=8;
http://www.apple.com/in/iphone-5s/specs/;
http://www.apple.com/in/ipad/specs/;
http://www.apple.com/in/ipod-touch/specs.html.

96.     BlackBerry has been and is now directly infringing and/or indirectly infringing the '556 Patent by way of inducement and/or contributory infringement, literally and/or under the doctrine of equivalents, in this District, and elsewhere, in violation of 35 U.S.C. § 271, including by making, using, selling, and/or offering for sale in the United States or importing into the United States products covered by at least one claim of the '556 Patent.  BlackBerry has notice of the '556 Patent.  BlackBerry actively induces content providers and/or end users  of BlackBerry products to infringe the '556 Patent by, among other things, (a) providing access to certain "apps" (such as the iTunes client, the Amazon Kindle, Amazon Instant Video, and/or Google Play "apps") that use the ContentGuard DRM solution claimed in the '556 Patent, (b) providing instructions for using such "apps"; (c) providing advertisings for using such "apps"; and (d) providing hardware and software components required by the claims of the '556 Patent.[41] BlackBerry engages in the foregoing activities because it specifically intends end users of BlackBerry products to use "apps" that deploy, and content providers to distribute content that is protected by, the ContentGuard DRM solutions claimed in the '556 Patent.  BlackBerry thereby specifically intends end users and content providers to infringe the '556 Patent.  BlackBerry derives revenue from both its own and the third-party infringers' infringing activities.  Indeed, BlackBerry's ability to sell the accused products is wholly dependent upon the availability of these "apps" and the digital content they make available to users.  BlackBerry also contributorily infringes the '556 Patent because there is no substantial non-infringing use of these "apps" on the

---

[41] *See, e.g.*, http://in.blackberry.com/apps/blackberry-world.html#tab-1;
http://appworld.blackberry.com/webstore/content/25058915/?countrycode=IN&lang=en;
http://appworld.blackberry.com/webstore/content/65525/?countrycode=US&lang=en;
http://in.blackberry.com/apps/blackberry-world.html#tab-1;
http://appworld.blackberry.com/webstore/content/25058915/?countrycode=IN&lang=en;
http://in.blackberry.com/smartphones/blackberry-z30/specifications.html.

accused BlackBerry products.  These "apps" cannot be used with accused BlackBerry products without infringing the '556 Patent.

97.     Huawei has been and is now directly infringing and/or indirectly infringing the '556 Patent by way of inducement and/or contributory infringement, literally and/or under the doctrine of equivalents, in this District, and elsewhere, in violation of 35 U.S.C. § 271, including by making, using, selling, and/or offering for sale in the United States or importing into the United States products covered by at least one claim of the '556 Patent.  Huawei has notice of the '556 Patent.  Huawei actively induces content providers and/or end users  of Huawei products to infringe the '556 Patent by, among other things, (a) providing access to certain "apps" (such as the iTunes client, the Amazon Kindle, Amazon Instant Video, and/or Google Play "apps") that use the ContentGuard DRM solution claimed in the '556 Patent, (b) providing instructions for using such "apps"; (c) providing advertisings for using such "apps"; and (d) providing hardware and software components required by the claims of the '556 Patent.[42] Huawei engages in the foregoing activities because it specifically intends end users of Huawei products to use "apps" that deploy, and content providers to distribute content that is protected by, the ContentGuard DRM solutions claimed in the '556 Patent.  Huawei thereby specifically intends end users and content providers to infringe the '556 Patent.  Huawei derives revenue from both its own and the third-party infringers' infringing activities.  Indeed, Huawei's ability

---

[42] *See, e.g.*, http://huaweimobile.com;
http://www.huaweidevice.com/worldwide/productMobile.do?method=index&directoryId=6001&treeId=3745;
http://www.huaweidevice.com/worldwide/productFeatures.do?pinfoId=3298&directoryId=6001&treeId=3745&tab=0;
http://www.huaweidevice.com/worldwide/technicaIndex.do?method=gotoProductSupport&prodId=3942&tb=0%29;
http://www.huaweidevice.com/worldwide/downloadCenter.do?method=toDownloadFile&flay=document&softid=NDcxOTM=;
http://www.uscellular.com/uscellular/pdf/huawei-ascend-y-google-play.pdf.

to sell the accused products is wholly dependent upon the availability of these "apps" and the digital content they make available to users.  Huawei also contributorily infringes the '556 Patent because there is no substantial non-infringing use of these "apps" on the accused Huawei products.  These "apps" cannot be used with accused Huawei products without infringing the '556 Patent.

