**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| ContentGuard Holdings, Inc., *Plaintiff*, v. Amazon.com, Inc.; Apple Inc.; BlackBerry Limited (fka Research In Motion Limited) and BlackBerry Corporation (fka Research In Motion Corporation); HTC Corporation and HTC America, Inc.; Huawei Technologies Co., Ltd. and Huawei Device USA, Inc.; Motorola Mobility LLC; Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC, *Defendants*. | Civil Action No. 2:13-cv-01112-JRG JURY TRIAL DEMANDED |

**PLAINTIFF CONTENTGUARD HOLDINGS, INC.'S CONSOLIDATED SUR-REPLY
IN RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS
<u>CONTENTGUARD'S AMENDED COMPLAINT (DKT. 95, 103, 104)</u>**

Plaintiff ContentGuard respectfully files this Consolidated Sur-Reply in Further Response to the Motions to Dismiss ContentGuard's Amended Complaint (Dkt. 95, 103, 104).

## ARGUMENT

Defendants' replies confirm that the Amended Complaint sufficiently spells out the metes and bounds of ContentGuard's claims. Feigning confusion and pretending that the Amended Complaint is their only opportunity to learn all the specifics, Defendants nonetheless argue that ContentGuard should be ordered to plead even more facts. Defendants' arguments, which in large part rely on a contorted and myopic reading of the Amended Complaint, fly in the face of the Federal Circuit's holding that "a patentee need only plead facts *sufficient to place the alleged infringer on notice* as to what he must defend." *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1357 (Fed. Cir. 2007) (emphasis added). As discussed below, the Amended Complaint readily meets the Federal Circuit's pleading requirements and Defendants' assertions to the contrary are incorrect.

### A.     The Amended Complaint States a Claim for Direct Infringement

None of Defendants' arguments in support of their request for dismissal of ContentGuard's direct infringement claims passes muster.

*First*, Defendants argue that ContentGuard's direct infringement claims should be dismissed because the Amended Complaint fails to identify the "type or category of products supposedly covered by [ContentGuard's] patents." Dkt. 127 at 6-7. But as ContentGuard explained in its Response, the Amended Complaint more than meets the requirements of Form 18. First, the Amended Complaint makes clear that it concerns "smartphones, tablets, e-readers, smart televisions, or set top boxes . . . capable . . . to download, play, and display digital

content," *i.e.*, DRM-protected devices.[1]  Dkt. 22 ¶ 11.  Second, the Amended Complaint gives examples of the software that enables the DRM in such DRM-protected devices: (1) devices pre-loaded with and/or that access and use the Amazon Kindle/Instant Video DRM-enabling software "apps"; (2) devices pre-loaded with and/or that access and use the Google Play DRM-enabling software "apps"; (3) devices preloaded with and/or that access and use the Apple iTunes DRM-enabling software "apps"; and (4) devices that implement the Unique Identifier Technology Solution ("UITS"), a standard that specifies a particular format for distributing content to end users of DRM-protected devices to track distribution of such content in a manner that protects against piracy.  Dkt. 22 ¶¶ 50-54.  Third, the Amended Complaint specifically lists by Defendant, and by device name, examples of DRM-protected devices that ContentGuard is accusing of infringement: the Apple iPad, the Amazon Kindle Fire, the Blackberry Z10, the HTC One Max, the Huawei Ascend, the Motorola Moto X, and the Samsung Galaxy S4.  Dkt. 22 ¶¶ 50-54.  These allegations are more than sufficient to meet the requirements of Form 18 and this Court's precedent,[2] and Defendants' unsupported assertions to the contrary are pure sophistry.

