**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| ContentGuard Holdings, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Amazon.com, Inc., et al. <br><br> Defendants. | Civil Action No. 2:13-cv-1112-JRG <br> JURY TRIAL DEMANDED |

**MOTOROLA MOBILITY LLC'S REPLY IN SUPPORT OF ITS MOTION TO PRECLUDE DR. DAVID J. TEECE FROM ACCESSING CONFIDENTIAL INFORMATION UNDER THE PROTECTIVE ORDER AND ACTING AS A CONSULTANT IN THIS MATTER**

Motorola paid Dr. Teece and his firm, BRG, more than $1,000,000 in consulting fees for their work on Motorola's past and ongoing patent litigations against Microsoft. These litigations were and are some of the most significant patent cases in which Motorola ever has been involved; and, as one of Motorola's principal experts on licensing issues, Dr. Teece played a significant role in formulating and executing Motorola's litigation plan with respect to damages. Motorola was willing to, and did, hire Dr. Teece based on his express representation and agreement that, "[N]otwithstanding any of the provisions of the April 21 letter, Dr. David Teece will not be engaged adversely to Motorola during the terms of this engagement." (Dkt. 350, Ex. A, at 2.)

Now, apparently presented with a more lucrative consulting engagement by ContentGuard, Dr. Teece has dropped Motorola as a client – even though at least three of the Microsoft cases for which he was retained remain pending – and has declared his intention to act as a testifying expert adverse to Motorola on patent licensing issues. Indeed, there is no longer any question that Dr. Teece remained engaged by Motorola up to Thursday, January 15, 2015, when Dr. Teece and BRG, faced with the present motion to disqualify, formally terminated their engagement with Motorola and expressed, for the first time, their desire to begin the required process of collecting and returning all confidential and proprietary Motorola materials in Dr. Teece's possession. (1/15/15 Termination Letter from Teece/BRG, attached as Exhibit AA.)[1] Dr. Teece's decision to play "hot potato" with his consulting clients, and to turn his back on his contractual obligation to Motorola, not only leaves Motorola without his services in the pending Microsoft Matters, but also places Motorola in the difficult position of having to defend itself in this matter against Teece's opinions regarding Motorola's licensing policies, practices and strategies – a subject on which Teece obtained confidential and highly-sensitive information and insight from his meetings with Motorola executives and attorneys and from his review of multiple licensing documents that are outside the scope of discovery in this case.

---

[1] Though on January 15, Dr. Teece indicated his intent to terminate the engagement with Motorola, the parties still are working out appropriate and necessary "case closing procedures," which will include the return to Motorola of all "case information" presently in Dr. Teece's and BRG's possession. (1/21/15 Letter from Ropes & Gray to Teece/BRG, attached as Exhibit BB.)

The governing protective order is designed and intended to limit the dissemination of confidential information only to those persons who properly are involved in this litigation and who appropriately need access to such confidential information to support their work. Dr. Teece is not properly involved in this litigation and should not be permitted to compound his injury to Motorola by accessing and reviewing still more of Motorola's confidential licensing information than he already has received.

There remains more than two-and-a-half months until opening expert reports are due in this case; more than enough time for ContentGuard to choose and retain a damages expert who did not commit to act as Motorola's own licensing expert, who did not access confidential and highly-sensitive Motorola licensing information, and who did not sign a contract agreeing that he would "not be engaged adversely to Motorola."

## I. DR. TEECE OBTAINED MOTOROLA CONFIDENTIAL INFORMATION THAT IS LIKELY TO RELATE TO HIS TESTIMONY IN THIS MATTER

ContentGuard's opposes Motorola's motion on the grounds that there is "*no* relationship" between Dr. Teece's work in the Microsoft Matters and the work he will perform for ContentGuard in this case. (Dkt. 352 at 11.) More specifically, ContentGuard takes the position that because the technologies implicated by the patents-in-suit in this matter and in the Microsoft Matters are different, Dr. Teece's retention could not possibly result in prejudice to Motorola. (*Id.* at 12.) ContentGuard's view is unreasonably myopic.

Dr. Teece is not being offered by ContentGuard as a technical expert; he is being offered as an economist to testify on patent licensing, reasonable royalty and hypothetical negotiation issues. These are issues that Dr. Teece unquestionably was asked to consider and opine on in the Microsoft Matters. That the technologies being licensed are different does not minimize or negate the import of the confidential and highly-sensitive insights that Dr. Teece received regarding Motorola's *licensing* practices, policies and strategies.

