# Exhibit B

2015 WL 269036
United States District Court,
N.D. California.

[Open Text S.A.](), Plaintiff,

v.

Box, Inc., et al., Defendants.

Case No. 13-cv-04910-JD    |    Signed 01/20/2015

## ORDER GRANTING RULE 12(C) MOTION FOR JUDGMENT OF INVALIDITY OF GROUPWARE PATENTS

**Re: Dkt. No. 295**

[JAMES DONATO](), United States District Judge

**\*1**  Defendant Box moves for judgment of invalidity on the pleadings on the grounds that plaintiff Open Text's "Groupware" patents [1] claim patent-ineligible subject matter. *See* Dkt. No. 295. The common specification of the five Groupware patents describes the unremarkable concept of people working together on a project:

> Recently, the need for collaborative computing environments has been receiving increasing attention. People are finding that it is more and more important to share information and work together to meet common goals. With increasing specialization in the marketplace, there is frequent need to work together with people from different offices, different organizations and even different countries to satisfy the requirements of a particular project or goal.

'177 patent, 1:11–20. As the specification suggests, this concept existed well before the invention of the Groupware patents. The Groupware patents' alleged innovation is to facilitate workplace collaboration through the Internet or an intranet without specialized software or calling on a system administrator or IT person for help. *Id.* 1:5–8. The problem with the asserted claims is that their core concept is inherently abstract, and their implementation, which consists of standard technology like browsers, servers, and networks, has nothing inventive whatsoever about it. The result is that the asserted claims of the Groupware patents are invalid under 35 U.S.C. § 101. Consequently, the motion is granted.

## LEGAL STANDARD

The patent statute provides protection for "any new and useful process, machine, manufacture, or composition of matter." 35 U.S.C. § 101. The Supreme Court has interpreted section 101 as containing "an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty Ltd. v. CLS Bank Int'l,* 134 S. Ct 2347, 2354 (2014).

In *Alice* and *Mayo Collaborative Services v. Prometheus Laboratories, Inc.,* 132 S.Ct. 1289, 1296–97 (2012), the Supreme Court established a two-part test for determining whether a claim falls into one of the exceptions, and is therefore patent-ineligible. The Court first "determine[s] whether the claims at issue are directed to one of those patent-ineligible concepts." *Alice,* 134 S.Ct. at 2355 (citing *Mayo,* 132 S.Ct. at 1296–97). If they are, the Court then considers the elements of the claim —both individually and as an ordered combination—to determine whether the additional elements transform the nature of the claim into a patent-eligible application of the abstract idea. *Id.* The Supreme Court has described the second inquiry as "a search for an inventive concept—*i.e.,* an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Id.* (internal quotation marks omitted, alteration in original).

**\*2** Challenges to patentability under section 101 may be brought based solely on the pleadings, including on a Rule 12(c) motion for judgment on the pleadings. *See buySAFE, Inc. v. Google, Inc.,* 765 F.3d 1350, 1352 (Fed.Cir.2014) (affirming a Rule 12(c) judgment on the pleadings); *Loyalty Conversion Sys. Co. v. American Airlines, Inc.,* No. 2:13–CV–655, 2014 WL 4364848, at \*4 (E.D.Tex. Sept. 3, 2014) (Bryson, J., sitting by designation) (granting judgment on the pleadings of invalidity under section 101).

## DISCUSSION

The parties' briefing focuses on claim 1 of the '177 patent, from which asserted claims 5, 7, and 11 depend, and the Court will follow suit. *See Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n,* Nos.2013–1588, 2013–1589, 2014–1112, 2014–1687, 2014 WL 7272219, at \*4–5 (Fed.Cir. Dec. 23, 2014) (approving use of representative claims in deciding section 101 motions).[2] Claim 1 reads:

> A system for providing a collaborative workspace, comprising:
>
> (i) a network-connected server having input and access capabilities;

(ii) a workgroup creator on the server for receiving instructions from a primary user and for creating a dedicated network site in response to the received instructions, the instructions including a list of secondary users and a working relationship defined between the users;

(iii) a messaging system for communicating existence of the dedicated network site to a selected ones of the list of secondary users;

(iv) a network for accessing contents of the dedicated network site by the primary and secondary users via a web-browser; and

(v) memory associated with the dedicated network site for storing information submitted by the primary and the secondary users, wherein the stored information is accessible to the users in accordance with the predefined working relationship.

