# Exhibit B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THE MONEY SUITE COMPANY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>21ST CENTURY INSURANCE AND )<br>FINANCIAL SERVICES, INC., 21ST )<br>CENTURY INSURANCE GROUP, )<br>FARMERS GROUP, INC., )<br>)<br>Defendants. )<br>) | C.A. No. 13-984-GMS |
| THE MONEY SUITE COMPANY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>FARMERS GROUP, INC., )<br>)<br>Defendant. )<br>) | C.A. No. 13-985-GMS |
| THE MONEY SUITE COMPANY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>LENDINGTREE LLC, )<br>)<br>Defendant. )<br>) | C.A. No. 13-986-GMS |
| THE MONEY SUITE COMPANY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CITIGROUP, INC., )<br>)<br>Defendant. )<br>) | C.A. No. 13-1747-GMS |

| | |
|---|---|
| THE MONEY SUITE COMPANY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>METLIFE INC., )<br>)<br>Defendant. )<br>) | C.A. No. 13-1748-GMS |

## MEMORANDUM

### I. INTRODUCTION

The plaintiff The Money Suite Company ("Money Suite") initiated patent infringement lawsuits against defendants 21st Century Insurance and Financial Services, Inc., 21st Century Insurance Group, and Farmers Group, Inc. (collectively, "21st Century"), Farmers Group, Inc. ("Farmers"), and Lending Tree LLC ("Lending Tree") on June 3, 2013. Money Suite subsequently brought suit against Citigroup Inc. ("Citigroup) and MetLife, Inc. ("MetLife") on October 23, 2013 (all defendants, collectively, "the Defendants"). Money Suite alleges that the Defendants each infringe U.S. Patent No. 6,684,189 ("the '189 Patent").

Defendant MetLife filed a Motion to Dismiss on December 16, 2013, arguing that the '189 Patent claims patent-ineligible subject matter and is invalid under 35 U.S.C. § 101. (C.A. No. 13-1748-GMS, D.I. 6.) On January 9, 2014, the court stayed the above-captioned cases in light of the U.S. Supreme Court's decision to grant *certiorari* in *Alice Corp. Pty. Ltd. v. CLS Bank International*, 134 S. Ct. 734 (2013). On June 19, 2014, the Supreme Court issued its ruling in *Alice*, shedding light on § 101 and patent-eligible subject matter. 134 S. Ct. 2347 (2014). On September 10, 2014, the court lifted the stay of the above-captioned cases, and on September 30,

2014, the Defendants filed a joint motion to dismiss all of the actions based on § 101 invalidity.[1]

For the reasons discussed below, the court grants the Defendants' motion.[2]

## II. BACKGROUND

Money Suite has alleged patent infringement of the '189 Patent against each of the Defendants. The '189 Patent describes a computerized method for generating price quotes for financial products. Claim 1—the only independent claim of the '189 Patent's 887 claims—summarizes the invention:

> A computer-implemented method using front-end network gateways and search criteria entered at a remote computer terminal to conduct a search of multiple financial products for efficient quoting at a remote location, the method including the steps of:
> > providing at least one data input screen with signals communicated from a digital computer to the remote terminal connected by a communications system, the at least one data input screen at the terminal soliciting entry of financial product selection criteria;
> > receiving the selection criteria from the terminal over the communications system at the digital computer; and
> > using the front-end network gateways, data accessible by the digital computer representing the multiple financial products, and the selection criteria entered at the terminal to provide a quote at the terminal for a financial product identified from the multiple financial products.

'189 Patent, claim 1. The additional claims impose limitations such as defining the type of financial product at issue, identifying the specific search criteria, and adding hyperlink capability and password protection.

---

[1] Each of the Defendants except MetLife filed an answer to Money Suite's complaint. Thus, their motions are formally motions for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c), whereas MetLife's motion is a motion to dismiss for failure to state a claim, pursuant to Rule 12(b)(6). This is a distinction in form only, and the court will analyze the Defendants' joint motion as a unified Rule 12(b)(6) motion. *See Revell* v. *Port Auth.*, 598 F.3d 128, 134 (3d Cir. 2010) ("A motion for judgment on the pleadings based on the defense that the plaintiff has failed to state a claim is analyzed under the same standards that apply to a Rule 12(b)(6) motion.").

[2] For simplicity, all references to the parties' briefing will use the docket item numbering from C.A. No. 13-1748-GMS.

The Defendants argue that the '189 Patent is invalid because it claims an abstract idea: providing price quotes for various financial products and services.

