**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| CONTENT GUARD HOLDINGS, INC., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Case No. 2:13-CV-1112-JRG |
| | § | |
| AMAZON.COM, INC., et al., | § | |
| | § | |
| *Defendants*. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the briefing on a number of motions to sever and/or transfer, supplemental motions to certain of those motions, and a handful of supplemental notices to various motions[1]: Motorola's ("Motorola") Motion to Sever and Supplemental Submission (Dkt. Nos. 55, 153); Defendant Apple Inc.'s ("Apple") Motion to Sever and Transfer (Dkt. No. 156); Defendants HTC, Huawei and Samsung's Motion to Sever (Dkt. No. 174); Amazon's Motion to Sever (Dkt. No. 205); and Defendant Apple Inc.'s Supplemental Brief in Support of Its Motion to Sever and Transfer (Dkt. No. 265).  In this Memorandum Opinion and Order, the Court addresses only the portions of the motions requesting severance.  The Court held a hearing on November 18, 2014 to hear the Parties' arguments as to these motions.  (*See, e.g.*, Dkt. Nos. 294, 299.)  Having reviewed the considerable record in this case and the applicable law, the Court **DENIES** the requests to sever and sets a schedule for briefing and a hearing to determine separate trials.

---

[1] For the sake of brevity, the Court omits listing each supplemental notice.

## APPLICABLE LAW

"Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966) (citing Federal Rules of Civil Procedure ("F.R.C.P.") Rules 2, 18-20 and 42).  "[M]otions to sever are governed by Federal Circuit law because joinder in patent cases is based on an analysis of the accused acts of infringement, and this issue involves substantive issues unique to patent law." *In re EMC Corp.*, 677 F.3d 1351, 1354 (Fed. Cir. 2012).[2]

In most patent cases, the joinder of defendants into actions and/or trials is provided for by 35 U.S.C. § 299.[3]  Otherwise, F.R.C.P. Rules 18 through 22 provide, generally, for the joinder of

---

[2] In its citation to *In re EMC*, the Court is aware that the decision concerns a case that was filed before the passage of the America Invents Act.

[3] 35 U.S.C. § 299 entitled "Joinder of Parties" and provides as follows:

(a) Joinder of Accused Infringers — With respect to any civil action arising under any Act of Congress relating to patents, other than an action or trial in which an act of infringement under section 271 (e)(2) has been pled, parties that are accused infringers may be joined in one action as defendants or counterclaim defendants, or have their actions consolidated for trial, only if—

(1) any right to relief is asserted against the parties jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using, importing into the United States, offering for sale, or selling of the same accused product or process; and

(2) questions of fact common to all defendants or counterclaim defendants will arise in the action.

(b) Allegations Insufficient for Joinder.— For purposes of this subsection, accused infringers may not be joined in one action as defendants or counterclaim defendants, or have their actions consolidated for trial, based solely on allegations that they each have infringed the patent or patents in suit.

(c) Waiver.— A party that is an accused infringer may waive the limitations set forth in this section with respect to that part

claims and parties in civil litigation.[4]  "A plaintiff may assert a claim under Rule 18 only if the defendants are properly joined in the first instance."  *In re Nintendo Co., Ltd.*, 544 F. App'x 934, 938 (Fed. Cir. 2013) (unpublished) (citing *Intercon Research Assocs., Ltd. v. Dresser Indus., Inc.*, 696 F.2d 53, 57 (7th Cir. 1982)).   Under Rule 20, joinder is proper where: (1) the claims against the defendants arise out of the "same transaction, occurrence, or series of transactions or occurrences," and (2) there is a "question of law or fact common to all defendants." Fed. R. Civ. P. 20(a)(2)[5]; *In re EMC*, 667 F.3d at 1356.  "Rule 20's two requirements—that the claims share

---

[4] F.R.C.P. 18 provides as follows for "Joinder of Claims":

(a) In General. A party asserting a claim, counterclaim, crossclaim, or third-party claim may join, as independent or alternative claims, as many claims as it has against an opposing party.

(b) Joinder of Contingent Claims. A party may join two claims even though one of them is contingent on the disposition of the other; but the court may grant relief only in accordance with the parties' relative substantive rights. In particular, a plaintiff may state a claim for money and a claim to set aside a conveyance that is fraudulent as to that plaintiff, without first obtaining a judgment for the money.

[5] F.R.C.P. Rule 20 provides as follows for "Permissive Joinder of Parties":

(a) Persons Who May Join or Be Joined.

(1) Plaintiffs. Persons may join in one action as plaintiffs if:

(A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

(B) any question of law or fact common to all plaintiffs will arise in the action.

