**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **ContentGuard Holdings, Inc.,**  <br><br>        **Plaintiff,**  <br><br>     v.  <br><br> **Amazon.com, Inc.,** *et al.*  <br><br>        **Defendants.** | Civil Action No. 2:13-cv-1112-JRG |

**APPLE'S REPLY IN SUPPORT OF ITS NOTICE OF JOINING
MOTOROLA MOBILITY LLC'S MOTION FOR JUDGMENT ON THE PLEADINGS
DECLARING ALL ASSERTED PATENT CLAIMS AGAINST IT INVALID
PURSUANT TO 35 U.S.C. § 101 AND ADDITIONAL SUBMISSION REGARDING
CLAIMS NOT ASSERTED AGAINST MOTOROLA (DKT. 426)**

## TABLE OF CONTENTS

**Page**

I. PREEMPTION IS NOT A REQUIREMENT FOR FINDING A CLAIM INVALID UNDER SECTION 101 ...................................................................1

II. THE ASSERTED CLAIMS OF THE '007 PATENT AND CLAIMS 3 AND 10 OF THE '160 PATENT ARE NOT PATENT-ELIGIBLE ................................................................................................................2

III. THE ASSERTED CLAIMS OF THE NGUYEN PATENTS ARE NOT PATENT-ELIGIBLE ................................................................................................3

Defendant Apple Inc. ("Apple") provides the following reply in support of its Notice of Joinder to Motion for Judgment on the Pleadings and Supplemental Submission (Dkt. 426, "Notice").  For claims asserted against Motorola, Apple joins in Motorola's reply (Dkt. 443, "Moto. Reply").  For claims not asserted against Motorola, Apple submits the following in reply to issues raised by ContentGuard's Response to Apple's Notice (Dkt. 446, "Resp.") and ContentGuard's joint opposition to Motorola's and Google's 101 motions (Dkt. 428, "Opp."), which ContentGuard references in its response.

## I.  PREEMPTION IS NOT A REQUIREMENT FOR FINDING A CLAIM INVALID UNDER SECTION 101

Apple's statement of the law responded directly to the Court's questions concerning preemption, explaining that while preemption of a field of endeavor is a policy consideration underlying Section 101, it is not a test or requirement for finding a claim invalid.  (Notice 1-2.)  ContentGuard does not dispute that characterization of the law, and argues only that "the *extent* to which a claimed invention preempts" a field is relevant to Section 101 analysis.  (Resp. 1, emphasis added.)  Thus, while the law does not ignore pre-emption concerns, a "patent need not … preempt an entire field to run afoul of § 101[.]"  *Gametek LLC v. Zynga, Inc.*, 2014 WL 1665090, at *5 (N.D. Cal. Apr. 25, 2014) .

ContentGuard's contention that Apple and the other defendants "have not raised any colorable preemption arguments" (Resp. 1) disregards the substance of the briefs that Motorola and Apple filed.  As demonstrated in those briefs, ContentGuard's patents lay claim to a library loan scenario as implemented on computers, with digital content.  ContentGuard's response, that some of its patents "are limited to devices that include 'trusted repositories'" (Resp. 1; *see also* Opp. 19), is no response at all, because the "integrities" ContentGuard contends are found in such repositories are also inherent in the library loan scenario.  (*See* Dkt. 390 at 12 n.5.)

Moreover, ContentGuard's patents purport to cover any level of security for these "integrities"—even no security at all. (*See* Dkt. 390 Ex. 5 at 14:45-15:43.) ContentGuard's contention that its patents are "hardware-specific" contradicts ContentGuard's arguments elsewhere, notably its assertion that all of its asserted claim limitations are software limitations. (*See id.* at 7:50-55, 13:20-24, 29-31; *see also* Dkt. 218 Exs. 21-29 (summaries of ContentGuard's P.R. 3-1(g) contentions). Finally, ContentGuard's arguments that its patents provide some technical solution for issues concerning "trusted" systems (Opp. 3-4, 12-13) are belied by the claims themselves, which disclose no technological solutions whatsoever, and recite only ordinary computer components.

