**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| ContentGuard Holdings, Inc.,<br><br>                          Plaintiff,<br><br>       -against-<br><br>Google, Inc.<br><br><br>                     Defendant. | Civil Action No. 2:14-cv-00061-JRG<br><br>JURY TRIAL DEMANDED |
| ContentGuard Holdings, Inc.,<br><br>                          Plaintiff,<br><br>       -against-<br><br>Amazon.com, Inc., *et al*.<br><br>                   Defendants. | Civil Action No. 2:13-cv-01112-JRG<br><br>JURY TRIAL DEMANDED |

**PLAINTIFF CONTENTGUARD HOLDINGS, INC.'S SURREPLY IN FURTHER
RESPONSE TO DEFENDANTS' RENEWED
<u>MOTION FOR JUDGMENT ON THE PLEADINGS</u>**

Using the same "deconstruct-and-trivialize" strategy prominently featured in their Motion, Defendants continue to argue in the Reply that ContentGuard's inventions—even if pioneering—are ineligible for patent protection under 35 U.S.C. § 101 ("Section 101").[1]  With numerous experts at their disposal—Defendants served five expert disclosures on validity issues in early May—Defendants support their arguments with nothing more than lawyers' assertions. That is not surprising.  No responsible scientist could endorse the notion that ContentGuard's groundbreaking inventions amount to nothing more than the digital-age version of a trip to a library or a video store, and, indeed, none of Defendants' experts take that absurd position in their expert reports.  Defendants' Section 101 challenges should thus be rejected.  Each of the patents-in-suit claims subject matter that is firmly eligible for patent protection and the "hypotheticals" Defendants conjure up in their papers (*cf. Amazon* Action Dkt. 605 at 4) are inapt and at odds with the patents' actual teachings.

### A.    The Trusted Repository Patents Are Eligible for Patent Protection.

### 1.   The Trusted Repository Patents Do Not Disclose "Abstract Ideas."

Defendants advance five disjointed arguments to support their assertion that the Trusted Repository Patents teach "abstract ideas."  None withstands scrutiny.[2]

*First*, Defendants argue that all that Dr. Stefik's inventions teach is the substitution of a "reliable computer for a potentially unreliable person in a library loan" transaction.  *Amazon* Action 605 at 1.  But as much as they try, Defendants fail to prove that any activities performed by humans and inanimate objects meaningfully resemble the teachings of the Trusted Repository

---

[1] For the sake of simplicity we cite herein only to the Reply filed in the *Amazon* action, *Amazon* Action Dkt. 605.

[2] In passing, Defendants suggest that ContentGuard's patent eligibility arguments are somehow deficient because they allegedly do not "address[] any of the specific claims at issue, instead referring to [the patents as a group]."  *Amazon* Action Dkt. 605 at 3.  This is a red herring.  While it is true that ContentGuard focused its arguments on certain key limitations that appear in all of the Trusted Repository Patents (and Meta-Rights Patents), those key limitations, standing alone, establish that ContentGuard's inventions are eligible for patent protection.  There was thus no need to provide an "element-by-element analysis" rebutting Defendants' *21 pages* of single-spaced charts.

Patents.  They do not.  As ContentGuard explained in the Response, (1) "locking a library's doors at night" and "maintaining [library] materials in [a] physically secure bag" (*cf. Amazon* Action Dkt. 605 at 4, 5 n.2) does not amount to "physical integrity" within the meaning of the patents—a brick wall and a briefcase that act as a physical barrier are very different things from hardware and software that prevent access to untrusted systems; (2) presenting a valid "library card" before borrowing a book (*cf. Amazon* Action Dkt. 605 at 5) does not amount to "communications integrity" within the meaning of the patents—a picture ID is a very different thing from an encryption/decryption algorithm; and (3) "assuring that patrons and library employees possess appropriate 'certificates'," whatever that means (*cf. Amazon* Action Dkt. 605 at 5), does not and amount to "behavioral integrity" within the meaning of the patents—an unenforceable, honor code is a very different thing from software protocols "requiring [other] software to include a digital certificate in order to be installed in the repository" (*see Markman* Order at 21).  Defendants' arguments to the contrary are untenable, and merely repeating them in the face of evidence that irrefutably disproves them does not make them true.