98.     Motorola has been and is now directly infringing and/or indirectly infringing the '556 Patent by way of inducement and/or contributory infringement, literally and/or under the doctrine of equivalents, in this District, and elsewhere, in violation of 35 U.S.C. § 271, including by making, using, selling, and/or offering for sale in the United States or importing into the United States products covered by at least one claim of the '556 Patent.  Motorola has notice of the '556 Patent.  Motorola actively induces content providers and/or end users  of Motorola products to infringe the '556 Patent by, among other things, (a) providing access to certain "apps" (such as the iTunes client, the Amazon Kindle, Amazon Instant Video, and/or Google Play "apps") that use the ContentGuard DRM solution claimed in the '556 Patent, (b) providing instructions for using such "apps"; (c) providing advertisings for using such "apps"; and (d) providing hardware and software components required by the claims of the '556 Patent.[43] Motorola engages in the foregoing activities because it specifically intends end users of Motorola products to use "apps" that deploy, and content providers to distribute content that is protected by, the ContentGuard DRM solutions claimed in the '556 Patent.  Motorola thereby specifically

---

[43] *See, e.g.*, http://www.motorola.com/us/FLEXR1-1/Moto-X/FLEXR1.html;
https://motorola-global-
portal.custhelp.com/app/product_page/faqs/p/30,6720,8882/session/L3RpbWUvMTM4Mzc3MT
A0MS9zaWQvblhuRklIRWw%3D#/how_do_i;
http://www.motorola.com/us/ANDROID/m-Android-Overview.html;
http://www.mobileworldlive.com/verizon-preloads-amazon-kindle-app-on-android-devices;
https://motorola-global-portal.custhelp.com/app/answers/detail/a_id/70762/action/auth.

intends end users and content providers to infringe the '556 Patent.  Motorola derives revenue from both its own and the third-party infringers' infringing activities.  Indeed, Motorola's ability to sell the accused products is wholly dependent upon the availability of these "apps" and the digital content they make available to users.  Motorola also contributorily infringes the '556 Patent because there is no substantial non-infringing use of these "apps" on the accused Motorola products.  These "apps" cannot be used with accused Motorola products without infringing the '556 Patent.

## WILLFUL INFRINGEMENT

99.     Defendants' infringement occurred with knowledge of and/or objective recklessness and thus has been and continues to be willful and deliberate.  Defendants' willful and deliberate infringement entitles ContentGuard to enhanced damages under 35 U.S.C. § 285.

## IRREPARABLE HARM TO CONTENTGUARD

100.    ContentGuard has been irreparably harmed by the Defendants' acts of infringement, and will continue to be harmed unless and until Defendants' acts of infringement are enjoined by this Court.  ContentGuard has no adequate remedy at law to redress Defendants' continuing acts of infringement.  The hardships that would be imposed upon Defendants by an injunction are less than those faced by ContentGuard should an injunction not issue.  Furthermore, the public interest would be served by issuance of an injunction.  As a result of Defendants' acts of infringement, ContentGuard has suffered and will continue to suffer damages in an amount to be proved at trial.