---

[1] Apple faults the Amended Complaint for not using the shorthand formulas ContentGuard used in its Response to collectively refer to the accused devices (*i.e.*, "DRM-protected devices") and the accused software apps (*i.e.*, "DRM-enabling software 'apps'").  *See* Dkt. 127 at 7.  But neither Form 18 nor this Court's precedent requires the use of shorthand formulas.  Apple also argues that the reference to "smartphones, tablets, e-readers, smart televisions, or set top boxes . . . capable . . . to download, play, and display digital content" appears in the "background" section of the Amended Complaint.  Dkt. 127 at 7.  But each substantive count of the Amended Complaint incorporates by reference the allegations that precede it.  *See*  Dkt. 22 ¶¶ 56, 64, 72, 79, 86, 94, 102, 110, 118.

[2] *See, e.g., Lodsys, LLC v. Brother Int'l Corp.*, 2012 U.S. Dist. LEXIS 31456, at *14 (E.D. Tex. Mar. 8, 2012) ("Here, the Complaint sufficiently pleads direct infringement of the '078 patent because it alleges that 'Canon makes, sells, offers to sell, and/or uses infringing computer server(s).'"); *LML Patent Corp. v. Nat'l Bank of Daingerfield*, 2011 U.S. Dist. LEXIS 44700, at *2 (E.D. Tex. Mar. 24, 2011) ("That is, similar to the electric motor example provided in Form 18, the Amended Complaint identifies a general category of accused products and services as 'payment services.'  Accordingly, Plaintiff's Amended Complaint contains enough detail to allow Defendants to answer and thus meets the notice pleading required to survive a Rule

*Second*, Defendants argue that the Federal Circuit's decision in *K-Tech Telecommunications, Inc. v. Time Warner Cable, Inc.* requires patentees to identify by name all the products they accuse of infringement. Dkt. 126 at 8.  Actually, *K-Tech* holds the precise opposite: "We do not read Form 18 . . . to require that a plaintiff identify an accused device by name."  714 F.3d 1277, 1286 (Fed. Cir. 2013).

*Third*, Apple argues that the Amended Complaint is deficient because it "provides no indication of *how* direct infringement occurs." Dkt. 127 at 8 (emphasis added).  In other words, Apple argues that ContentGuard ought to provide detailed infringement contentions at the pleading stage.  But as Apple surely knows, "it is in the discovery phase of litigation, not pleading, that the parties are required to conscientiously develop facts that support the various theories of infringement, or non-infringement as the case may be."  *Tune Hunter, Inc. v. Samsung Telcomms. Am., LLC*, 2010 U.S. Dist. LEXIS 31980, at *12 (E.D. Tex. Apr. 1, 2010).

*Fourth*, Apple argues that the Amended Complaint should be dismissed because it does not meet the notice element of Form 18.  As ContentGuard explained in the Response, however, the Amended Complaint adequately alleges that Apple had pre-suit notice of ContentGuard's infringement allegations (Dkt. 22 ¶¶ 58, 66, 73, 80, 88, 96, 104, 112, 120) because, as of the time of filing, ContentGuard "ha[d] made numerous attempts to negotiate a license agreement with Apple" (Dkt. 22 ¶ 42).  Apple never explains why these allegations are insufficient to satisfy the notice element of Form 18.  Additionally, as ContentGuard explained in the Response, this Court

---

12(b)(6) motion."); *Charles E. Hill & Assocs. v. ABT Elecs., Inc.*, 2010 U.S. Dist. LEXIS 99264, at *8 (E.D. Tex. Aug. 31, 2010) ("Similarly, [plaintiff]'s complaint describes the asserted patent and accuses 'electronic catalogs.' This level of detail is sufficient at the pleading stage. Additional details about the accused products will be provided in the Local Rule 3-1 disclosures."); *Traffic Info., LLC v. Yahoo! Inc.*, 2010 U.S. Dist. LEXIS 61039, at *7 (E.D. Tex. Apr. 13, 2010) ("Similarly, [plaintiff]'s complaint states the title of the asserted patent, 'System for Providing Traffic Information,' and accused 'traffic information systems and products and services.' This level of detail is sufficient at the pleading stage.").

has found that knowledge of a plaintiff's infringement allegations in its complaint is sufficient for a claim for direct infringement. *See Lone Star Document Mgmt., LLC v. Atalasoft, Inc.*, 2012 U.S. Dist. LEXIS 129979, at *9 (E.D. Tex. Sept. 12, 2012) ("Lone Star further complies with Form 18 because Compulink received notice of its alleged infringement when Lone Star served them with the lawsuit."). Apple's request that the Court not follow *Lone Star* (*see* Dkt. 127 at 8 n.3) is baseless.