ContentGuard and Dr. Teece do not actually dispute that, in furtherance of his work for Motorola, Dr. Teece was given access to Motorola licenses and employees that he would not

otherwise have exposure to through discovery in this case. Nor do ContentGuard and Dr. Teece actually dispute that Dr. Teece met with Motorola executives and counsel to help formulate and execute damages litigation strategy in the Microsoft Matters. (Teece Decl. at ¶¶ 8-16.) Indeed, it is indisputable that Dr. Teece worked with Motorola counsel to draft multiple expert reports in the various Microsoft Matters These expert reports detailed Dr. Teece's opinions on behalf of Motorola with regard a host of licensing issues, including, especially, Motorola's policies and practices regarding RAND and patent pool licensing. (Hand-signed Declaration of Tom Miller, attached as Exhibit CC, at ¶¶ 7-13.) Importantly, ContentGuard has attempted both RAND and patent-pool licensing with respect to the patents-in-suit; and, accordingly, Dr. Teece's testimony for ContentGuard necessarily will touch on the same type of licensing issues as to which he consulted for Motorola in the Microsoft Matters, regardless of the underlying technologies.

Motorola cannot simply accept Dr. Teece's "promise" that he will not use in this case the insights he gained on a broad range of licensing matters from his work with Motorola personnel; information and insight once learned cannot be easily unlearned or segregated in the mind. It is precisely to avoid this problem that Motorola asked for and received Dr. Teece's commitment not to be "engaged adversely to Motorola during the terms of this engagement." (Dkt. 350, Ex. A at 2.) Rather than honor this commitment, Dr. Teece elected to sell his services to ContentGuard while still engaged by Motorola, and then when reminded of his contractual obligation, Dr. Teece terminated his engagement with Motorola on Thursday, January 15. (Ex. AA.) Dr. Teece's after-the-fact effort to evade his contractual commitment does not eliminate the prejudice that Motorola will suffer by virtue of Dr. Teece's playing both sides.[2]

---

[2] ContentGuard's attempted criticisms of the declaration of Tom Miller, Motorola's Vice President, Intellectual Property, are red herrings. For example, Mr. Miller's declaration was not "unsigned", it was electronically signed with Mr. Miller's authorization. To eliminate any "concern" for this, Motorola submits a hand-signed version of the declaration with this reply. (Ex. CC.) Further, ContentGuard's complaint that Mr. Miller did not document the information provided to Dr. Teece with particularity misses the point – Motorola and Mr. Miller do not wish to further compromise the confidentiality of their materials and/or further disclose to ContentGuard the substance of particular conversations concerning licensing strategy by detailing them in filed pleadings and declarations. Critically, Dr. Teece does not actually dispute Mr. Miller's statements establishing that, in connection with his work on the Microsoft Matters, Dr. Teece was given access to licensing materials, information and personnel that he would not otherwise be given access to as part of discovery in this case. (Teece Decl. at ¶¶ 8-16.)

3

## II. CONTENTGUARD'S RETENTION OF DR. TEECE IS DISTINGUISHABLE FROM ITS RETENTION OF JOHN BLAIR

ContentGuard contends that Motorola's failure to seek disqualification of another BRG employee, John Blair, somehow waived Motorola's right to object to Dr. Teece's service as ContentGuard's expert. (Dkt. 352 at 9.) This contention makes no sense, and flies in the face of the ruling in *Gemalto S.A. v. HTC Corp, et al.*, 6:10-CV-00561 (E.D. Tex.), in which the court granted Motorola's substantially similar motion to disqualify Dr. Teece "to the extent that Plaintiff agreed not to utilize Dr. Teece as an expert against Motorola," while permitting Mr. Blair to serve as an expert against Motorola and the other defendants in that case. Motorola is seeking the *exact same relief* in this case.

Motorola's decision to seek disqualification of Dr. Teece, and not Mr. Blair, is entirely appropriate for two principal reasons (beyond the guidance provided by the *Gemalto* ruling). First, the contractual agreement not to accept an adverse engagement was and is specific to Dr. Teece: "In addition, notwithstanding any of the provisions of the April 21 letter, Dr. David Teece will not be engaged adversely to Motorola during the terms of this engagement." (Dkt. 350, Ex. A at 2.) That Motorola requested, and BRG and Dr. Teece agreed to, this express restriction on Dr. Teece, rather than on Mr. Blair, reflects Dr. Teece's uniquely important role in the Microsoft Matters – "the lead for this engagement" (Dkt. 350, Ex. A at 1) – and the expected access that Dr. Teece would be provided to Motorola's confidential licensing information and personnel.