'177 patent, claim 1. Like the other Groupware patents, the '177 patent claims priority through a series of continuations and continuations-in-part to an application filed on October 22, 1997.

At oral argument, Open Text's counsel conceded what the patent specifications themselves make clear: network-based collaborative systems were known at the time the Groupware patents were invented. *See id.* 1:21–22. The patents claim that their advance over what came before is that they "obviate and mitigate at least one of the disadvantages of the prior art," namely that prior art systems "depend[ed] on Information Technology specialists or a system administrator to administer control of the system" and that many of them "require[d] each user to have specialized software installed on their computer." *Id.* 1:37–47. In the preferred embodiment, the necessity of specialized software is dispensed with by using a "standard internet browser," which is reflected in element (iv) of claim 1 of the '177 patent. *Id.* 3:39–60.

**A. Is the Claim Directed at an Abstract Idea?**
In evaluating the first prong of the *Mayo*/*Alice* test, which looks to see if the claim in question is directed at an abstract idea, the Court distills the gist of the claim. *See, e.g., Bilski v. Kappos,* 561 U.S. 593, 611–12 (2010) (characterizing abstract idea as "the concept of hedging" where claim limitations described initiating transactions and identifying market participants); *Alice,* 134 S.Ct. at 2356 (characterizing abstract concept as "intermediated settlement" despite claim elements reciting use of shadow credit records and debit records); *buySAFE,* 765 F.3d at 1354–55 (holding that "[t]he claims are squarely about creating a contractual relationship" despite presence of more specific claim limitations); *Ultramercial, Inc. v. Hulu, LLC,* 772 F.3d 709, 715 (Fed.Cir.2014) (holding that "the concept embodied by the majority of the limitations describes only the abstract idea of showing an advertisement before delivering free content" despite presence of other limitations); *Content Extraction,* 2014 WL 7272219, at *3 (characterizing abstract idea as "1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing

that recognized data in a memory" despite claim's recitation of specific limitations, like scanner); *see also Accenture Global Servs., GmbH v. Guidewire Software, Inc.,* 728 F.3d 1336, 1347–48 (Fed.Cir.2013) (Rader, C.J., dissenting) (describing majority opinion as "strip[ping] away" claim limitations to arrive at abstract idea); *Enfish, LLC v. Microsoft Corp.,* 2:12–cv–07360–MRP–MRW, 2014 WL 5661456, at *4 (C.D.Cal. Nov. 3, 2014) ("Courts should recite a claim's purpose at a reasonably high level of generality. Step one is a sort of 'quick look' test, the purpose of which is to identify a risk of preemption and ineligibility.").

**\*3** Box contends that the abstract idea behind this claim is "sharing information among collaborators," while Open Text says that the idea (which it denies is abstract) is "a system for providing a collaborative workspace on a network server." Open Text's proposal, which appears to be a mishmash of the claim's preamble and the first claim limitation, smuggles in a reference to a "network server," which is exactly the sort of limitation that is characteristic of the claim's implementation, rather than its general idea. *Cf. buySAFE,* 765 F.3d at 1354–55 (describing the claim's abstract idea without including the claim's "computer network" limitation). Shorn of its implementation-specific fleece, the claim is directed at providing a method for people to collaborate and share information without the need for specialized software or expertise. *See* '177 patent, 1:37–47. It may be, as Open Text insists, that this idea was new at the time of invention, but it is still an abstract idea, and therefore meets the first part of the *Mayo/Alice* test. *See Ultramercial,* 772 F.3d at 715 ("[A]ny novelty in implementation of the idea is a factor to be considered only in the second step of the *Alice* analysis.").