## III. LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal where the plaintiff "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss, the court "accept[s] all factual allegations as true, construe[s] the complaint in the light most favorable to the plaintiff, and determine[s] whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). Plaintiffs must provide sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "At the motion to dismiss stage a patent claim can be found directed towards patent-ineligible subject matter if the *only* plausible reading of the patent must be that there is clear and convincing evidence of ineligibility." *Tuxis Techs., LLC v. Amazon.com, Inc.*, No. 13-1771-RGA, 2014 WL 4382446, at *2 (D. Del. Sept. 3, 2014).

Section 101 describes the general categories of patentable subject matter: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. These broad classifications are limited, however, by exceptions. "Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice*, 134 S. Ct. at 2354 (quoting *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*,

3

133 S. Ct. 2107, 2216 (2013)). The contours of these exceptions have been the subject of much debate in recent years, even at the U.S. Supreme Court. *See id.* ("[W]e tread carefully in construing this exclusionary principle lest it swallow all of patent law. At some level, all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." (internal citation and quotations marks omitted)). The Court's decision in *Alice* reaffirmed the framework first outlined in *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 132 S. Ct. 1289 (2012), used to "distinguish[] patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *See Alice*, 134 S. Ct. at 2355.

> First, we determine whether the claims at issue are directed to one of those patent-ineligible concepts. If so, we then ask, what else is there in the claims before us? To answer that question, we consider the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application. We have described step two of this analysis as a search for an "inventive concept"—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself.

*Id.* (internal citations, quotations marks, and alterations omitted). Thus, the court must determine (1) if the patented technology touches upon ineligible subject matter, and (2) whether there are sufficient inventive elements such that the invention is "'significantly more' than a patent on an ineligible concept." *See DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1255 (Fed. Cir. 2014) (quoting *Alice*, 134 S. Ct. at 2355); *see also Alice*, 134 S. Ct. at 2354 ("[A]n invention is not rendered ineligible for patent simply because it involves an abstract concept.").

## IV.  DISCUSSION

The court applies the two-step framework outlined in *Alice* to the '189 Patent. In doing so, the court finds that the '189 Patent—and all of its 887 claims—are invalid under § 101, as they

4

claim the abstract concept of assigning prices to financial products and services without meaningfully narrowing the scope of coverage.

### A. <u>Abstract Idea</u>

The court agrees with the Defendants that the core invention embodied by the '189 Patent is a "fundamental economic [or] conventional business practice[]" and therefore an abstract idea. *See DDR Holdings*, 773 F.3d at 1256. There is no dispute that the claims describe a process used to generate price quotes for various types of financial products, based on a given set of criteria. Although Money Suite attempts to frame it otherwise, this concept is abstract. Indeed, stripped of its limitations and technical jargon, claim 1 recites a "method . . . to conduct a search of multiple financial products for efficient quoting." *See* '189 Patent, claim 1. This concept is not dissimilar from those discussed by recent § 101 court cases. *See, e.g., Alice*, 134 S. Ct. at 2356 (invalidating computer-implemented claims covering intermediated settlement); *Bilski v. Kappos*, 561 U.S. 593, 609–11 (2010) (invalidating computer-implemented claims covering "the basic concept of hedging, or protecting against risk").

Money Suite's arguments to the contrary are unpersuasive. First, Money Suite places stock in the fact that a district judge from the Central District of California previously construed the '189 Patent claims in other litigation. (D.I. 24 at 7–9.) The court fails to see how construction of the claim terms in distinct litigation—where the "[d]efendants in that case never challenged the eligibility of the '189 patent under § 101"—has any bearing on the court's analysis here. (*Id.* at 3.) But in any event, the ability of another judge to construe the claim terms does not alter the court's view that the overriding concept is abstract. Second, Money Suite argues that the "front-end network gateways" identified in the claims take the '189 Patent out of the abstract, as they were not used in the prior art. This argument—sounding in § 102 novelty—is beside the point for

a § 101 inquiry. *See Amdocs (Isr.) Ltd. v. Openet Telecom, Inc.*, No. 1:10cv910 (LMB/TRJ), 2014 WL 5430956, at *11 (E.D. Va. Oct. 24, 2014) ("The concern of § 101 is not novelty, but preemption.").

Money Suite appears to take issue with the Defendants' characterization of the '189 Patent as describing a method of providing price quotes for financial products. But the Defendants succeed in presenting a consistent, coherent argument that the '189 Patent is abstract, whereas Money Suite merely states conclusively that the '189 Patent describes a "concrete, scalable technical solution." (D.I. 24 at 6–7.) This amorphous definition is of little help. Moreover, even if the court were inclined to view the basic idea of the '189 Patent as something more advanced than simply assigning price quotes, new ideas may be similarly abstract and invalid under § 101. *See Ultramercial, Inc. v. Hulu*, LLC, 772 F.3d 709, 714–15 (Fed. Cir. 2014) (rejecting the position that "abstract ideas remain patent-eligible under § 101 as long as they are new ideas, not previously well known, and not routine activity"). The '189 Patent describes an abstract idea, and therefore the second step of the *Alice* framework is implicated. Money Suite's assertions that the '189 Patent offers meaningful (and patentable) limitations can be addressed at that step. *See id.* at 715 ("[A]ny novelty in implementation of the idea is a factor to be considered only in the second step of the *Alice* analysis.").