(2) Defendants. Persons—as well as a vessel, cargo, or other property subject to admiralty process in rem—may be joined in one action as defendants if:

(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

'question[s] of law or fact common to all defendants,' and 'aris[e] out of the same transaction [or] occurrence'—help ensure that the scope of the action remains "consistent with fairness to the parties.'" *Id.* at 1355 (citing *Gibbs*, 383 U.S. at 724).

"It is clear that where defendants are alleged to be jointly liable, they may be joined under Rule 20 because the transaction-or-occurrence test is always satisfied." *In re EMC*, 667 F.3d at 1356 (citing *Temple v. Synthes Corp.*, 498 U.S. 5, 7 (1990)). "Defendants may [also] be joined if 'any right to relief is asserted against them jointly, severally, or in the alternative,' [] so an allegation of joint liability is not required.'" *Id.* "The cases make equally clear that the fact that the defendants are independent actors does not preclude joinder as long as their actions are part of the 'same transaction, occurrence, or series of transactions or occurrences.'" *Id.* "[I]ndependent defendants satisfy the transaction-or-occurrence test of Rule 20 when there is a logical relationship between the separate causes of action." *Id.* at 1358. "The logical relationship test is satisfied if there is substantial evidentiary overlap in the facts giving rise to the cause of action against each defendant." *Id.* "In other words, the defendants' allegedly infringing acts, which give rise to the individual claims of infringement, must share an aggregate of operative facts." *Id.*

"Claims against independent defendants (i.e., situations in which the defendants are not

---

(B) any question of law or fact common to all defendants will arise in the action.

(3) Extent of Relief. Neither a plaintiff nor a defendant need be interested in obtaining or defending against all the relief demanded. The court may grant judgment to one or more plaintiffs according to their rights, and against one or more defendants according to their liabilities.

(b) Protective Measures. The court may issue orders—including an order for separate trials—to protect a party against embarrassment, delay, expense, or other prejudice that arises from including a person against whom the party asserts no claim and who asserts no claim against the party.

acting in concert) cannot be joined under Rule 20's transaction-or-occurrence test unless the facts underlying the claim of infringement asserted against each defendant share an aggregate of operative facts." *In re EMC*, 667 F.3d at 1359.  In addition, "joinder is not appropriate where different products or processes are involved." *Id.* "Joinder of independent defendants is only appropriate where the accused products or processes are the same in respects relevant to the patent." *Id.* "Unless there is an actual link between the facts underlying each claim of infringement, independently developed products using differently sourced parts are not part of the same transaction, even if they are otherwise coincidentally identical." *Id.*

Further, "even if a plaintiff's claims arise out of the same transaction and there are questions of law and fact common to all defendants, district courts have the discretion to refuse joinder in the interest of avoiding prejudice and delay, ensuring judicial economy, or safeguarding principles of fundamental fairness." *In re EMC*, 667 F.3d at 1360 (citing *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521 (5th Cir. 2010)). "In a complicated patent litigation a large number of defendants might prove unwieldy, and a district court would be justified in exercising its discretion to deny joinder when different witnesses and documentary proof would be required." *Id.* (citations omitted).

"To be sure, Rule 21, which authorizes a district court to 'sever any claim against a party,' provides a district court broad discretion." *In re EMC*, 667 F.3d at 1355. "Just as when weighing the § 1404(a) factors, however, that discretion must be exercised within the boundaries set by relevant statutes and precedent."[6] *Id.*

---

[6] F.R.C.P. Rule 21 provides as follows for "Misjoinder and Nonjoinder of Parties":

Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party.

# BACKGROUND

This suit is a suit concerning the infringement and validity of certain U.S. patents. Plaintiff ContentGuard was originally formed as a partnership between Xerox Corporation and Microsoft Corporation[7] to pursue digital rights management ("DRM") technology.[8]  As part of its business, ContentGuard filed and obtained various patents, including the nine patents that it asserts in this action.  The Defendants in this action—Amazon, Apple, Huawei, Motorola, HTC, and Samsung[9]—are well-known technology companies that, among their varied businesses, provide electronic hardware and software products.  Generally in this suit, ContentGuard accuses DRM aspects of certain of Defendants' software applications ("apps") (e.g. iTunes, Amazon Kindle, Amazon Instant Video) and hardware and software components of infringing its patent claims.