## II. THE ASSERTED CLAIMS OF THE '007 PATENT AND CLAIMS 3 AND 10 OF THE '160 PATENT ARE NOT PATENT-ELIGIBLE

ContentGuard acknowledges that "in the context of a Section 101 analysis, it is not appropriate to ignore the claims' actual limitations" (Opp. at 8), but that is exactly what ContentGuard has done. Motorola's reply addresses ContentGuard's failure to provide an element-by-element analysis for the patent claims it has asserted against Motorola, noting that ContentGuard's treatment of all of the Stefik patents as an undifferentiated mass is plainly insufficient. (Moto. Reply at 5.) Apple concurs with Motorola.

Claims 3 and 10 of the '160 patent are asserted only against Apple, and are therefore not addressed in ContentGuard's reply to the Motorola motion. ContentGuard failed to address them in its Apple-specific response. As for the '007 Patent, ContentGuard treats all of the Stefik patents as a group (with no specific discussion of the '007 patent or any of its claims), and its sole argument in response to Apple is that the "Trusted Repository Patents" (which it does not define) is a circular argument that these patents "are limited to devices that include 'trusted repositories.'" (Resp. 1.) But the '007 patent claims do not even use the "repository" claim

term. While the asserted '007 claims include the term "trusted," as Apple explained (*see* Notice 2-3), that concept is found in the library loan scenario, where patrons are permitted to take custody of library materials only after applying for and obtaining a valid library card, and in that process agreeing to abide by the library's terms of use. As Apple set out in its Notice (*see id.* at 2-6), these claims of the '160 and '007 patents are not patentable under Section 101, and ContentGuard (in either its response to Motorola's submission or its Apple-specific response) offers no argument to the contrary.

### III. THE ASSERTED CLAIMS OF THE NGUYEN PATENTS ARE NOT PATENT-ELIGIBLE

ContentGuard attempts to incorporate by reference arguments concerning the Nguyen patents that it made in response to Google's 101 motion in the Google Action. (Resp. 1.) But Apple did not join in Google's motion because it is in a separate case. Rather, Apple presented its own arguments. Although those arguments are similar in some respects to those advanced by Google, they are not identical. Leaving aside ContentGuard's improper attempt to incorporate by reference its response in the Google Action, ContentGuard does not discuss any specific claims or limitations of the Nguyen patents. By its own admission, this means that ContentGuard's Section 101 analysis is improper. (*See* Opp. at 8, "[I]n the context of a Section 101 analysis, it is not appropriate to ignore the claims' actual limitations.") And ContentGuard has not even responded to, much less identified any flaw in, the element-by-element analysis Apple presented in its submission. (*See* Notice at 6-12).

ContentGuard also ignores the specific arguments Apple advanced as to why the Nguyen patents are not patent-eligible: They claim the abstract concept of sublicensing of usage rights in a generic computer environment. (*See* Notice 6-7.) The "meta-rights" in these patents are simply the authority to sublicense. ContentGuard's argument that meta-rights are enforceable by

3

a repository (Opp. 18) is non-responsive—the library and video rental store explained in Apple's Notice both "enforce" the sublicensing inherent in book or video loans (Notice 8, 10-11). Further, that sublicensing rights may be enforced says nothing about whether the Nguyen patents claim abstract concepts. Just as with the Stefik claims noted above, the presence of "integrities" (Opp. 18-19) does nothing to make the claimed Nguyen concepts any less abstract—libraries and video rental stores also impose levels of physical, communications, and behavioral "integrity" on loan transactions, as Apple detailed. (Notice 8.) Libraries and video rental stores acquire their contents from known sources (*i.e.*, Publishers, Movie Studios), restrict and control physical access to books and videos, and only permit transactions with authorized users who agree to rules constraining their use of those works. (*See* Notice 8, 10-11.)

Likewise, ContentGuard's "state variable" argument (Opp. 19) ignores that Apple's library loan and video rental scenarios include the same concept. (*see* Notice 8-9, 11-12). ContentGuard's reliance on a case discussing a hand-implemented computer algorithm (Opp. 19) is misplaced, because a "state variable" is not a complex algorithm or piece of computer code. A "state variable" simply stores information about the status of an item, or rights associated with it—that is done in both the video rental and library loan scenarios with transaction logs, receipts, check-out cards, and other records documenting loan or rental rights. (*See* Notice 8-9, 11-12.)