Differently stated, Defendants' ability to draw cartoonish representations of Dr. Stefik's inventions using "hypotheticals" and purported "analogues" (*Amazon* Action Dkt. 605 at 4, 9) does not make Defendants' arguments remotely credible.  As ContentGuard explained in the Response, no patent is safe from the type of "analysis" espoused by Defendants because every patent can be mocked and caricatured to the point where it is "analogous" to a practice that can be described as "conventional" and "pre-existing."  Indeed, "any claim can be stripped down, simplified, generalized, or paraphrased to remove all of its concrete limitations, until at its core, something that could be characterized as an abstract idea is revealed.  [But a] court cannot go hunting for abstractions by ignoring the concrete, palpable, tangible limitations of the invention the patentee actually claims." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 1335, 1344 (Fed. Cir. 2013), *vacated sub nom.*, *WildTangent, Inc. v. Ultramercial, LLC*, 134 S. Ct. 2870 (2014)). *See also Google Inc. v. SimpleAir, Inc.*, Case CBM2014-00170, Slip op. at 15 (U.S. Patent Trial &

Appeal Board, Jan. 22, 2015), *Amazon* Action Dkt. 597-14 (concocting a far-fetched "analogy to conventional [practices] is no substitute for an analysis of how, or why, the claim language supports [the] assertion that the claims merely recite [an allegedly] abstract [conventional practice].").

Indeed, as ContentGuard explained in the Response, Defendants get the matter exactly backwards.  Dr. Stefik and his colleagues saw past an abstract, unenforceable idea of "trust" that, while perhaps adequate in a bricks-and-mortar library, was unsuitable to protect the distribution of digital content over the Internet.  Further, Dr. Stefik and his colleagues replaced that abstract notion of "trust" with a workable, technology-based solution that solved what leading commentators believed to be an "unresolved and immense conundrum."  *Amazon* Action Dkt. 597-3.  Thus, rather than "merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet,"[3] the Trusted Repository Patents disclose precisely the type of technology-based solutions the Patent Act was designed to protect.  Stated differently, Dr. Stefik's Trusted Repository Patents do not improve upon the state of the prior art in the way in which a computer improves over, say, an abacus.  Rather, Dr. Stefik's "pioneering" Trusted Repository Patents effectuated one of the seminal "development[s] that catalyzed the DRM paradigm," creating the framework for "trusted systems"—a novel, key concept that underlies all modern DRM systems.  *See Amazon* Action Dkt. 597-6 at 7, Dkt. 597-7 at 2, 5.  Using Dr. Stefik's inventions, an online digital content distributor (like iTunes or Google Play) can now *effectively prevent*[4] the theft, unauthorized use, copying, or further distribution of content, *e.g.*, (i) a customer who has paid for the right to watch the content only once can be prevented from watching it again; (ii) a customer who has paid for

---

[3] *DDR Holdings, LLC v. Hotels.com, L.P.*, 2014 U.S. App. LEXIS 22902, *26 (Fed. Cir. Dec. 5, 2014).

[4] Defendants note that the Court's claim construction does not require a "*guarantee* that a repository can safely receive content."  *Amazon* Action Dkt. 605 at 5 (emphasis in the original).  That may be correct, but it is also a red herring.  No authority supports the proposition that technology has to be 100% reliable to be eligible for patent protection.

3

the right to watch the content on a particular device (*e.g.*, a tablet) can be prevented from watching it on a different device (*e.g.*, a high-definition TV); (iii) a customer who has paid for the right to watch the content for 24 hours can be prevented from watching it upon the expiry of the specified rental period, and so on and so forth.   All of these "usage rights" restrictions are *enabled* and *effectively enforced* using the technology-based teachings of Stefik's Trusted Repository Patents.   In contrast, however, none can be accomplished—indeed, <u>*none even existed*</u>—in the library setting.  Defendants do not dispute this.