**PRAYER FOR RELIEF**

**WHEREFORE,** ContentGuard prays for the following relief:

101.    A judgment that Amazon directly and/or indirectly infringes the '859, '072, '576, '956, '007, '160, and '556 patents;

102.    A judgment that Apple directly and/or indirectly infringes the '859, '072, '280, '053, '576, '956, '007, '160, and '556 patents;

103.    A judgment that BlackBerry directly and/or indirectly infringes the '859, '072, '280, '053, '576, '956, '007, '160, and '556 patents;

104.    A judgment that Huawei directly and/or indirectly infringes the '859, '072, '280, '053, '576, '956, '007, '160, and '556 patents;

105.    A judgment that Motorola directly and/or indirectly infringes the '859, '072, '280, '053, '576, '956, '007, '160, and '556 patents;

106.    A permanent injunction preventing Amazon and its respective officers, directors, agents, servants, employees, attorneys, licensees, successors, and assigns, and those in active concert or participation with any of them, from engaging in infringing activities with respect to the '859, '072, '576, '956, '007, '160, and '556 patents;

107.    A permanent injunction preventing Apple and its respective officers, directors, agents, servants, employees, attorneys, licensees, successors, and assigns, and those in active concert or participation with any of them, from engaging in infringing activities with respect to the '859, '072, '280, '053, '576, '956, '007, '160, and '556 patents;

108.    A permanent injunction preventing Blackberry and its respective officers, directors, agents, servants, employees, attorneys, licensees, successors, and assigns, and those in

active concert or participation with any of them, from engaging in infringing activities with respect to the '859, '072, '280, '053, '576, '956, '007, '160, and '556 patents;

109.   A permanent injunction preventing Huawei and its respective officers, directors, agents, servants, employees, attorneys, licensees, successors, and assigns, and those in active concert or participation with any of them, from engaging in infringing activities with respect to the '859, '072, '280, '053, '576, '956, '007, '160, and '556 patents;

110.   A permanent injunction preventing Motorola and its respective officers, directors, agents, servants, employees, attorneys, licensees, successors, and assigns, and those in active concert or participation with any of them, from engaging in infringing activities with respect to the '859, '072, '280, '053, '576, '956, '007, '160, and '556 patents;

111.   A judgment that Amazon's infringement has been willful;

112.   A judgment that Apple's infringement has been willful;

113.   A judgment that BlackBerry's infringement has been willful;

114.   A judgment that Huawei's infringement has been willful;

115.   A judgment that Motorola's infringement has been willful;

116.   A ruling that this case is exceptional under 35 U.S.C. § 285 as to each Defendant;

117.   A judgment and order requiring each Defendant to pay ContentGuard damages under 35 U.S.C. § 284, including supplemental damages for any continuing post-verdict infringement up until entry of judgment, with an accounting, as needed, as well as treble damages for willful infringement under 35 U.S.C. § 285;

118.   A judgment and order requiring each Defendant to pay ContentGuard's costs of this action (including all disbursements);

119.    A judgment and order requiring each Defendant to pay pre-judgment and post-judgment interest on damages awarded;

120.    A judgment and order requiring that in the event a permanent injunction preventing future infringement is not granted, that Defendants pay ContentGuard a compulsory ongoing licensing fees; and

121.    Such other and further relief as the Court may deem just and proper.

Dated:  December 18, 2013

Respectfully submitted,

/s/ Sam Baxter

Samuel F. Baxter
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
MCKOOL SMITH, P.C.
104 East Houston, Suite 300
Marshall, Texas 75670
Telephone:  (903) 923-9000
Facsimile: (903) 923-9099

Robert A. Cote
rcote@mckoolsmith.com
Radu A. Lelutiu
rlelutiu@mckoolsmith.com
Shahar Harel
sharel@mckoolsmith.com
David R. Dehoney
ddehoney@mckoolsmith.com
MCKOOL SMITH P.C.
One Bryant Park, 47th Floor
New York, New York 10036
Telephone: (212) 402-9400
Facsimile: (212) 402-9444

Holly E. Engelmann
hengelmann@mckoolsmith.com
Seth R. Hasenour
shasenour@mckoolsmith.com
MCKOOL SMITH P.C.
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone:  (214) 978-4000
Facsimile:   (214) 978-4004

**ATTORNEYS FOR CONTENTGUARD
HOLDINGS, INC.**