### B.     The Amended Complaint States a Claim for Induced Infringement

None of Defendants' arguments in support of their request for dismissal of ContentGuard's induced infringement claims passes muster.

*First*, Defendants' assertion that the Amended Complaint does not adequately plead pre-suit knowledge of the patents-in-suit (Dkt 126 at 1-2; Dkt. 127 at 2-3) is incorrect.[3] The Amended Complaint alleges that ContentGuard "ha[d] made numerous attempts to negotiate a license agreement with [Defendants]." Dkt. 22 ¶¶ 41-47. While Apple argues that "ContentGuard does not even allege that it provided Apple with notice of any of the allegations it attempts to advance here" (Dkt 127 at 2), this argument is a red herring. The relevant inquiry is not whether the accused infringer received a detailed *explanation* of the patentee's infringement claims; rather, the question turns on whether the accused infringer had "***knowledge***" or was made "***aware of . . . [the] patent***" itself. *Titanide Ventures, LLC v. IBM Corp.*, 2012 U.S. Dist. LEXIS 163430, at *10. (E.D. Tex. Oct. 18, 2012) (emphasis added). Defendants also argue that the Amended Complaint fails to plead knowledge of the patents-in-suit because the licensing negotiations referenced therein concerned ContentGuard's "extensive portfolio of DRM patents," not the patents-in-suit specifically. Dkt. 126 at 1. But Defendants fail to cite a single case in

---

[3] Defendants appear to concede that the Amended Complaint sufficiently "provide[s] notice of the patents going forward." Dkt. 126 at 2; Dkt. 127 at 2-3.

which a pre-suit negotiation involving a portfolio of patents was deemed insufficient to constitute notice as to the patents comprising the portfolio.[4]

*Second*, Defendants argue that the Amended Complaint does not sufficiently allege Defendants' specific intent to induce direct infringement by third parties. Dkt. 126 at 2-3; Dkt. 127 at 3-4. To support this argument, however, Defendants offer nothing more than their say-so. Indeed, while Defendants argue that the Amended Complaint's "disconnected body of 'instructions,' 'websites,' and 'publications' relating to a range of apps and devices" do not contain "instructions for use that, if followed, would infringe the patents-in-suit" (Dkt. 126 at 3; *see also* Dkt. 127 at 4), Defendant are plainly wrong. Among other things, the "instructions," "websites," and "publications" referenced in the Amended Complaint expressly teach the user of mobile devices **how to access, purchase, and play DRM-protected content**, including e-books, videos, music, and "apps." As in *Tierra Intelectual Borinnquen, Inc. v. Toshiba, Inc.*, "treated in the light most favorable to the Plaintiff, it is reasonable to infer from an instruction in a user guide that the publisher of the guide intends for the product to be used in the manner described. Thus, Plaintiff has properly pleaded a claim for induced infringement." 2014 U.S. Dist. LEXIS 19308, at *9-10 (E.D. Tex. Feb. 14, 2014); *Titanide Ventures*, 2012 U.S. Dist. LEXIS 163430, at *11 (finding allegation of intent for inducement claim sufficient where plaintiff alleged that defendant "advertised the infringing product on its website and gave instructions on how to use

---

[4] Defendants argue that *Affinity Labs of Tex., LLC v. Samsung Elecs. Co.* stands for the proposition that a defendant's "general awareness of [the] plaintiff's patent portfolio is not sufficient to plead [the] knowledge element of induced infringement claim." Dkt. 126 at 1-2. *Affinity Labs* holds no such thing. In that case, the plaintiff conceded that it had ***not*** brought its portfolio of relevant patents to the defendant's attention, but nonetheless argued that (1) "[o]ther patents in the . . . family have been cited by major businesses in the computer, software, communications, automotive, and mobile industries"; and (2) "Plaintiff . . . previously sued Samsung for infringement of similar patents." *Affinity Labs of Tex., LLC v. Samsung Elecs. Co.,* No. 13-364-WSS, slip op. at 11 (W.D. Tex. April 30, 2014). The facts of *Affinity Labs* are very much unlike those before the Court.