Second, Dr. Teece was provided greater exposure to Motorola's sensitive information than was Mr. Blair. By virtue of his position as "the lead" expert and author of multiple expert reports, Dr. Teece was invited to, and did, attend multiple meetings with Motorola executives and counsel in which licensing and litigation strategy – including the specifics of his reports – were discussed and during which Dr. Teece obtained valuable, non-public insight into Motorola's various licensing policies and practices. (Ex. CC, Miller Decl. at ¶¶ 7-13.) Motorola regards the information obtained by Dr. Teece to be particularly sensitive and potentially harmful if used by Dr. Teece in support of his work for ContentGuard. Accordingly, Motorola felt it important to file this present motion to disqualify Dr. Teece and to prevent him from accessing

4

further Motorola confidential information. That Motorola did not feel that a similar motion was required for Mr. Blair is of little, if any, relevance.[3]

## III. DISQUALIFYING DR. TEECE WILL NOT RESULT IN ANY PREJUDICE TO CONTENTGUARD

ContentGuard cannot credibly suggest that it would be prejudiced in any way if the Court were to exercise its discretion to disqualify Dr. Teece. In fact, opening expert reports are not due in this case until April 7, which still gives ContentGuard more than two-and-a-half months to obtain a damages expert who did *not* contractually agree to avoid adversity with Motorola, and who did *not* receive confidential and highly sensitive licensing knowledge and materials from Motorola, as did Dr. Teece. Importantly, as noted, Motorola did not seek to disqualify Mr. Blair (who is also at BRG), and Motorola has informed ContentGuard that it would accept another expert from BRG, so long as that expert has not entered into a specific, personal, contractual prohibition like Dr. Teece's. In other words, Motorola is not even asking ContentGuard to change its chosen expert consulting *firm*; Motorola is only asking that Dr. Teece and BRG be made to honor their agreement and to avoid the prejudice that would flow from Dr. Teece's personal involvement in this case. ContentGuard has rejected Motorola's offer.

## IV. CONTENTGUARD'S REQUEST FOR SANCTIONS IS UNSUPPORTABLE

ContentGuard cursorily suggests that Motorola's motion "is entirely without basis" and that Motorola should thus be sanctioned. Given Dr. Teece's agreement not to be "engaged adversely to Motorola", and given ContentGuard's admitted knowledge of that agreement (and of Dr. Teece's continued engagement by Motorola until last Thursday), ContentGuard's suggestion rings hollow. If any party is entitled to redress, it is Motorola, which has paid more than $1,000,000 to an expert that Motorola can no longer use in its pending Microsoft Matters.

---

[3] ContentGuard's brief cites liberally from boilerplate provisions of BRG's "Standard Commercial Terms" to establish that BRG may be engaged by parties with adverse interests. (Dkt. 352 at 2, 3-4.) Yet, the signed engagement letter between BRG and Motorola, through its outside litigation counsel, expressly establishes that these boilerplate provisions do not apply to Dr. Teece. In fact, his agreement not to "be engaged adversely to Motorola" was made "notwithstanding any of the provisions of the April 21 letter." (Dt. 350, Ex. A.) The boilerplate provisions arguably are applicable to ContentGuard's retention of Mr. Blair, however; yet another reason why Motorola did not pursue a separate motion to disqualify Mr. Blair.

5

## **CONCLUSION**

For the foregoing reasons, Motorola respectfully moves the Court to issue an order (a) precluding Dr. Teece from serving as a testifying and/or consulting expert against Motorola in this case, and (b) precluding Dr. Teece from accessing Motorola's confidential information in connection with his work for ContentGuard.

Respectfully submitted,

Dated:  January 26, 2014

By:      */s/ Robert Unikel*

Robert W. Unikel (admitted *pro hac vice*)
KAYE SCHOLER LLP
70 W. Madison St., Suite 4200
Chicago, IL 60602-4231
Telephone: (312) 583-2300
Facsimile: (312) 583-2360
Email: robert.unikel@kayescholer.com

J. Mark Mann
State Bar No. 12926150
Gregory Bake Thompson
State Bar No. 24242033
MANN TINDEL & THOMPSON
300 W. Main
Henderson, TX 75652
Telephone: (903) 657-8540
Facsimile: (903) 657-6003
Email: mark@themannfirm.com
blake@themannfirm.com

Michael J. Malecek
Timothy K. Chao (admitted *pro hac vice*)
KAYE SCHOLER LLP
3000 El Camino Real
2 Palo Alto Square, Suite 400
Palo Alto, CA 94306
Telephone: (650) 319-4500
Facsimile: (650) 319-4700
Email: michael.malecek@kayescholer.com
timothy.chao@kayescholer.com

*Attorneys for Defendant Motorola Mobility LLC*

## CERTIFICATE OF SERVICE

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served this 26th day of January, 2015, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

By /s/ *Robert Unikel*

## CERTIFICATE OF CONFERENCE

On January 6, 2015, counsel for ContentGuard, Radu Lelutiu, and counsel for Motorola Mobility LLC, Robert Unikel and Marisa Williams, conducted a telephonic meet-and-confer conference with regard to the subject of this motion. The Parties reached an impasse and were unable to resolve the issues raised by this motion.

/s/ *Robert Unikel*