To escape this conclusion, Open Text tries to draw a rather philosophical distinction between abstract and other (presumably concrete) ideas. But Open Text does not point to any authority in support of this theory, and it is highly doubtful that the precedents on patentable subject matter recognize a class of non-abstract ideas. The Federal Circuit in *Ultramercial,* for example, equates an "abstraction" with "an idea, having no particular concrete or tangible form." *Id.* But even if some class of concrete ideas were divinable, the idea here is unquestionably abstract. Although the Supreme Court has not "delimit[ed] the precise contours of the 'abstract ideas' category," *Alice,* 134 S. Ct at 2357, a "method of organizing human activity" is an abstract idea. *See id.* at 2356–57; *see also Planet Bingo, LLC v. VKGS LLC,* 576 Fed. App'x 1005, 1008 (Fed.Cir.2014) (nonprecedential) (holding that methods and systems for "managing a game of Bingo" were similar to "organizing human activity" and therefore directed to an abstract idea). A system for groups of people to collaborate and share information without specialized software or expertise is clearly a "method of organizing human activity," and thus an unpatentable abstract idea.

### B. Does the Claim Include an Inventive Concept?

An invention is not rendered ineligible for a patent simply because it involves an abstract concept. *Alice,* 134 S.Ct. at 2354; *Diamond v. Diehr,* 450 U.S. 175, 187 (1981). When a patent is directed at an abstract idea, the Court must evaluate the second prong of the *Mayo/Alice* test, which

asks "whether the additional [claim] elements [beyond the abstract idea] 'transform the nature of the claim' into a patent-eligible application." *Alice,* 134 S.Ct. at 2355 (citation omitted). If the additional elements "supply an 'inventive concept' in the physical realm of things and acts -a 'new and useful application' of the ineligible matter in the physical realm," the claim may be said to cover something " 'significantly more than' the ineligible matter itself." *buySAFE,* 765 F.3d at 1353 (quoting *Alice,* 134 S.Ct. at 2355, 2357).

Open Text points to four claim limitations as inventive: (1) the use of a server-based system (as opposed to a peer-to-peer system); (2) the workgroup creator; (3) the use of a web browser for accessing the site; and (4) security controls. But it is apparent from the patent itself that these implementation-specific elements were known prior to the invention of the Groupware patents. The specification describes an earlier patent, U.S. Patent No. 5,548,506, as "disclos[ing] an automated, electronic network based, project management *server* system for managing multiple work groups." '177 patent, 1:21–25 (emphasis added). The term "workgroup creator" is not even found in the specification, which indicates that it needed no explanation to be understood to a person of ordinary skill in the art in the context of the claims. And what can be gleaned from the patent makes clear that the workgroup creator is not new. The specification describes a "workgroup creation template" as being that "which permits the primary user to define parameters of the workgroup, such as the name of the workgroup and the site to be created, the scope of the project being undertaken, the number of team members, etc." *Id.* 4:55–60. Open Text itself admits that the workgroup creator is simply what creates the dedicated site on the server that enables collaboration. *See* Open Text's Opposition at 7, Dkt. No. 343. Open Text does not contend that any of this is novel. All of it could be done using a web page. That web pages were known in 1997 needs no citation and is apparent from the patent's explanation-free discussion of web pages. *See* '177 patent, 3:46–49. The fact that the Groupware patents refer to "standard internet browser[s]" makes clear that web browsers were not new or inventive as of the invention of the Groupware patents—a conclusion reaffirmed by the patents' mention of common web browsers by name. *See id.* 3:38–42 (referring to Netscape Navigator and "Microsoft Explorer"). Finally, the Groupware patents' discussion of security features, like passwords, is couched in terms that indicate discussion of preexisting technology, and Open Text does not claim otherwise. *See id.* 5:55–6:7.