### B. Inventive Concept

Although the '189 Patent reads on an abstract idea, it will not be found to cover patent-ineligible subject matter if there is evidence of an inventive concept or contribution: "an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *See Alice*, 134 S. Ct. at 2355. This second step is frequently referred to as a "preemption" analysis, wherein the court "must

distinguish between patents that claim the building blocks of human ingenuity and those that integrate the building blocks into something more . . . . The former would risk disproportionately tying up the use of the underlying ideas . . . . The latter pose no comparable risk of pre-emption, and therefore remain eligible for the monopoly granted under our patent laws." *Id.* at 2354–55 (internal quotation marks, citations, and alterations omitted); *see also Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1341 (Fed. Cir. 2013); *Tuxis*, 2014 WL 4382446, at *3–5.

Drawing a line between patent-eligible and patent-ineligible manifestations of abstract ideas is often difficult. *See DDR Holdings*, 773 F.3d at 1255. Nonetheless, the court is convinced in this case that clear and convincing evidence shows that the '189 Patent fails to claim an inventive contribution sufficient to satisfy § 101. As an illustrative example, claim 1 describes the use of front-end network gateways to allow users to interface with remote servers in order to generate a price quote for financial products. The outlined sequence of steps is neither inventive nor sufficiently narrow to alleviate preemption concerns. The use of front-end network gateways—the "foundational element" that Money Suite argues cements the eligibility of the '189 Patent (D.I. 24 at 7)—is not new; indeed such system elements have been used in the industry for many years. Moreover, even though "the important inquiry for a § 101 analysis is to look to the claim," *Accenture*, 728 F.3d at 1345, the specification's description is similarly devoid of assurances that "the patent in practice amounts to significantly more" than a patent on price quoting: "the present invention involves processing information in a standardized manner, preferably to package an individually selected mortgage product with an individually selected investment product . . . . The packaging process tailors the financial product to the prospective applicant's particular needs." '189 Patent col. 10 ll. 56–63.

The remaining dependent claims—which impose additional limitations—also fail to claim patent-eligible subject matter because the limitations cannot be considered inventive. As already explained, the dependent claims ostensibly narrow the scope of the claims by adding elements such as the type of financial product at issue, the specific search criteria, hyperlink capabilities, and password protection. But Money Suite does not contend that it "invented" any of these limitations, and none of these features qualify as a contribution sufficient to transform the abstract idea into a patent-eligible invention. Holding otherwise would provide a blueprint for patent drafters to skirt § 101, merely by tacking on routine, well-known limitations. *See Alice*, 134 S. Ct. at 2357 ("A claim that recites an abstract idea must include 'additional features' to ensure 'that the claim is more than a drafting effort designed to monopolize the abstract idea.'") (alterations omitted) (quoting *Mayo*, 132 S. Ct. at 1297)). Thus, while the '189 Patent may recite slightly more than "wholly generic computer implementation" language, the difference is merely one of degree and not one of kind. *See id.* at 2358; *see also buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) (invalidating claims under § 101 where the limitations placed on the abstract idea were "not even arguably inventive"); *Amdocs*, 2014 WL 5430956, at *9 ("[T]he claim does not appear to add more than conventional computer functions operating in a conventional manner . . . and is, therefore, invalid under § 101."); *McRO, Inc. v. Activision Publ'g, Inc.*, No. CV 13-336-GW(FFMx), 2014 WL 4759953, at *9 (C.D. Cal. Sept. 22, 2014) ("[W]hen determining whether a patent contains an adequate inventive concept, the Court must factor out conventional activity.").

Money Suite's related arguments concerning preemption also miss the mark. (D.I. 24 at 11–18.) Money Suite contends that price quoting can still be done manually or via computer-implemented systems that do not use front-end network gates. Thus, according to Money Suite,