This case was filed as a single action against seven named Defendants.  Motorola filed an initial Motion to Sever (Dkt. No. 55) in the middle of February 2014.  The Court ultimately carried Motorola's Motion and stated the following:

> Here, the Manufacturer Defendants are each accused of using three software applications on their devices to practice ContentGuard's DRM patents, i.e., the Amazon Kindle app, the Google Play apps, and the UITS specification. The claims against the Manufacturer Defendants therefore share at least a set of

---

[7]  ContentGuard is now owned by Pendrell Technologies, LLC.  (Dkt. No. 2.) ContentGuard's website suggests that may also be owned by Time Warner.  *See* http://contentguard.com/company/ ("ContentGuard is owned by Pendrell Corporation and Time Warner") (last visited January 30, 2015).

[8]  Broadly, DRM technology, which might also be thought of as "copy protection," seeks to control access (e.g. viewing, copying) to digital information, including media, such as music, movies, and software.

[9]  BlackBerry Corporation (f/k/a Research In Motion Corporation), another technology company, was dismissed on January 21, 2015.  As Blackberry is no longer a party, the Court omits Blackberry from its discussion.

common facts regarding these three software applications. Despite the existence of a hardware component, the infringement of which may depend on the different devices supplied by individual Manufacturer Defendant, the accused instrumentality in this case – the use of the three common software applications on each Defendant's device – is not clearly based on "independently developed products using differently sourced parts," and the common facts regarding the accused software may well constitute "an actual link between the facts underlying each claim of infringement." *See In re EMC Corp.*, 677 F.3d at 1359.

. . . .

Here, a total of nine ContentGuard patents are asserted in the Amazon Action against seven device manufacturers. Each Defendant, except for Amazon, is accused of infringing all nine of the asserted patents, while Amazon is accused of infringing seven of the nine asserted patents. (*See Amazon Action, Compl*. ¶¶ 128-34.) The patents at issue altogether include 27 independent claims and 287 dependent claims, and proving infringement of the hardware component of the patented technology may depend on each Manufacturer Defendant's individual devices. Clearly, this case is a "complicated patent litigation" with multiple defendants where "different witnesses and documentary proof would be required" from each Defendant. *See In re EMC, 677 F.3d at 1360.* In a case of this complexity, to force all Manufacturer Defendants to share a single trial might prejudice their ability to build an effective defense against ContentGuard's allegations, which counsels against joinder.

Ultimately, however, this Court finds the record has not been sufficiently developed at this point in time for it to determine with clarity whether or not joinder is proper in this case. While ContentGuard's claims against each Manufacturer Defendant share the common facts underlying the three accused software applications and may depend on each Defendant's individually accused devices, no evidence has been proffered regarding how the accused software-hardware combination corresponds to claims of the asserted patents. If, for instance, ContentGuard's claims are predominantly software-based, then the common facts underlying such claims may constitute "an actual link" connecting all Defendants sufficient to support joinder in this case. *See id. at 1359.* On the other hand, if the hardware component turns out to play the dominant role in determining how the three software applications are used specifically on each Defendant's device, then the claims against each Defendant may be sufficiently distinguished such that keeping them jointly in one case would be

> improper. Given that the case is still in its early stage and discovery has barely started, the Court deems it prudent to carry the joinder issue and let the parties further develop the record to resolve, among other things, the relative significance of the software and hardware components of ContentGuard's claims.

(Dkt. No. 109, filed April 15, 2014.)  Motorola filed its Supplemental Motion to Transfer two months later.  Then, at varying intervals, the other Defendants also moved to sever.  Apple filed its Motion to Sever and Transfer two days after Motorola filed its Supplemental Motion.  One month after Apple filed its motion HTC, Huawei, and Samsung filed their Motion to Sever.  One month after the HTC motion was filed, Amazon filed its Motion to Sever.  Two and a half months after Amazon filed its motion, Apple filed its supplemental motion.  The four motions containing the severance issue that the Court addresses represent approximately sixteen filings, 175 pages of briefing, and 1000 pages of exhibits.

This paragraph summarizes the common positions taken by the parties, and the following paragraphs distill the distinct positions taken by Movants in their briefing along with arguments made by their counsel at the Court's hearing on the motions.  All of the Movants argue that claims against them should be severed, in different ways, into new cases.  Some Movants argue that particular claims against them should be severed into separate actions, while other Movants argue that they should be severed entirely, as a party, from all other Movants.  The Movants do universally agree on certain generalities: that the case is complex, that there are different categories of claims, and that trying all of the claims against each Movant in one trial would be unjust.  The Movants differ in their legal arguments; in their views of whether anything besides apps (e.g. hardware) is or is not relevant to ContentGuard's claims; and in whether they believe they are properly joined.  ContentGuard asserts that joinder is proper under the appropriate legal tests, that hardware is relevant to its case, that the Court should not use its discretion to sever the case, and that, if the Court should sever the case, the newly severed cases should be consolidated

for pretrial.  ContentGuard also concedes that the case should be tried in separate trials.