ContentGuard then misconstrues the parties' claim construction dispute, contending that Apple's 101 arguments are somehow inconsistent with statements made at the *Markman* hearing. (*See* Resp. 2.) There is no inconsistency. At the hearing, ContentGuard contended that the parties' dispute with respect to "meta-right" concerned only "how to capture the specification teaching that a meta-right is something different than a usage right." Ex. J (Feb. 6, 2015 Hearing Tr. ) at 123:22-124:2. ContentGuard conceded that "meta-rights are enforced by a repository,"

4

*id.* at 123:11-14, which clarified its position and removed an area of prior disagreement. Following ContentGuard's concession, counsel for Apple explained that as to the construction of "meta-rights,"

> I thought there were a couple of differences potentially, but I think maybe those have been resolved. First, we believe that the meta-right is used by the repository, and that is very important. It's not something that is abstract or generalized, but it is used by a repository. But I just heard counsel for the Plaintiff say that it is enforced by the repository. The parties are in agreement on that. I think that resolves one of the differences between the two constructions that have been proposed.

*Id.* at 125:3-13. The context of the statement is clear—Apple's position was that under the proper construction, the meta-rights in the claims are not free-floating, but must be used by the repository. The phrase "abstract or generalized" was a criticism of ContentGuard's proposed, overly-vague construction of "meta-right" ("a right that when exercised creates or disposes of usage rights or other meta-rights but is not itself a usage right" (Dkt. 304 at 22)), which did not associate meta-rights with repositories. The statement has nothing to do with whether the claims of the Nguyen patents are drawn to the abstract ideas of licensing and sublicensing usage rights.

Finally, ContentGuard's claim that the Nguyen patents "teach inventive concepts" rests solely on the argument that there could be something inventive about combining meta-rights, repositories, and state variables. (Opp. 19-20.) But that combination of admittedly-old elements is nothing more than the abstract idea of sublicensing with bookkeeping—there is no technological solution identified in the claims. That "a series of conventional elements *may* together form an unconventional, patentable combination" (Opp. 20, emphasis added) provides no basis for finding the mere presence of these conventional elements converts a patent-ineligible process into an inventive combination. As Apple explained in detail in its Notice, they plainly do not. ContentGuard's Opposition and Response offer no argument to the contrary.

5

Dated:  March 23, 2015              /s/ Melissa R. Smith

                                        Melissa R. Smith
                                        State Bar No. 24001351
                                        GILLAM & SMITH, L.L.P.
                                        303 S. Washington Ave.
                                        Marshall, Texas 75670
                                        Telephone:  (903) 934-8450
                                        Facsimile:  (903) 934-9257
                                        melissa@gillamsmithlaw.com

                                        Bryan K. Anderson
                                        bkanderson@sidley.com
                                        Nathan Greenblatt
                                        ngreenblatt@sidley.com
                                        SIDLEY AUSTIN LLP
                                        1001 Page Mill Road, Bldg. 1
                                        Palo Alto, CA 94304
                                        650/565-7007
                                        Fax:  650-565-7100

                                        David T. Pritikin
                                        dpritikin@sidley.com
                                        Richard A. Cederoth
                                        rcederoth@sidley.com
                                        SIDLEY AUSTIN LLP
                                        One South Dearborn St.
                                        Chicago, IL 60603
                                        312/853-7359
                                        Fax:  312/853-7036

                                        Kelly A. Krellner
                                        kkrellner@sidley.com
                                        SIDLEY AUSTIN LLP
                                        555 California Street, Ste.  2000
                                        San Francisco, CA 94101
                                        415/772-7418
                                        Fax:  415/772-7400

                                        ***Attorneys for Defendant Apple Inc.***

## CERTIFICATE OF SERVICE

      This is to certify that the foregoing document was filed using the Court's electronic filing and case management system (CM/ECF) which will provide electronic service on all counsel of record.

                                                          /s/ *Melissa R. Smith*