*Second*, Defendants assert that Dr. Stefik's patents require nothing more than "the most conventional and routine of computer actions and functions."  *Amazon* Action Dkt. 605 at 7.  But there is nothing in the record to support the notion that a "routine computer," without any special programing or hardware, displays the three integrities required by the claims.   ContentGuard made this point in the second round of briefing on Section 101 issues,[5] but, given yet another chance to prove their case, Defendants still have failed to proffer any supporting evidence.[6]

*Third*, Defendants again assert that "the Stefik patent specification makes very clear that the integrities/'security levels' for the referenced 'trusted' systems/'repositories' are not fixed or specifically defined."  *Amazon* Action Dkt. 605 at 6.[7]  But, as ContentGuard explained in the Response, this "no minimum security" argument was emphatically rejected by the PTAB during the recently concluded IPRs as "*directly contrary* to the meaning of 'repository' as defined in the glossary."  *Amazon* Action Dkt. 597-11 at 12 (emphasis added).  Defendants have provided no rebuttal to ContentGuard's showing.

---

[5] *See Amazon* Action Dkt. 428 at 12 ("there is *zero* proof in the record that a 'generic computer' maintains the three integrities taught by the Trusted Repository Patents").

[6] Defendants attempt to shift the burden to ContentGuard to prove that the integrities required by the Trusted Repository Patents represent more than "routine business activity."  *Amazon* Action Dkt. 605 at 7 n.3.  But it is Defendants' burden to prove their entitlement to the relief they seek.  In any event, ContentGuard has provided ample evidence establishing that the Trusted Repository Patents do not capture "routine business activity."

[7] *Compare Amazon* Action Dkt. 539 at 10 ("the Stefik patent specification makes clear that the integrities/'security levels' for a 'trusted' system (which the specification also calls a 'repository') are not even fixed or specifically defined.").

4

*Fourth*, in a footnote, Defendants attempt to resurrect their "preemption arguments." *Amazon* Dkt. 605 at 11 n.4.  But, as Defendants admit, they "did not present the[se] preemption arguments in the Motion" (*id.*), and "new arguments cannot be raised in a reply brief."  *Brown v. DG Marine Transportation LLC*, 2013 U.S. Dist. LEXIS 49479, at *4 n.1 (S.D. Tex. Apr. 5, 2013).  In any event, Defendants' conclusory statement that the Trusted Repository Patents are "extremely broad" (*Amazon* Dkt. 605 at 11 n.4) ignores ContentGuard's showing that the patents are in fact meaningfully limited, *i.e.*, they cover only devices that maintain physical, communications, and behavioral integrity, rather than *all* devices that are capable to receive content via the Internet.  ContentGuard's inventions are thus "inherently limited to the sphere of application rather than abstraction."  *Rockstar Consortium US LP, Inc. v. Samsung Elecs. Co., Ltd.*, 2014 U.S. Dist. LEXIS 67097, at *15 (E.D. Tex. May 15, 2014) (Gilstrap, J.).

*Fifth*, Defendants' reliance on *Jericho Systems Corporation v. Axiomatics, Inc.*, No. 3:14-cv-2281, Slip. Op. (N.D. Tex. May 7, 2015) (*Amazon* Action Dkt. 605-01), is misplaced.  The patent at issue in *Jericho* involved a problem, "controlling access," that "existed before modern computing and the internet existed" and proposed a solution using only "*standard computing and communication equipment and procedures*."  *Id.* at 11 (emphasis added).  Put differently, *Jericho* invalidated a patent that covers *any* computer system that controls access, the very type of system Dr. Stefik's Trusted Repository Patents criticize as unreliable and unfeasible.  *Amazon* Action Dkt. 597-6 at 7 (noting that Dr. Stefik's vision was that "trusted systems . . . would be the only feasible way to implement digital rights management because general-purpose computers ha[d] too many security holes.").

## 2.  The Trusted Repository Patents Teach Inventive Concepts.

Defendants' assertions that Dr. Stefik's patents are devoid of any inventive concept are similarly misguided.  As an initial matter, all that Defendants are saying is that Dr. Stefik, like all inventors, drew upon a pre-existing body of knowledge.  That proves nothing.  "[A] claim

element is not conventional just because it appears in prior art." *Cal. Institute of Tech. v. Hughes Commcn's Inc.*, 2014 U.S. Dist. LEXIS 156763, *10 (C.D. Cal. Nov. 3, 2014).[8]