-5-

it"). Defendants also argue that the Amended Complaint's allegations are insufficient because "a defendant must have the specific intent to induce third parties to *infringe the patent-in-suit*, not merely specific intent to induce third parties to use the defendant's product." Dkt. 126 at 3; *see also* Dkt. 127 at 3-4. But ContentGuard's allegations go beyond establishing that Defendants intend that third parties *use* their products; indeed, the Amended Complaint alleges that Defendants instruct third parties to use the accused products in a ***specific way***, which ***directly implicates*** ContentGuard's patents. Stated another way, the instructions ContentGuard identifies in the Amended Complaint are not instructions on how to power up the accused devices—they are instructions on how to access, download, and play DRM-protected content. These are the same type of instructions the Court found sufficient at the pleading stage in *Tierra v. Toshiba*. 2014 U.S. Dist. LEXIS 19308, at *9-10 ("it is reasonable to infer from an instruction in a user guide that the publisher of the guide intends for the product to be used in the manner described.").

*Third*, while conceding that ContentGuard adequately identifies the third parties that Defendants are alleged to induce to infringe (*i.e.*, "content providers and/or end users of [each Defendant's] products" (*see* Dkt. 22 ¶¶ 57-125)), Defendants argue that the Amended Complaint is deficient in that it "alleges no facts suggesting ***how*** the use of apps or the distribution of content results in infringement." Dkt. 127 at 3; *see also* Dkt. 126 at 4. Again, Defendants' arguments—which if endorsed would require detailed infringement contentions to be submitted at the pleading stage—ignore this Court's precedent. "It is in the discovery phase of litigation, not pleading, that the parties are required to conscientiously develop facts that support the various theories of infringement, or non-infringement as the case may be." *Tune Hunter, Inc.,*

2010 U.S. Dist. LEXIS 31980, at *12.  Thus, at the pleading stage, ContentGuard is not required to spell out the precise details of *how* direct infringement occurs.

### C. The Amended Complaint States a Claim for Contributory Infringement

None of Defendants' arguments in support of their request for dismissal of ContentGuard's contributory infringement passes muster.

*First*, Defendants argue that the Amended Complaint fails to sufficiently allege the underlying direct infringement to which Defendants contribute, and Defendants' knowledge of the patents-in-suit.  These arguments have no merit, as ContentGuard explained above.

*Second*, Apple argues that the Amended Complaint "identifies no infringing combination" involving the accused "app" components.[5]  Dkt. 127 at 5.  That is wrong.  The Amended Complaint expressly alleges that the "apps" in question "cannot be used ***with accused [hardware] products*** without infringing the . . . Patent[s-in-suit]."  Dkt. 22 ¶¶ 57-125.  Thus, an infringing combination is properly alleged.

*Third*, Defendants argue that the Amended Complaint does not adequately allege materiality.  Dkt. 126 at 7; Dkt. 127 at 5.  Here again, Defendants simply ignore the Amended Complaint.  ContentGuard alleges that Defendants' ability to sell "accused products is wholly dependent upon the availability of these 'apps' and the digital content they make available to users."  Dkt. 22 ¶¶ 57-63, 65-71, 73-78, 80-85, 87-93, 95-101, 111-17, 119-25.  Further, in paragraph 11, which is incorporated by reference in each of the paragraphs that set forth ContentGuard's actual claims (*see* Dkt. 22 ¶¶ 56, 64, 72, 79, 86, 94, 102, 110, 118), the

---

[5] Apple also argues that the Amended Complaint does not sufficiently identify DRM-enabling software "apps" as the accused components.  Dkt. 127 at 4-5.  It is true that the Amended Complaint does not use the shorthand "DRM-enabling 'apps'."  In context, however, each paragraph of the Amended Complaint that concerns the "apps" alleged to have no "substantial non-infringing use" clearly refers to the type of "apps" previously enumerated, *i.e.*, "'apps' []such as the iTunes client, the Amazon Kindle, Amazon Instant Video, and/or Google Play."  Dkt. 22 ¶¶ 57-125.