**\*4** Rather than standing on inventiveness as a saving grace, Open Text spends substantial effort arguing that these limitations satisfy the *Mayo/Alice* test because they purportedly circumscribe the claims to avoid total preemption of the idea and leave room for future innovations. To the extent Open text believes this saves the claims under section 101, it is wrong. The Supreme Court has described the "pre-emption concern" as "undergird[ing] our § 101 jurisprudence." *Alice,* 134 S.Ct. at 2358. But while preemption concerns may be the root of the Supreme Court's section 101 test, it does not follow that the Court determines patentability by guessing at the probability of preemption. There is no non-speculative way for a court to determine whether and to what extent future innovation might be curtailed. The Supreme Court and Federal Circuit have recognized this

point in the context of distinguishing between different laws of nature, and the insight applies with equal force to supposedly preemption-limiting claim limitations. *See, e.g., Mayo,* 132 S.Ct. at 1303 ("[O]ur cases have not distinguished among different laws of nature according to whether or not the principles they embody are sufficiently narrow.... And this is understandable. Courts and judges are not institutionally well suited to making the kinds of judgments needed to distinguish among different laws of nature."); *buySAFE,* 765 F.3d at 1353 ("In defining the excluded categories, the Court has ruled that the exclusion applies if a claim involves a natural law or phenomenon or abstract idea, even if the particular natural law or phenomenon or abstract idea at issue is narrow.").

To be clear, the Court has in fact considered the preemption concern because it is already baked into the *Mayo /Alice* test. After all, every patent "forecloses ... future invention" to some extent, *Mayo,* 132 S.Ct. at 1292, and conversely, every claim limitation beyond those that recite the abstract idea limits the scope of the preemption. Even if it were possible to do in a non-speculative way, which is not the case, the Court is not required to anticipate the number, feasibility, or adequacy of non-infringing alternatives to gauge a patented invention's preemptive effect in order to determine whether a claim is patent-eligible under section 101. The relevant precedents simply direct it to ask whether the claim involves one of the patent-ineligible categories, and if so, whether additional limitations contain an "inventive concept" that is "sufficient to ensure that the claim in practice amounts to 'significantly more' than a patent on an ineligible concept." *DDR Holdings, LLC* v. *Hotels.com L.P.,* No.2013–1505, 2014 WL 6845152, at *8 (Fed.Cir. Dec. 5, 2014). This is the basis for the rule that the unpatentability of abstract ideas "cannot be circumvented by attempting to limit the use of the formula to a particular technological environment," despite the fact that doing so reduces the amount of innovation that would be preempted. *Diehr,* 450 U.S. at 191; *see also Alice,* 134 S.Ct. at 2358; *Mayo,* 132 S.Ct. at 1303; *Bilski,* 561 U.S. at 612; *Parker v. Flook,* 437 U.S. 584, 593 (1978).

These holdings gut Open Text's argument. For example, Open Text argues that the requirement of a server in the claims satisfies part two of the *Mayo /Alice* test because it would not preclude the use of a peer-to-peer based system. But the claims at issue in *Ultramercial* also had fairly specific requirements—like the use of an "activity log"—that could presumably have been avoided by those wishing to design around the patent. *See Ultramercial,* 772 F.3d at 712. That was not sufficient to save the claims there.

The Federal Circuit generally has not found limitations similar to the supposed inventive concepts that Open Text points to sufficient to preserve patentability under the section 101 test. Indeed, contrary to Open Text's insistence that a server suffices, the Federal Circuit has found a claim reciting a "server component" invalid under section 101. *See Accenture,* 728 F.3d at 134445. Furthermore, it is not clear why, as Open Text claims, the use of a server-based system would render an abstract idea patentable when the use of a "content provider" or a "safe transactions service provider computer" have been found not to do so. *Ultramercial,* 772 F.3d at 712; *buySAFE,*

765 F.3d at 1352. Nor is it clear why a "workgroup creator" would render an abstract idea patentable when "a request [from the consumer] to view the sponsor message" or "a request from a first party for obtaining a transaction performance guaranty service with respect to an online commercial transaction" do not. *Ultramercial,* 772 F.3d at 712; *buySAFE,* 765 F.3d at 1352. Or why the use of "security controls" would be an inventive concept when *Ultramercial* found the fact "that the system ... restricts public access ... represents only insignificant '[pre]-solution activity.' " *Ultramercial,* 772 F.3d at 716 (alteration in original).