8

"the building blocks of human ingenuity" are not entirely monopolized by the '189 Patent. *See Alice*, 134 S. Ct. at 2354–55. First, although courts have framed the "second-step" analysis in terms of preemption, there is no rule that ideas that do not preempt an entire field are *per se* patent eligible. Rather, the test as articulated by *Alice* is that there must be an inventive contribution on top of the underlying abstract idea. *See Alice*, 134 S. Ct. at 2355. The court has already explained that the '189 Patent lacks the requisite inventive elements.  Second, even focusing purely on preemption, the court finds Money Suite's arguments unpersuasive. Leaving open the possibility of practicing the idea of price quoting financial products manually does not save the '189 Patent. This was the very concern underlying the court's rationale in *Alice*: monopolizing computerized implementations while allowing the public to practice the idea "by hand" does not comport with § 101. *See Alice*, 134 S. Ct. at 2358–59 ("The fact that a computer necessarily exists in the physical, rather than purely conceptual, realm is beside the point. There is no dispute that a computer is a tangible system . . . , or that many computer-implemented claims are formally addressed to patent-eligible subject matter. But if that were the end of the § 101 inquiry, an applicant could claim any principle of the physical or social sciences by reciting a computer system configured to implement the relevant concept."). The availability of other possible computer-implemented methods—ones not using front-end network gateways—also does not assuage fears of blocking further innovation. *See OIP Techs., Inc. v. Amazon.com, Inc.*, No. C-12-1233 EMC, 2012 WL 3985118, at *12 (N.D. Cal. Sept. 11, 2012) ("[A] patent need not preempt an entire field in order to be ineligible; rather, the question is whether 'upholding the patents would risk *disproportionately* tying up the use of the underlying [abstract ideas or] natural laws, inhibiting their use in the making of further discoveries.'" (alteration in original) (quoting *Mayo*, 132 S.Ct.

at 1294)). The use of a front-end network gateway does not place meaningful limitations on the scope of the '189 Patent, resulting in disproportionate monopolization.

Money Suite argues that a recent case out of the Court of Appeals for the Federal Circuit supports its position that the '189 Patent claims patent-eligible subject matter. (D.I. 29); *see DDR Holdings*, 773 F.3d 1245. In *DDR Holdings*, the Federal Circuit determined that a patent "to systems and methods of generating a composite web page that combines certain visual elements of a 'host' website with content of a third-party merchant" was valid under § 101. *Id.* at 1248. Importantly, in reaching this conclusion, the Federal Circuit stated:

> [I]t is true that the claims here are similar to the claims in the cases [invalidating computer-implemented abstract ideas] in the sense that the claims involve both a computer and the Internet. But these claims stand apart because they do not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet. Instead, the claimed solution is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks.

*Id.* at 1257. This is a critical distinction. The '189 Patent does precisely what *DDR Holdings* explains is fatal to many computer-based patents: "recite the performance of *some business practice known from the pre-Internet world* along with the requirement to perform it on the Internet." *Id.* (emphasis added). The generation of price quotes for financial products is undeniably a pre-Internet concept. Thus, *DDR Holdings* is readily distinguishable from the case at bar. Money Suite's contention that it is solely offering an "improvement" to overcome a purely technical problem is belied by the broad, non-limited claim language. *See Accenture*, 728 F.3d at 1345 ("[T]he important inquiry for a § 101 analysis is to look to the claim.").

The parties both address whether the '189 Patent satisfies the "machine-or-transformation" test, which remains a "useful and important clue" when assessing § 101 patent eligibility. *See*

*Bilski*, 561 U.S. at 604. The court agrees that the computer-implementation of the '189 Patent is not a meaningful, tangible limitation. As already stated, the fact that a patent drafter can point to a computer as evidence of a physical manifestation (*i.e.*, a machine) will not suffice to satisfy § 101. *See Alice*, 134 S. Ct. at 2358–59. Further, the ultimate goal of the '189 Patent's technology is to assign a price quote—there is no meaningful transformation taking place. Thus, the machine-or-transformation test supports the court's conclusion that the '189 Patent is invalid under § 101.

The court's holding is bolstered by Money Suite's own repeated use of language concerning "scalability." (D.I. 24 at 7–11.) According to Money Suite, the technology described in the '189 Patent allows the quoting process to be "more functional . . . as the system grows more complex" with more users and connections. (*Id.* at 8.) But this is the exact same role computers play in many cases involving abstract, non-patentable ideas. The question is almost always one of scale. Using computers to apply commonplace ideas—such as generating price quotes—is not a patentable invention, even if the computer is able to handle volumes and complexity at levels impossible for humans. *See Alice*, 134 S. Ct. at 2350 ("Neither stating an abstract idea while adding the words 'apply it,' nor limiting the use of an abstract idea to a particular technological environment, is enough for patent eligibility." (internal quotation marks omitted) (quoting *Mayo*, 132 S. Ct. at 1294; *Bilski*, 561 U.S. at 610–611).

## V. CONCLUSION

For the foregoing reasons, '189 Patent is deemed invalid under 35 U.S.C. § 101 because it claims an abstract idea. The court will grant the Defendants' joint motion that seeks the aforementioned declaration.

Dated: January 27, 2015

_____
UNITED STATES DISTRICT COURT