Motorola's motion is based solely on 35 U.S.C. § 299.  "Motorola proposes that the claims based on the use of the Google Play apps be severed into a separate action, which could then be joined with the action of *ContentGuard Holdings, Inc. v. Google Inc.*, No. 14-cv-61" and that "the claims based on the use of the Amazon apps be severed into a separate action."[10] (Motorola Sup. at 6.)  While Motorola's motion does not directly address whether or not the severance it proposes for the "Google Play apps" should apply to all defendants or just to Motorola, Motorola's proposed order makes no distinction between the claims against Motorola and the claims against other defendants.  (*See* Motorola Sup. and Motorola's proposed order, Dkt. No. 153-6.)  Motorola asserts that hardware is not relevant to infringement: "no particular aspect or component of defendants' hardware (*i.e.* the accused devices such as Motorola's Moto X smartphone) is relevant to the infringement allegations.  (Motorola Sup. at 3.)  Motorola argues that Plaintiff's theory (expressed in Plaintiff's infringement contentions) is identical, regardless of defendant for particular apps (e.g. Google Play Music) across various Defendants. (*Id.*)  Motorola asserts that, while Plaintiff's theory for a given app is identical across various Defendants, Plaintiff's theory is entirely different between apps.

At the hearing, counsel shared by Motorola and Google asserted that the case should be severed by claim and then by app.  (Dkt. No. 299 at 53, 55:18-21 ("I do believe that the best division here is by claim — by app").)  Motorola and Google's counsel argued that the apps run

---

[10] Motorola's counsel in this action is identical to Google's counsel in the 2:14-cv-61 action.  ContentGuard moved to consolidate the 2:14-cv-61 case with this action for pretrial proceedings, Google opposed that consolidation, and the Court denied the request to consolidate. *See, e.g.*, Case No. 2:14-cv-61, Dkt. Nos. 20 and 35.  Despite Google's early opposition, the Court observes that Google and ContentGuard subsequently agreed to a schedule in the 2:14-cv-61 case that is identical to the schedule in this action.  Google has not moved to intervene in or otherwise join this action.

the same on each device and that hardware doesn't matter.  (*See* Dkt. No. 299 at 53:15-54:1.)  However, counsel also agreed (in contrast to Motorola's briefing) that the fact that the app might run the same on different hardware did not make the hardware irrelevant and that the Court should not disregard the device manufacturers in considering severance.  (*See* Dkt. No. 299 at 54:2-18.)  Counsel also asserted that "the device manufacturers would have to be a part of those [severed] cases" and that "as part of the severance motion, all of the device manufactures, including Motorola, who I represent, recognize that they might be a Defendant then in multiple cases . . . ."  (Dkt. No. 299 at 54:17-21.)  Counsel also argued that these severances might include the "silos of Google Play, Amazon, [and] iTunes" and that the apps in each silo have "absolutely nothing in common" with each other. (Dkt. No. 299 at 55:2-10.)

The motion of HTC, Huawei, and Samsung ("HTC Movants") is also based solely on 35 U.S.C. § 299.  The Court observes that the HTC Movants' briefing does not dispute that they are properly joined regarding the Amazon or UITS claims.  Instead of arguing that they are improperly joined in the first instance, the HTC Movants assert that the joinder of additional claims "defies common sense and certainly does not comport with providing defendants the due process to which they are entitled . . . ."  (Dkt. No. 200 ("HTC Reply") at 1.)  The HTC Movants assert that "even if joinder were not prohibited by Section 299, severance would still be required in this case to prevent the manifest inefficiencies and unfair prejudice to defendants that would result from the combined discovery and trial of the numerous unrelated software 'apps', numerous defendants, and numerous patents-in-suit in this case."  (Dkt. No. 174 ("HTC Motion") at 7.)  The HTC Movants assert that "[a]t a minimum [] this action should be severed such that the claims involving (1) the Google Play apps; (2) the Samsung-Specific Accused Apps

and Servers; and (3) the HTC Watch App and Servers are severed into separate actions."[11]   (*Id.* at 6-7.)   The HTC Movants are clear that they are asking the Court to sever all parties, including defendants who are not parties to the motion.   The HTC Movants recognize that, as a result of their severance, defendants "may be included in more than one suit."   (HTC Reply at 4.) However, the HTC Movants are unclear as to how the Court should resolve the remaining unsevered claims against the HTC Movants in the Amazon matter.   The Court observes that the HTC Movants' proposed order does resolve those remaining claims, in a manner of sorts; the proposed order completely dismisses the HTC Movants from this action, effectively granting judgment in favor of the movants for any unsevered claims.   (Dkt. No. 174-1.)