Equally unpersuasive are Defendants' attempts to discount the ample evidence of novelty and non-obviousness ContentGuard has proffered.  Defendants' Motion expressly requires the Court to search for an "inventive concept," *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014), and the Federal Circuit has made clear that the type of evidence ContentGuard has proffered should be treated as "*strong, if not the best, evidence of innovation*." *Apple Inc. v. ITC*, 725 F.3d 1356, 1375 (Fed. Cir. 2013) (Reyna, J., concurring in part and dissenting in part) (emphasis added).  While it is true that an otherwise abstract idea cannot be saved by arguments that it is "novel," the Court should not overlook evidence that establishes that Dr. Stefik's inventions are precisely the type of innovation the Patent Act was designed to protect.  By definition, abstract ideas are not "pioneering"; they do not solve "immense, unsolved conundrums"; they do not comprise "core technologies"; they do not serve as a catalyst to create an industry worth billions of dollars; and they do not get licensed for hundreds of millions of dollars.[9]  Defendants' attempts to sweep this evidence under the rug are untenable.

---

[8] To be clear, ContentGuard does not mean to suggest that anything in Dr. Stefik's patents is in any way "conventional."

[9] As ContentGuard demonstrated in the Response, Dr. Stefik's patents are widely acknowledged as "pioneering."  *Amazon* Action Dkt. 597-7.  They were conceived in the face of enormous skepticism and solved what leading commentators considered an "immense, unsolved conundrum." *Amazon* Action Dkt. 597-3, 597-5.  "Trusted" systems are now firmly considered a "core technolog[y] that underlie[s] . . . technological protection systems" (*Amazon* Action Dkt. 597-7), and Dr. Stefik is "acknowledged [as the] father of DRM" (*Amazon* Action Dkt. 597-1). Dr. Stefik's Trusted Repository Patents have been praised as disclosing fundamental technology "*necessary* to make the digital delivery of music, movies and other files secure." *Amazon* Action Dkt. 597-8 (emphasis added).  Indeed, ContentGuard has successfully licensed the Trusted Repository Patents, for substantial consideration, to scores of companies.  *Amazon* Action Dkt. 244 ¶ 39.  Finally, Dr. Stefik's vision concerning the role "trusted" systems must play in the distribution of digital content over the Internet is one of the seminal "development[s] that catalyzed the DRM paradigm" (*Amazon* Action Dkt. 597-6) and created an entirely new industry that has benefitted Defendants to the tune of billions of dollars (*Amazon* Action Dkt. 597-4).

6

Defendants also cannot discount the PTAB's recent findings of validity with respect to the '859, '072, '576, and '160 patents.  While it is true that that patentability under Section 101 was not an issue before the PTAB, that is beside the point.  It stretches credulity to argue that the PTAB, an institution that has been immensely uncharitable to patent holders (*see Amazon* Action Dkt. 597-10), would have affirmed the *validity* of these patents if indeed they disclose nothing more than a computer-facilitated trip to the library.

Finally, Defendants' argument that they have demonstrated through *ipse dixit* that, as an "ordered combination," the patents teach nothing more than "a traditional library transaction" (*Amazon* Dkt. 605 at 12) is circular and unsupported.  Again, it is Defendants' burden to proffer evidence that supports their Motion, and merely asserting that each limitation may be "conventional" does not mean that the "ordered combination" flunks Section 101.  Indeed, "[o]n a fundamental level, the creation of new compositions and products based on combining elements from different sources has long been a basis for patentable inventions."  *Cal. Institute of Tech.*, 2014 U.S. Dist. LEXIS 156763, *10; *DDR Holdings, LLC*, 2014 U.S. App. LEXIS 22902, *28 n.5.  "[C]ourts should remember that a series of conventional elements may together form an unconventional, patentable combination."  *Cal. Institute of Tech.*, 2014 U.S. Dist. LEXIS 156763, *11.

### B.    The Meta-rights Patents Are Eligible for Patent Protection.

#### 1.    The Meta-rights Patents Do Not Disclose "Abstract Ideas."

Defendants present no new arguments to support their assertions that the Meta-Rights are invalid under Section 101.  They merely rehash the points they made in the Motion, while ignoring and mischaracterizing ContentGuard's Response.