Amended Complaint also alleges that that "[t]he availability of rich multimedia content [*i.e.*, DRM-protected content such as movies, books, and 'apps' that provide a useful tool or game] is a key driver of the enormous success experienced by manufacturers of devices such as smartphones . . . whose commercial value is largely driven by the[ir] capability . . . to download, play, and display digital content." Dkt. 22 ¶ 11. This more than adequately establishes that the accused components, *i.e.*, the DRM-enabling "apps" that enable the accused devices to render DRM-protected content, are a material part of the combination. Notably, the standard for what constitutes a "material" part of an infringing combination is not high. 5 Donald S. Chisum, *Chisum on Patents* § 17.04[4], at 17-90 (Matthew Bender Rel. 130-Nov. 2011) ("[T]he term 'material' does not seem to qualify significantly the requirement that the item in question be a 'part' of the 'invention' . . . . If the item is part of the invention and meets the other requirements of Section 271(c) . . ., then it will almost inevitably constitute a 'material' part of the invention.").

*Fourth*, Defendants argue that the Amended Complaint does not sufficiently allege that DRM-enabling "apps" lack substantial non-infringing uses. Dkt. 126 at 5-6; Dkt. 127 at 5-6. But the Amended Complaint alleges that the accused "'apps' (such as the iTunes client, the Amazon Kindle, Amazon Instant Video, and/or Google Play 'apps') . . . use the ContentGuard DRM solution[s]" taught-by the patents-in-suit. Dkt. 22 ¶¶ 57-63, 65-71, 73-78, 80-85, 87-93, 95-101, 111-17, 119-25. Thus, ContentGuard repeatedly alleges that the "apps" embody ContentGuard's patents and have no non-infringing uses.[6] Defendants further argue that ContentGuard "cannot limit the accused component to encompass only the allegedly infringing

---

[6] Apple notes that music available through iTunes is allegedly "DRM-free." Dkt. 127 at 6. As ContentGuard explained in its Infringement Contentions, however, music distributed through iTunes infringes at least one of the patents-in-suit, which teaches a transaction-tracking protocol that provides a type of anti-piracy protection. *See* Exhibit A.

-8-

functionality." Dkt. 126 at 6. But this Court's precedent is clear that a plaintiff may establish the absence of a "substantial non-infringing use" by showing that the *infringing feature* lacks such a use, even if the product as a whole may have non-infringing uses. *Tierra Intelectual Borinquen, Inc. v. Asus Computer Int'l, Inc.,* 2014 U.S. Dist. LEXIS 38570, at *5 (E.D. Tex. Mar. 21, 2014) ("TIB has accused, not the entire Pantech Flex mobile phone, which no doubt does have substantial noninfringing uses, but rather its 'authentication methods,' which it alleges are a material part of the invention with no substantial noninfringing use . . . . The Court finds that TIB's allegations as pled are sufficient.").