**\*5** Open Text suggests that the claims' recitation of a "web browser" makes this case similar to *DDR Holdings,* where the Federal Circuit affirmed a district court's denial of judgment as a matter of law of invalidity under section 101. *See DDR Holdings,* 2014 WL 6845152, at \*12. The patent in that case was prompted by the worry that a visitor to a host website would be lured away to another website when they clicked on a merchant advertiser's link. *See id.* at \*1. It addressed that issue, which the court emphasized is unique to the Internet, by specifying that when a visitor clicked on a hyperlink on the host website (like a third-party merchant's ad), "instead of taking the visitor to the merchant's website, the system generates and directs the visitor to a composite web page that displays product information from the third-party merchant, but retains the host website's 'look and feel.' " *Id.*

As Open Text points out, the Groupware patents specified the use of web browsers as an improvement on prior art systems that used specialized client software instead. *See* '177 patent, 3:38–49. Open Text's reading of *DDR Holdings* is that "otherwise generic-sounding elements" can support patent eligibility when they "are used to overcome a problem specifically arising in a technological field," like the limitations associated with specialized software. Open Text's Opposition at 8, Dkt. No. 343.

But *DDR Holdings* specifically cautioned that "not all claims purporting to address Internet-centric challenges are eligible for patent." *DDR Holdings,* 2014 WL 6845152, at \*11. Indeed, it noted that claiming " 'use of the Internet' to perform an abstract business practice" would be insufficient. *Id*. at \*12. What made the patent at issue in *DDR Holdings* different, the court held, was that it "specif[ied] how interactions with the Internet are manipulated to yield a desired result—a result that overrides the routine and conventional sequence of events ordinarily triggered by the click of a hyperlink." *Id*. To the extent Open Text claims the role of a web browser in the Groupware patents is similar to the role of the Internet in the patents at issue in *DDR Holdings,* the Court disagrees. There is no indication in the claims or the specification that the claimed web browser is used in any non-routine and unconventional way. It is not deployed to solve a specific Internet-centric problem. On the contrary, the patents just claim using it. That does not satisfy part two of the *Mayo* /*Alice* test.

Certainly, "a new combination of steps in a process may be patentable even though all the constituents of the combination were well known and in common use before the combination was made." See *Diehr,* 450 U.S. at 188; *Alice,* 134 S.Ct. at 2355 ("[W]e consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application"). Open Text argues that, in combination, the four elements it points to help overcome the prior art's reliance on specialized software or IT professionals. But Open Text provides no reason to find that lumping these additional limitations together somehow creates a synergistic result that is more than the sum of its parts. All Open text does is assert in a brief that the Court should accept that unsupported argument as true. It offers nothing beyond the conclusory statement that it is the combination of security controls, the server-side setup, the workgroup creator, and the dedicated site that "address[es] the IT specialist problem." Open Text's Opposition at 8, Dkt. No. 343. How these features interact to avoid the need for IT specialists, or why removing one of them (say the security controls) would require bringing the IT specialist back in, is never explained by Open Text.

## CONCLUSION

***6** The challenged claims purport to patent an abstract idea and lack an inventive concept. Consequently, the Court finds that the asserted claims in the Groupware patents are invalid because they claim non-patentable subject matter. Judgment of invalidity on the pleadings is granted with respect to them.

IT IS SO ORDERED.

Footnotes

1   U.S. Patent Nos. 6,223,177, 6,917,962, 7,287,055, 7,299,258, and 7,320,018. The asserted claims of the Groupware patents are claims 5, 7 and 11 of the '177 patent, claim 5 of the '018 patent, claim 22 of the '055 patent, claim 27 of the '258 patent, and claims 6 and 15 of the '962 patent.

2   In fact, Open Text does not provide any arguments with respect to any claims other than claim 1 of the '177 patent, beyond simply listing some of their elements. *See* Open Text's Opposition at 8, 12, Dkt. No. 343. Nevertheless, the Court has reviewed the asserted claims and finds that the reasoning in this order applies to all of them.