Apple moves for severance under F.R.C.P. Rule 20 ("Permissive Joinder of Parties"); Rule 21 ("Misjoinder and Nonjoinder of Parties"); and 35 U.S.C. § 299 ("Joinder of Parties").[12] (*See* Apple Mot. at 2-4.)   While Apple's Motion requests relief under statutes addressing the joinder of parties, Apple's Motion, however, does not argue that Apple is misjoined as a party.[13] Instead, Apple's Motion argues that claims against Apple are misjoined.   (*Id.* at 6-7.)   Apple's briefing initially appears to suggest that it is only joinder of the "claims against Apple's iTunes, iBooks, and App Store software with claims against other defendants [that] is improper."[14]   (*Id.*

---

[11]   While the HTC Movants' brief provides specific definitions for Samsung-Specific Accused Apps and Servers and HTC Watch App and Servers, the definition of the term Google Play apps is uncertain.

[12]   Each of these Rules is listed above in full in footnotes hereto.

[13]   Apple's Supplemental Motion asserts that ContentGuard abandoned all of its allegations that support joinder of defendants, such as ContentGuard's allegations that Apple is properly joined with Amazon.   ContentGuard's response asserts that Apple is incorrect: ContentGuard has not dropped its claims that support joinder.

[14]   Apple's Reply also suggests that Apple would be subject to liability in other suits: "Claims concerning Amazon- and Google-provided apps belong in separate cases, where any

at 5; *see also* Apple Sup. Motion at 1.)  Apple's briefing then expands to cover all claims related to Apple.  Apple asserts that ContentGuard's infringement claims "do not meaningfully implicate Apple's operating systems and hardware."  (*Id.* at 7.)  Apple adds that "[e]ven if operating systems or hardware were thought to play any role, it would only confirm that severance is appropriate."  (*Id.*)  Apple concludes with the assertion that either a software or hardware analysis of severance reaches "essentially the same result, placing Apple as the sole defendant in a separate case."  Apple's briefing is fundamentally Apple-centric and does not clearly address ContentGuard's theories of infringement that involve other parties' software or hardware in relation to Apple's devices.  While Apple appears, at first glance, to be arguing for claim based severance, having examined the substance of Apple's argument, the Court concludes that Apple is seeking to be wholly severed as a party.  Apple's proposed order confirms this conclusion when it states that "all claims against Defendant Apple Inc." are to be severed.

Apple also asserts that 35 U.S.C. § 299 "precludes joinder of defendants who do not make or sell the same products, and defendants may not be joined 'based solely on allegations that they each have infringed' the same patents." (Apple Mot. at 2.)  Apple's assertion regarding § 299 (recited in full above) is incomplete.  Instead of being limited to "defendants who [] make or sell the same products" the statute additionally provides for joinder in instances such as "use" and "importing" and also applies to processes in addition to products:

> …arising out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using, importing into the United States, offering for sale, or selling of the same accused product or process.

35 U.S.C. § 299(a)(1).

---

Apple liability would be subsidiary to Amazon's or Google's."   (Apple Reply, Dkt. No. 176 at 4.)

At the hearing, counsel for Apple asserted that "all of the claims against Apple should be severed into a separate case," apparently arguing that Apple should be severed as a party.  (Dkt. No. 299 at 61:4-6.)  Apple's counsel then asserted that "the claims against Apple relating to the Amazon apps and the Google apps, as a practical matter, those claims are going to be defended by Google, and they're going to be defended by Amazon, and they're going to play themselves out [in this suit]," seemingly suggesting that some Apple claims would remain in this suit.  (*Id.* at 62:4-8.)  Apple also asserted that the versions of third-party apps (e.g. Amazon Kindle) that run on its devices (e.g. iPhones) are specifically authored for its operating system—iOS—and are, therefore, not the same product or process as a version of the app that runs on another system.  (*Id.* at 63:18-23.)  Apple also argued that the same app is a different product on each platform that it runs upon.[15]  (*See* Dkt. No. 299 at 63:19-23 ("[The Amazon] apps that are authored for the iOS. . . . they are not the same product as the -- as the Amazon app that would be distributed on the android system . . . .").  Apple also asserted that "Apple does not utilize UITS."  (*Id.* at 65:2.)  Apple asserts that it uses an alternative to UITS and that, if it uses that alternative, "it will be deemed in compliance with the UITS requirements, but not that it is using the UITS specification."[16]  (*Id.* at 65:21-24.)