*First*, for all of Defendants' efforts to walk back counsel for Apple's admission during the *Markman* hearing that "a meta-right" is "*not something that is abstract or generalized*, but [rather something that] is used by a repository" (*Amazon* Action Dkt. 597-15 at 125:6-10 (emphasis added)), that admission is dispositive.  Defendants argue that counsel was "refer[ring]

to the *proper construction of meta-right*' . . . not referencing the 'abstract idea' concept of Section 101." *Amazon* Action Dkt. 605 at 14 (emphasis added).  That may be true, but it is also irrelevant.  Defendants' central Section 101 argument against the Meta-Right Patents is that they teach nothing more than the abstract concept of "meta-rights."  Thus, counsel's admission, that "a meta-right" is "*not something that is abstract or generalized*, but [rather something that] is used by a repository," should be the end of the inquiry here.

Second, Defendants' conclusory assertion that "movie studios, movie stores, store clerks and customers in video store rental transactions" maintain the three integrities characterizing a trusted repository (*Amazon* Action Dkt. 605 at 14 n.7) is incorrect for the reasons already discussed.

Third, Defendants tacitly concede that they have no preemption arguments with respect to the Meta-rights Patents.  This underscores that the Meta-rights Patents are "inherently limited to the sphere of application rather than abstraction."  *Rockstar Consortium US LP*, 2014 U.S. Dist. LEXIS 67097, at *15.

## 2.   The Meta-rights Patents Teach Inventive Concepts.

Defendants' arguments that the Meta-rights Patents are devoid of any inventive concept merely repackage Defendants' incorrect assertion that these patents "claim only generic functionality."  *Amazon* Action Dkt. 605 at 15.  Again, the fact that a generic computer can be *configured through special software and/or hardware* to act as a trusted repository and enforce "meta-rights" does not mean that the Meta-Rights Patents claim *only* generic computer functionality.

Furthermore, Defendants' assertions that the combination of the various claim limitations is not "inventive" (*id.*) are similarly unpersuasive.  There is no evidence in the record that the combination of "meta-rights," trusted "repositor[ies]," and "state variable[s]" are a feat of "routine," "prosaic" engineering, such that they are devoid of an "inventive" concept, and thus

8

Defendants have not proven that the claims are ineligible for patent protection "as an ordered combination." *Cal. Institute of Tech.*, 2014 U.S. Dist. LEXIS 156763, *10.

Finally, Defendants' attempts to shift the burden to ContentGuard to disprove that the combination is *not* inventive ignore that Defendants, not ContentGuard, bear the burden of proof.

*       *       *

For the foregoing reasons, Defendants' Motion should be denied.


Dated:  May 29, 2015                                    Respectfully submitted,


                                              */s/ Sam Baxter*
                                              Samuel F. Baxter
                                              Texas State Bar No. 01938000
                                              sbaxter@mckoolsmith.com
                                              MCKOOL SMITH P.C.
                                              104 East Houston, Suite 300
                                              Marshall, Texas 75670
                                              Telephone:  (903) 923-9000
                                              Facsimile: (903) 923-9099

Robert A. Cote                                Holly E. Engelmann
rcote@mckoolsmith.com                         hengelmann@mckoolsmith.com
John C. Briody                                Seth R. Hasenour
jbriody@mckoolsmith.com                       shasenour@mckoolsmith.com
Radu A. Lelutiu                               Eric S. Hansen
rlelutiu@mckoolsmith.com                      ehansen@mckoolsmith.com
David R. Dehoney                              MCKOOL SMITH P.C.
ddehoney@mckoolsmith.com                      300 Crescent Court, Suite 1500
Dana E. Vallera                               Dallas, Texas 75201
dvallera@mckoolsmith.com                      Telephone:  (214) 978-4000
Angela M. Vorpahl                             Facsimile:   (214) 978-4004
avorpahl@mckoolsmith.com
MCKOOL SMITH P.C.
One Bryant Park, 47th Floor
New York, New York 10036
Telephone: (212) 402-9400
Facsimile: (212) 402-9444

                                              **ATTORNEYS FOR CONTENTGUARD**
                                              **HOLDINGS, INC.**

9

## <u>CERTIFICATE OF SERVICE</u>

     The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this document was served on all counsel who have consented to electronic services on this the 29th Day of May 2015.  Local Rule CV-5(a)(3)(A).

*/s/ Radu A. Lelutiu*             

10