**D.  The Amended Complaint Sufficiently Pleads Willful Infringement**

Citing cases that concern the burden of proof a plaintiff must sustain at summary judgment or trial, Defendants argue that ContentGuard is required to "plead facts to support an inference that Defendants acted to infringe the patents-in-suit with objective recklessness of the infringement risk." Dkt. 126 at 10. In other words, Defendants argue that, without the benefit of any discovery, ContentGuard should be required to put forth detailed allegations concerning Defendants' state of mind. That is not the law, and "much like direct infringement and its pleading requirements in accordance with Form 18 and Federal Circuit law, the bar for pleading willful infringement is not high." *Lodsys*, 2012 U.S. Dist. LEXIS 31456, at *16-17 (finding that plaintiff's assertions regarding defendant's knowledge were sufficient to state a plausible claim for relief for willful infringement); *Tracbeam LLC v. AT&T Inc.*, 2012 U.S. Dist. LEXIS 76310, at *10-11 (E.D. Tex. Mar. 27, 2012) (finding that plaintiff stated a claim where it "successfully pled enough facts regarding willful infringement to raise the right to relief above the speculative level.") (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Thus, at the pleading stage, a plaintiff alleging willful infringement need only provide enough facts, when taken as true, to state a plausible claim for relief. *See Lodsys*, 2012 U.S. Dist. LEXIS 31456, at *16-17.

Here, the Amended Complaint alleges that (1) the inventions disclosed in the patents-in-suit represent the "prevailing paradigm for distributing digital content over the Internet"; (2) market commentators have recognized that ContentGuard's innovations represent "the technological building blocks necessary to make the digital delivery of music, movies and other files secure," without which content creators would not permit their content to be distributed to users of Defendants' devices; (3) the strength of ContentGuard's patents-in-suit is underscored by the numerous patent license agreements ContentGuard has executed without any threat of litigation; (4) Defendants had knowledge of ContentGuard's patents-in-suit; and (5) ContentGuard has made numerous attempts to negotiate a license agreement with Defendants. Dkt. 22 ¶¶ 4, 9, 38-48. Taken as a whole and viewed in the light most favorable to ContentGuard, these allegations are more than sufficient to state a viable claim for willful infringement. *Asus*, 2014 U.S. Dist. LEXIS 28249, at *7 ("[R]eading the Complaint in the light most favorable to the Plaintiff, it is clear that Plaintiff has alleged both the objectively high likelihood of infringement and the mens rea necessary to a showing of willfulness. As such, TIB has adequately stated a claim that would entitle it to enhanced damages, and it would be inappropriate for the Court to strike TIB's prayer.").

## CONCLUSION

For the foregoing reasons, ContentGuard respectfully requests that the Court deny Defendants' Motions to Dismiss. Alternatively, should the Court grant either Motion in whole or in part, ContentGuard respectfully requests leave to re-plead any allegations that the Court finds require additional detail.

Dated: May 19, 2014                                 Respectfully submitted,

                                                                                 */s/ Sam Baxter*
                                                           Samuel F. Baxter
                                                           Texas State Bar No. 01938000
                                                           sbaxter@mckoolsmith.com
                                                           MCKOOL SMITH P.C.
                                                           104 East Houston, Suite 300
                                                           Marshall, Texas 75670
                                                           Telephone: (903) 923-9000
                                                           Facsimile: (903) 923-9099

| | |
|---|---|
| Robert A. Cote | Holly E. Engelmann |
| rcote@mckoolsmith.com | hengelmann@mckoolsmith.com |
| Radu A. Lelutiu | Seth R. Hasenour |
| rlelutiu@mckoolsmith.com | shasenour@mckoolsmith.com |
| Shahar Harel | MCKOOL SMITH P.C. |
| sharel@mckoolsmith.com | 300 Crescent Court, Suite 1500 |
| David R. Dehoney | Dallas, Texas 75201 |
| ddehoney@mckoolsmith.com | Telephone: (214) 978-4000 |
| Angela M. Vorpahl | Facsimile: (214) 978-4004 |
| avorpahl@mckoolsmith.com | |
| MCKOOL SMITH P.C. | |
| One Bryant Park, 47th Floor | |
| New York, New York 10036 | |
| Telephone: (212) 402-9400 | |
| Facsimile: (212) 402-9444 | |

                                                            **ATTORNEYS FOR CONTENTGUARD HOLDINGS, INC.**

## **CERTIFICATE OF SERVICE**

    The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this document was served on all counsel who have consented to electronic service on May 19, 2014.  Local Rule CV-5(a)(3)(A).

*/s/ Radu A. Lelutiu*

McKool 990589v1