Amazon also moves for severance under F.R.C.P. Rules 20 and 21 and 35 U.S.C. § 299.  (*See* Amazon Mot., Dkt. No. 205 at 2-3.)  Amazon's Motion asserts that "the Court should sever ContentGuard's claims with respect to the accused Amazon apps, devices, and content delivery systems."  (*Id.* at 7; Amazon Reply., Dkt. No. 222 at 4.)  To the Court's surprise, Amazon's proposed order enacts a materially different severance—separating the case in five different

---

[15] The Court observes that Amazon does not appear to assert that different versions of its apps are different products for the purposes of joinder.

[16] At the hearing, ContentGuard disputed that Apple did not use UITS.

ways—than the single method of severance discussed in the body of Amazon's motion.[17]  Even the one method of severance that is discussed in the body of Amazon's briefing takes on subtly different form in Amazon's proposed order.[18]

In arguing for severance, Amazon's Motion only asserts that one of the six defendants— Huawei—is improperly joined because Amazon does not have an agreement to provide Amazon apps to that defendant.[19]  (Amazon Mot. at 3.)  The Court notes that Huawei, in its separate motion to sever, does not argue that it is improperly joined regarding Amazon.  Amazon does not allege improper joinder for any other defendant in regards to Amazon's Kindle and MP3 apps. (*Id.*)  Amazon's Motion asserts that "Amazon's Instant Video app is only available on Amazon and Apple phones . . . ."  (*Id.*)  In other words, Amazon asserts that its Instant Video app is not available on the Android platform.  As it appears that Amazon Instant video may be available on the Android platform, there may be a factual question as to whether or not the Amazon Instant Video app is, in fact, available on other devices (e.g. the Android platform):

---

[17]  Amazon's proposed order reads as follows:

> The Clerk of the Court is directed to sever this action into five separate cases related to the following claims: (1) the claims against the Amazon Kindle app, the Amazon Instant Video app, the Amazon Music app, and the other accused Amazon devices and content delivery systems; (2) the claims against the Apple iTunes and iBooks apps; (3) the claims against the Google Play apps; (4) the claims against the Samsung-specific apps; and (5) the claims against the HTC Watch app.

(Dkt. No. 205-1.)

[18]  Instead of severing the "claims with respect to the accused Amazon apps, devices, and content delivery systems," the proposed order severs "the claims against the Amazon Kindle app, the Amazon Instant Video app, the Amazon Music app, and the other accused Amazon devices and content delivery systems."

[19]  ContentGuard asserts that Amazon does not dispute that its apps can be and are run on Huawei devices.  (Amazon Mot. Resp., Dkt. No. 216 at 3-4.)



*See*  http://www.amazon.com/b?node=9987963011  ("Getting Prime Instant Video on your Android Phone . . . Visit Amazon Instant Video . . . Use your Android phone to enjoy shows . . .") (last visited January 28, 2015).  Amazon also does not dispute that it practices the UITS standard.  (Amazon Mot. at 4.)  Amazon argues that the other claims against third parties are not "merely incidental claims."  (*Id.*)  Amazon also asserts that if its case is not severed it will be in an impossibly complex case that cannot be understood by a jury at trial.  (*See id.* at 5-6.)  Amazon asserts that "even if Content-Guard's joinder of the many defendants in this case technically complies with the requirements of the America Invents Act, the Court should exercise its discretion to sever the action . . ."  (*Id.* at 6; Amazon Reply at 4.)

At the hearing, Amazon's counsel confirmed that joinder would be appropriate except for Huawei.  (Dkt. No. 299 at 35:17-23.)  Amazon's counsel asserted that there was not enough information in the complaint to make a clear severance determination.  (*See* Dkt. No. 299 at 36:7-9 ("there's any number of variations that can be put together to try to determine whether or not there's direct infringement, induced, and contributory"); 36:18-21 ("looking at the complaint, whether it's the initial complaint or the second amended complaint, Your Honor, I don't think you are going to find the appropriate guidance to make a decision with respect to severance").)

When asked, Amazon's counsel also asserted that the severance issue was a party issue and not a claim issue:

> THE COURT: Is this a party issue, or is it a claim issue?
>
> MR. VALAIK: I -- I think from Amazon's perspective, Your Honor, and -- and the other Defendants have their motions to sever -- the best way to look at it, I believe, is parties.

(Dkt. No. 299 at 36:18-21.).   When asked why it was a party issue, Amazon responded as follows:

> "[W]hat makes it more difficult is the device and apps part of this case.  What Amazon would like is to defend its devices and its apps, but what naturally happens when you lump all the Defendants together and all of the patents, you have an instance where whether it's someone else's device, and they're being accused of some type of infringement because they have the [Amazon] Kindle app."

(*Id.* at 37:22-38:2.)  Amazon's position appears to be that Amazon would prefer to address the case from a software only perspective and to exclude the hardware (of other third parties) from its case.

## ANALYSIS

The Court has invested significant time in trying to resolve this issue.  That four out of six defendants moved separately for severance across 175 pages of briefing and that the Movants presented the Court with different, competing, theories of how (and why) the case should be severed and what was or was not relevant in the severance determination (e.g. hardware and app operating system) substantially complicated the Court's efforts to develop a coherent understanding of the severance issues.  While the Movants' differing views (and the Movants' lack of specificity regarding their severance positions) prevent the Court from describing a possible severance that they would each agree to, the Movants, generally, ask the Court to create

at least two cases containing every defendant and some number of other cases (perhaps four) containing between one and all but one of the defendants.

Having completed its review of the briefing and the record, the Court's analysis does not find that the movants are improperly joined as parties under 35 U.S.C. § 299 and F.R.C.P. Rule 20.   The Court finds that the briefing and record reflect that, under multiple theories of infringement, there are common questions of fact; that there are actual links between those facts; and that the "same transaction, occurrence, or series of transactions or occurrences" is being accused.   The Court observes that the majority of the Movants appear to also share the Court's conclusion.   From the Court's review of the briefing, four of the six defendants—Motorola, Samsung, HTC, and Huawei—do not directly dispute that they are properly joined as parties (even though as discussed below they do dispute the joinder of certain claims), and that another defendant—Amazon—only disputes the joinder of one party out of six: Huawei.[20]   Only one movant—Apple—clearly asserts that it should be wholly severed as a party.   Even so, Apple does not directly state that it is improperly joined as a party under certain theories of infringement.[21]   Instead, Apple asserts that the joinder that does exist cannot support the joinder of additional claims against it.

Apple and Amazon additionally assert that severance is improper under F.R.C.P. Rule 21. Such assertion is wholly conclusory and neither party provides the Court with any substantive argument under that Rule.   Apple's briefing provides no specific argument as to Rule 21 and only references Rule 21 in its initial assertion of that Rules and as part of two citations.   Amazon

---

[20]   Having reviewed the briefing and the record, the Court finds ample evidence to supporting Huawei's joinder as a party.

[21]   As discussed above Apple's Supplemental Motion does assert that ContentGuard dropped all of its claims supporting joinder of third-parties, which ContentGuard vigorously disputes.   *See supra* n.13.

only mentions the Rule three times: once in its initial assertion of the Rule, once as part of a citation, and in a conclusory statement that "the Court should sever this case under Federal Rule of Civil Procedure 21." The Court, therefore, finds Apple's and Amazon's briefing unpersuasive that the Court should sever the case under Rule 21.

While Movants do not substantively dispute that they are properly joined as parties under certain theories of infringement, they do dispute, at length, whether additional claims against them should be joined in this action. A serious complication for the Court is that the Movants argue their issues of claim joinder under provisions covering the joinder of parties—not under those provisions covering the joinder of claims. To the extent the Movants have argued for discretionary severance, the Court will address the Movants issues as largely a request for claim-based severance.

Movants have asserted that judicial efficiency would be increased if the Court were to discretionarily sever this action. The Movants present no clear explanation of how splitting this case into multiple cases (some of which would apparently include the same or nearly the same defendants) promotes judicial efficiency. Absent a clear explanation to the contrary, the more likely outcome seems to be that more cases with more overlapping defendants would generate the opposite result: a multiplication of complexity and a decrease in efficiency.

Movants also argue that the case should be severed along manufacturer-retailer lines. For example, Apple argues that it is just a downstream retailer or distributor of the apps of other defendants. The problem with Apple's analogy (that it is merely a retailer of a third-party's product) is that elements of Apple's products appear to be part of the infringement analysis for those third-party products. The Court does not find that the facts and infringement theories of the case fall within (or even near) the traditional lines of manufacturer-retailer.

The Movants have also raised concerns regarding discovery.  The Court's issue with Movants discovery concerns is that, while Movants have generally articulated concerns regarding the complexity of litigation, the Movants have failed to provide the Court a clear explanation of how discovery would be substantively different (or simplified) if this case were severed.[22]  This Court stands ready to address specific harms under the law, but it is difficult for the Court to provide relief from a generalized assertion: such that a case is, "a monster" or "complex."

The Movants also raise the issue of potential prejudice from trying all claims in one trial. The Movants concerns of potential prejudice at trial are shared by the Court, and were voiced by the Court in its order on Motorola's Motion before any of the present motions were filed. ContentGuard has also stated that it too believes that the claims should be tried in separate trials. (*See* Dkt. No. 299 at 46:3-5 ("We [(ContentGuard)] don't believe that the case could be resolved in one trial. There -- there will be probably several trials.").)  The Court has determined that it will use its discretionary powers under F.R.C.P. Rule 42(b) to order separate trials.[23]

---

[22] For example HTC's Reply contains two serious assertions: 1) that there are "due process concerns that this joined action present to defendants in discovery" and 2) that "[t]he joint discovery required in this combined action . . . precludes defendants from adequately mounting a defense . . . ."  (HTC Reply at 5.)  However, after repeatedly combing through HTC's briefing and HTC's filings in this case, the Court was unable to locate any specific articulation of or request for relief from either assertion.  Instead, the record appears to reflect that defendants have cooperated in their defense, as if they were in a consolidated action.  The Court was left to conclude that HTC's assertions were attorney argument.

[23] F.R.C.P. Rule 42 separately provides as follows for "Consolidation; Separate Trials":

(a) Consolidation. If actions before the court involve a common question of law or fact, the court may:

(1) join for hearing or trial any or all matters at issue in the actions;

(2) consolidate the actions; or

While the Court would strongly prefer, at this point, to resolve this issue and to announce how the case would be divided for trial, the record before the Court, including the Movants' briefing, is presently insufficient to make such critical and complex determinations.[24]   As Google's counsel stated at the hearing, "it is hard to make determinations as to what -- the right way to -- to slice the salami, as they say, might be." (Dkt. No. 299 at 49:7-9.)   The Court's concern is that, if the Court were to slice incorrectly, it would, at best, create additional complexity and inefficiency, and, at worst, it might effectively grant judgment on issues, extinguishing the rights of parties and creating additional issues, magnifying the complexity of any future appeals.   The Court, therefore, will conduct subsequent proceedings at a later date swhen the record has been better developed to determine the precise issue of separate trials.

After much consideration, the Court has determined that the best time for this proceeding is likely after the close of expert discovery but before pretrial proceedings commence in full.   At that point, the case should be substantially narrowed and the theories of the case will be fully determined.   The Court hereby ORDERS a hearing on the issue of separate trials at 1:30 p.m. on Wednesday, June 3, 2015.   The Court also ORDERS the parties in this case and the parties in Case No. 2:14-cv-61 to meet and confer (with lead and local counsel present) and to file a joint proposal or proposals for separate trials if warranted by noon on Thursday, May 28, 2015.   The Court further ORDERS the same parties to meet and confer (with lead and local counsel present)

---

(3) issue any other orders to avoid unnecessary cost or delay.

(b) Separate Trials. For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial.

[24] For example, the record before the Court does not substantively address the procedural impacts that the division of the case might create, such as preclusion/estoppel or double recovery.

on the issue of separate trials immediately in advance of the Court's hearing. To the fullest extent possible, the Parties' proposal should provide a clear and agreed trial plan to the Court. To the extent any such proposal includes particular claims being separated for trial, the Court expects that the defendants being separated into such trials will be explicitly defined and that the claims to be separated will be clearly defined, such that there will be no subsequent questions whether or not a particular claim was or was not tried to complete disposition. The Court also directs that the Parties' Joint proposal address and account for potential procedural issues that may result from such severed trials. The Court also directs the Parties, as they meet and confer, to consider all options for the efficient trial of this case, including whether trying more issues in fewer but longer trials would be effective.

## CONCLUSION

For the reasons set forth above, the Court hereby **DENIES** Motorola's Motion to Sever and Supplemental Submission (Dkt. Nos. 55, 153); Defendants HTC, Huawei and Samsung's Motion to Sever (Dkt. No. 174); and Amazon's Motion to Sever (Dkt. No. 205) and **DENIES** the portions of Apple Inc.'s Motion to Sever and Transfer (Dkt. No. 156) and Supplemental Brief in Support of Its Motion to Sever and Transfer (Dkt. No. 265) concerning severance. The Court also determines that there will be separate trials of certain claims in this case under F.R.C.P. Rule 42(b)—the precise number and structure of such separate trials to be determined after the close of expert discovery as noted above.

The Court hereby **ORDERS** the parties in this case and the parties in Case No. 2:14-cv-61 to meet and confer (with lead and local counsel present) and to file a joint proposal for separate trials by noon on Thursday, May 28, 2015; to attend a hearing on the issue of separate trials at 1:30 p.m. on Wednesday, June 3, 2015; and to meet and confer (with lead and local counsel present) regarding the issue of separate trials in advance of the Court's hearing.

**So Ordered and Signed on this**

**Mar 19, 2015**

RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE