# EXHIBIT A

Trials@uspto.gov                                    Paper No. 12
571.272.7822                                    Filed:  July 1, 2015

UNITED STATES PATENT AND TRADEMARK OFFICE
_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD
_____

APPLE INC.
Petitioner,

v.

CONTENTGUARD HOLDINGS, INC.,
Patent Owner.
_____

Case IPR2015-00354
Patent 7,774,280 B2


_____

Before MICHAEL R. ZECHER, BENJAMIN D. M. WOOD, and
GEORGIANNA W. BRADEN, *Administrative Patent Judges*.

BRADEN, *Administrative Patent Judge*.


DECISION
Denying Institution of *Inter Partes* Review
*35 U.S.C. § 312(a)(4) and 37 C.F.R. § 42.108*

IPR2015-00354
Patent 7,774,280 B2

## I.   INTRODUCTION

### A.  Background

Apple Inc. ("Petitioner") filed a Petition (Paper 1, "Pet.") requesting an *inter partes* review of claims 1–5, 8, 11–16, 19, 22, 24–28, 31, and 34 of U.S. Patent No. 7,774,280 B2 (Ex. 1001, "the '280 patent").  ContentGuard Holdings, Inc. ("Patent Owner") timely filed a Preliminary Response (Paper 10, "Prelim. Resp.").  We have jurisdiction under 35 U.S.C. § 314(a), which provides that an *inter partes* review may not be instituted "unless . . . there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition."

Upon consideration of the Petition and Patent Owner's Preliminary Response, we conclude Petitioner has not established a reasonable likelihood it would prevail with respect to at least one of the challenged claims. Accordingly, we deny the Petition.

### B.  Related Matters

The '280 patent has been asserted in the following three district court cases:  (1) *ContentGuard Holdings, Inc. v. Amazon.com, Inc.*, No. 2:13-cv-01112 (E.D. Tex.); (2) *Google, Inc. v. ContentGuard Holdings, Inc.*, No. 3:14-cv-00498 (N.D. Cal.); and (3) *ContentGuard Holdings, Inc. v. Google, Inc.*, No. 2:14-cv-00061 (E.D. Tex)  Pet. 1; Paper 9, 2.  In addition to this Petition, Petitioner filed at least seven other Petitions challenging the patentability of a certain subset of claims in the following patents owned by Patent Owner:  (1) the '280 patent (Cases IPR2015-00351, IPR2015-00352, and IPR2015-00353); and (2) U.S. Patent No. 8,001,053 B2 (Cases IPR2015-00355, IPR2015-00356, IPR2015-00357, and IPR2015-00358). Pet. 1; Paper 9, 1.

IPR2015-00354
Patent 7,774,280 B2

### C. The '280 Patent

The '280 patent, titled "System and Method for Managing Transfer of Rights using Shared State Variables," issued August 10, 2010, from U.S. Patent Application No. 10/956,121, filed on October 4, 2004.  Ex. 1001, at [54], [45], [21], [22].  The '280 patent is a continuation-in-part of U.S. Patent Application No. 10/162,701, filed on June 6, 2002.  *Id.* at [63].  The '280 patent also claims priority to the following provisional applications: (1) U.S. Provisional Application No. 60/331,624, filed on November 20, 2001; (2) U.S. Provisional Application No. 60/331,623, filed on November 20, 2001; (3) U.S. Provisional Application No. 60/331,621, filed on November 20, 2001; (4) U.S. Provisional Application No. 60/296,113, filed June 7, 2001; (5) U.S. Provisional Application No. 60/296,117, filed on June 7, 2001; and (6) U.S. Provisional Application No. 60/296,118, filed on June 7, 2001.  *Id.* at [60].

The '280 patent generally relates to a method and system for managing the transfer of rights associated with digital works using shared state variables.  Ex. 1001, 1:18–20.  According to the '280 patent, "[o]ne of the most important issues impeding the widespread distribution of digital works . . . is the current lack of ability to enforce the [rights] of content owners during the distribution and use of [their] digital works."  *Id.* at 1:24–29.  In particular, content owners "do not have control over downstream parties unless they are privy to [transactions] with the downstream parties . . . ."  *Id.* at 2:32–34.  Moreover, "the concept of [content owners] simply granting rights to others that are a subset of [the] possessed rights is not adequate for [multi-tier] distribution models."  *Id.* at 2:45–48.

IPR2015-00354
Patent 7,774,280 B2

The '280 patent purportedly addresses these problems by providing a method and system for transferring rights associated with an item— presumably a digital work—from a supplier to a consumer. Ex. 1001, 2:52– 55. The consumer obtains a set of rights associated with the digital work, which includes meta-rights specifying rights that may be derived therefrom. *Id*. at 2:55–57. The rights that may be derived from the meta-rights include at least one state variable based on the set of rights, which, in turn, may be used to determine a state of the derived right. *Id*. at 2:62–64. If the consumer is entitled to the rights derived from the meta-rights, the disclosed invention then derives at least one right from the meta-rights. *Id*. at 2:58–60.

*D. Illustrative Claim*

Claims 1, 12, and 24 are independent claims and are challenged in this proceeding. Claim 1 is directed to a method for transferring rights associated with an item from a rights supplier to a rights consumer, claim 12 is directed to a system for performing the same, and claim 24 is directed to a device for performing the same. Claims 2–5, 8, and 11 directly depend from independent claim 1; claims 13–16, 19, and 22 directly depend from independent claim 12, and claims 25–28, 31, and 34 directly depend from independent claim 24. Independent claim 1 is illustrative of the '280 patent and is reproduced below:

> 1.      A computer-implemented method for transferring rights adapted to be associated with items from a rights supplier to a rights consumer, the method comprising:
>
> obtaining a set of rights associated with an item, the set of rights including a meta-right specifying a right that can be created when the meta-right is exercised, wherein the meta-right is provided in digital form and is enforceable by a repository;

IPR2015-00354
Patent 7,774,280 B2

> determining, by a repository, whether the rights
> consumer is entitled to the right specified by the meta-right; and
> exercising the meta-right to create the right specified by
> the meta-right if the rights consumer is entitled to the right
> specified by the meta-right, wherein the created right includes
> at least one state variable based on the set of rights and used for
> determining a state of the created right.

Ex. 1001, 15:7–22.

### E.  The Evidence of Record

Petitioner relies upon the following references, as well as the

Declaration of Atul Prakash, Ph.D. (Ex. 1003):

| Reference | Patent/Printed Publication | Date | Exhibit |
|---|---|---|---|
| Ginter | US Patent No. 5,892,900 | Apr. 6, 1999 | Ex. 1007 |
| Wiggins | US Patent No. 5,717,604 | Feb. 10, 1998 | Ex. 1011 |

### F.  The Asserted Grounds of Unpatentability

Petitioner challenges the patentability of certain claims of the '280

patent based on the following grounds:

| References | Basis | Claims Challenged |
|---|---|---|
| Ginter | § 103(a) | 1–5, 8, 11–16, 19, 22, 24–28, 31, and 34 |
| Ginter and Wiggins | § 103(a) | 1–5, 8, 11–16, 19, 22, 24–28, 31, and 34 |

## II.   DISCUSSION

### A.  Claim Construction

In an *inter partes* review, we construe claims by applying the broadest

reasonable interpretation in light of the specification.  37 C.F.R. § 42.100(b);

*see In re Cuozzo Speed Tech., LLC*, 778 F.3d 1271, 1281–82 (Fed. Cir.

2015) ("Congress implicitly adopted the broadest reasonable interpretation

IPR2015-00354
Patent 7,774,280 B2

standard in enacting the AIA," and "the standard was properly adopted by PTO regulation").  Under the broadest reasonable interpretation standard, and absent any special definitions, claim terms are given their ordinary and customary meaning, as would be understood by one of ordinary skill in the art in the context of the entire disclosure.  *In re Translogic Tech. Inc.*, 504 F.3d 1249, 1257 (Fed. Cir. 2007).  Any special definitions for claim terms or phrases must be set forth with reasonable clarity, deliberateness, and precision.  *In re Paulsen*, 30 F.3d 1475, 1480 (Fed. Cir. 1994).

Petitioner proposes constructions for numerous terms or phrases, some of which are not recited explicitly in the challenged claims.  Pet. 5–23. In response, Patent Owner proposes alternative constructions for most of the terms or phrases construed by Petitioner.  Prelim. Resp. 18–33.  For purposes of this decision, we need only assess the constructions offered by the parties for the claim term "repository" and the means-plus-function limitations in certain claims, because our determination to deny the Petition is based, at least in part, on the construction of these claim terms.

### 1.  *"Repository"*

Petitioner contends that the broadest reasonable interpretation of the claim term "repository" is "a trusted system, which maintains physical, communications and behavioral integrity, and supports usage rights using information that enables it to enforce both 'meta-rights' and 'usage rights' associated with a particular digital work."  Pet. 18 (citing Ex. 1003 ¶¶ 284–89).  Petitioner argues that the construction it offers for the claim term "repository" in this proceeding is consistent with the Board's construction of the same claim term in previous *inter parte*s review proceedings, one of which involves U.S. Patent No. 5,634,012 ("Stefik"), which is incorporated

IPR2015-00354
Patent 7,774,280 B2

by reference into the '280 patent.  *See id.*  In those proceedings, Petitioner asserts that the Board determined that the claim term "repository" was defined explicitly as "a trusted system, which maintains physical, communications and behavioral integrity, and supports usage rights."  *Id.* (citing Ex. 1035, 9) (emphasis omitted).  Petitioner also asserts that, in those proceedings, the Board observed that to possess "physical integrity," the repository must, among other things, "prevent[] access to information by a non-trusted system."  *Id.* (citing Ex. 1035, 11).

Although Petitioner does not address separately "communications integrity" and "behavioral integrity" in its Petition, Petitioner's declarant, Dr. Atul Prakash, nonetheless addresses these aspects of the claim term "repository" in his supporting testimony.  Dr. Prakash testifies that, in the previous *inter partes* review proceedings before the Board, one of which involved Stefik, the Board defined "communications integrity" as "only communicates with other devices that are able to present proof that they are trusted systems, e.g., by using security measures such as encryption, exchange of digital certificates, and nonces."  Ex. 1003 ¶ 284 (citing Ex. 1041, 12).  Dr. Prakash further testifies that the Board defined "behavioral integrity" as requiring "software to include a digital certificate in order to be installed in the repository."  *Id.* (citing Ex. 1041, 13).

With a few exceptions, Patent Owner generally agrees with Petitioner's proposed construction for the claim term "repository," including its and Dr. Prakash's definitions of "physical integrity," "communications integrity," and "behavioral integrity."  Prelim. Resp. 24–27.  Patent Owner argues that the claim term "repository" should be construed as "a trusted system *in that it* maintains physical, communications, and behavioral

IPR2015-00354
Patent 7,774,280 B2

integrity *in the support of usage rights*." *Id*. at 24 (emphasis added).  Patent Owner argues that its proposed construction is consistent with the Board's construction of the claim term "repository" in the previous *inter partes* review proceedings concerning the '280 patent, and the construction adopted by a district court for the '280 patent.  *Id*. at 24–25 (citing Pet. 18; Ex. 2001, 15, 99).  Patent Owner urges us to adopt its proposed construction for reasons specified by the district court.  *Id*. at 25.  Patent Owner further argues that we should not adopt the language in Petitioner's proposed construction that characterizes a repository as enforcing both meta-rights and usage rights because it would render the claim language describing a "meta-right . . . enforceable by a repository" redundant.  *Id*.

As an initial matter, we agree with the parties that the specification of the '280 patent does not provide an explicit definition for the claim term "repository."  We also agree with the parties that the '280 patent incorporates by reference Stefik, which provides an explicit definition for the claim term "repository."  Ex. 1001, 2:9–12; Ex. 1012, 53:23–27.  Stefik provides a glossary that explicitly defines the claim term "repository" as "[c]onceptually a set of functional specifications defining core functionality in the support of usage rights.  A repository is a trusted system in that it maintains physical, communications and behavioral integrity."  Ex. 1012, 53:23–27.

With this glossary definition in mind, we decline to adopt the language in Petitioner's proposed construction pertaining to "using information that enables it to enforce both 'meta-rights' and 'usage rights' associated with a particular digital work."  It is well settled that our reviewing court disfavors any claim interpretation that renders a claim term

IPR2015-00354
Patent 7,774,280 B2

or phrase superfluous.  *See Stumbo v. Eastman Outdoors, Inc.*, 508 F.3d 1358, 1362 (Fed. Cir. 2007).  We agree with Patent Owner that, if we were to adopt this language proposed by Petitioner, it would render the claim phrase a "meta-right . . . enforceable by a repository," explicitly recited in independent claims 1, 12, and 24, superfluous.  *See* Prelim. Resp. 25.

After reviewing the remaining language in the constructions offered by both parties, we discern little, if any, difference between a "repository" that is "a trusted system *which* maintains physical, communications, and behavioral integrity, *and supports usage rights*," and one that is "a trusted system *in that it* maintains physical, communications, and behavioral integrity *in the support of usage rights*."  Pet. 18; Prelim. Resp. 24 (emphasis added).  We view the Board's construction of the claim term "repository" in the previous *inter partes* reviews, which were brought against patents that share a similar disclosure with Stefik , as informative. We give more weight to the panel's construction of the claim term "repository" in those proceedings than the district court's construction of the same claim term primarily because this proceeding and the previous proceeding before the Board both apply the broadest reasonable interpretation standard to the challenged claims of an unexpired patent. 37 C.F.R. § 42.100(b).

For purposes of this proceeding, we construe the claim term "repository" as "a trusted system which maintains physical, communications, and behavioral integrity, and supports usage rights."  We further define "physical integrity" as "preventing access to information by a non-trusted system"; "communications integrity" as "only communicates with other devices that are able to present proof that they are trusted

IPR2015-00354
Patent 7,774,280 B2

systems, e.g., by using security measures such an encryption, exchange of digital certificates, and nonces"; and "behavioral integrity" as "requiring software to include a digital certificate in order to be installed in the repository."

### 2. *"Means for obtaining," "means for determining," and "means for exercising"*

A petitioner must "identify the specific portions of the specification that describe the structure, material, or acts corresponding to each claimed function" of any means- or step-plus-function limitation.  37 C.F.R. § 42.104(b)(3); *see also* 35 U.S.C. § 112 ¶ 6 ("An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.").[1]

Independent claims 12 and 24[2] recite several limitations that are presumably means-plus-function limitations:  "means for obtaining . . ."; "means for determining . . ."; and "means for exercising . . . ."  *See Williamson v. Citrix Online, LLC*, Case No. 2013-1130, slip op. 16 (Fed. Cir. June 16, 2015) (en banc in relevant part) (""use of the word 'means' creates a presumption that § 112, ¶ 6 applies.").

---

[1] Section 4(c) of the Leahy-Smith America Invents Act, Pub. L. No. 112−29, 125 Stat. 284 (2011) ("AIA") re-designated 35 U.S.C. § 112 ¶ 6 as 35 U.S.C. § 112(f).  Because the '280 patent has a filing date prior to September 16, 2012, the effective date of § 4(c) of the AIA, we refer to the pre-AIA version of 35 U.S.C. § 112.

[2] Claims 13–16, 19, 22 depend from claim 12, whereas claims 25–28, 31, and 34 depend from claim 24.  Ex. 1001, 16:1–17:2.

IPR2015-00354
Patent 7,774,280 B2

Petitioner does not rebut the presumption that these limitations are governed by § 112 ¶ 6, and does not "identify the specific portions of the specification that describe the structure, material, or acts corresponding to each claimed function." 37 C.F.R. § 42.104(b)(3). To the contrary, Petitioner states that "[t]he '280 patent does not identify any specific structure" that corresponds to each means-plus-function limitation, and "there are no algorithms or other description of software that function as" each means-plus-function limitation. Pet. 21–23. Petitioner states that, if the Board elects to proceed with review of the challenged claims with means-plus-function limitations, it should construe these terms as follows: (i) "means for obtaining a set of rights" as "encompassing any computer-based technique or scheme that functions to obtain one or more rights from a content provider" (*id.* at 21–22); (ii) "means for determining whether the rights consumer is entitled to the derivable right" as "encompassing any computer-based technique or scheme that functions to determine if a rights consumer is entitled to a derivable right" (*id.* at 22); and (iii) "means for exercising a meta-right" as "encompassing any computer-based technique or scheme that functions to determine create a usage right using information in a meta-right" (*id.* at 23).

Patent Owner argues that Petitioner does not identify any structure in the '280 specification for independent claims 12 and 24[3] and compare it to structure disclosed in the prior art. Prelim. Resp. 33–34. According to

---

[3] Patent Owner also argues that Petitioner does not identify any structure in the '280 specification for dependent claims 13–16, 19, 22, 25–28, 31, and 34, which, as we discussed above, depend from independent claims 12 and 24. Prelim. Resp. 33–34.

IPR2015-00354
Patent 7,774,280 B2

Patent Owner, the failure to analyze the claims, based on the proper construction of the corresponding structure of the means-plus-function limitations recited in the challenged claims, is fatal to each ground against those claims. *Id.* We agree.

Petitioner only addresses the recited functions of the means-plus-function limitations, but does not identify any structure in the '280 specification that corresponds to the limitations. Accordingly, we are not persuaded that there is a reasonable likelihood that Petitioner would prevail with respect to independent claims 12 and 24, or dependent claims 13–16, 19, 22, 25–28, 31, and 34, on any of the challenged grounds.

## B. Obviousness Based on Ginter

Petitioner contends that claims 1–5, 8, 11–16, 19, 22, 24–28, 31, and 34 are unpatentable under 35 U.S.C. § 103(a) over Ginter. Pet. 24–42. Petitioner explains how Ginter purportedly teaches the claimed subject matter of each challenged claim, and relies upon the Declaration of Dr. Prakash (Ex. 1003 ¶¶ 198–201, 236–308, 312–317, 362–458)[4] to support its positions. *Id.* We have considered Petitioner's explanations and

---

[4] Our governing statute and rules require a petitioner to set out their claim challenges "with particularity" and with a "detailed explanation of the significance of the evidence. 35 U.S.C. § 312(a)(3); 37 C.F.R. §§ 42.22(a)(2), 42.104(b)(4), (5). Likewise, the Office Patent Trial Practice Guide admonishes a petitioner to "focus on concise, well organized, easy-to-follow arguments supported by readily identifiable evidence of record." 77 Fed. Reg. 48,756–73, 48,763 (Aug. 14, 2012). In general, citations to voluminous sections (e.g., ninety-six paragraphs) of an expert declaration do not conform to these requirements and guidance, and are unhelpful. As such, citations of this type, as well as statements they allegedly support, are not entitled to consideration.

IPR2015-00354
Patent 7,774,280 B2

supporting evidence, but we are not persuaded that Ginter teaches the
claimed "repository" that exhibits "behavioral integrity."

### 1. Principles of Law

A claim is unpatentable under § 103(a) if the differences between the
claimed subject matter and the prior art are such that the subject matter, as a
whole, would have been obvious at the time the invention was made to a
person having ordinary skill in the art to which said subject matter pertains.
*KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406 (2007).  The question of
obviousness is resolved on the basis of underlying factual determinations,
including:  (1) the scope and content of the prior art; (2) any differences
between the claimed subject matter and the prior art; (3) the level of skill in
the art; and (4) where in evidence, so-called secondary considerations.
*Graham v. John Deere Co.*, 383 U.S. 1, 17–18 (1966).  We analyze this
asserted ground based on obviousness with the principles identified above in
mind.

### 2. Ginter

Ginter generally relates to secure transaction management and
electronic rights protection in a virtual distribution environment.  Ex. 1007,
Abstr.; 2:20–23.  Ginter teaches that digital content in a virtual distribution
environment can be packaged in secure "containers."  *Id.* at 12:38–44,
59:12–50, 308:29–35; Fig. 5A.  Figure 5A of Ginter, reproduced below,
illustrates one embodiment of digital content packaged in a secure container
in a virtual distribution environment.  *Id.* at 59:8–12.  Specifically, content is
packaged into container 302 so that information cannot be accessed except
as provided by the "rules and controls" of container 302.  *Id.*



As shown in Figure 5 of Ginter, container 302 can include, among other things, a permissions record 808, budgets 308, and other methods 1000, all of which can delineate rules and controls relating to the use of certain digital content. *Id.* at 59:37–41, FIG. 5A. According to Ginter, the rules and controls may specify what kinds of content usage are permitted, and what kinds are not. *Id.* at 56:23–24, 57:1–5. Ginter discloses that displaying, printing, copying, and distributing are types of allowable content usages. *Id.* at Fig. 4.

### 3. *"Repository" that Exhibits "Behavioral Integrity"*

Independent claim 1 recites, in relevant part, "wherein the meta-right is provided in digital form and is enforceable by *a repository*," and "determining, by *a repository*, whether the rights consumer is entitled to the right specified by the meta-right." Ex. 1001, 15:12–16 (emphases added). Independent claims 12 and 24 recite similar limitations. *Id.* at 15:58–61, 16:40–43. By virtue of their dependence to at least one of independent claims 1, 12, and 24, claims 2–5, 8, 11, 13–16, 19, 22, 25–28, 31, and 34 also require "a repository."

Petitioner contends that Ginter's "trusted architecture," including secure electronic appliances, constitute the claimed "repository." Pet. 35–37. In particular, Petitioner argues that Ginter teaches a "configurable,

14

IPR2015-00354
Patent 7,774,280 B2

consistent, secure and *'trusted' architecture* for distributed, asynchronous control of electronic content and/or appliance usage [that displays certain security elements, including behavior integrity.]" *Id*. at 35 (citing Ex. 1007, 13:20–23).  According to Petitioner, a rights operating system in Ginter is used to securely handle tasks, including rights and auditing operating system functions. *Id*. at 36 (citing Ex. 1007, 13:5–26; Ex. 1003 ¶ 385).  Petitioner, therefore, asserts that Ginter's "electronic appliances" exhibit "behavioral integrity." *Id*. at 36–37 (citing Ex. 1003 ¶ 381–393).

In response, Patent Owner contends that Petitioner fails to demonstrate that Ginter's electronic appliances constitute the claimed "repository" that exhibits "behavioral integrity."  Prelim. Resp. 46.  Patent Owner argues that "behavioral integrity" was construed by both a previous panel of the Board and a district court to require "software to include a digital certificate in order to be *installed* in the repository." *Id*. (emphasis added) (citing Ex. 1041, 13; Ex. 2001, 19–21).  Patent Owner further argues that Petitioner's reliance on the secure handling of rights and auditing functions in Ginter has no relevance whatsoever to "behavioral integrity" as previously construed by the Board and the district court. *Id*. at 47.  According to Patent Owner, the mere mention that an operation system can "securely handle tasks" and has "rights and auditing operating system functions," does not indicate that Ginter teaches designing the system to ensure that software is trusted before being installed on the electronic appliance. *Id*.  Patent Owner contends that Ginter does not recognize the benefits of behavioral integrity and fails to disclose any component or methodology for providing this type of integrity. *Id*.  Patent Owner also argues that the supporting testimony of Dr. Prakash should be entitled to

IPR2015-00354
Patent 7,774,280 B2

little, if any, weight because his definition of "behavioral integrity" does not comport with how the same term was construed by both the previous Board panel and the district court. *Id*. at 47–48 (citing Ex. 1003 ¶ 387).

As we explained in the claim construction section, we construe "repository" as "a trusted system which maintains physical, communications, and behavioral integrity, and supports usage rights." *See supra* Section II.A.1.  Of particular importance in this case is our definition of "behavioral integrity" as "requiring software to include a digital certificate in order to be installed in the repository." *Id*.

We agree with Patent Owner that Ginter's trusted architecture including secure electronic appliances does not constitute a claimed "repository" that exhibits "behavioral integrity" because there is no indication Ginter's rights operating system that securely handling tasks, including rights and auditing operating system functions, involves the use of a digital certificate. *See* Prelim. Resp. 46–47.  Petitioner does not direct us to, nor can we find, a disclosure in Ginter that associates a digital certificate with the rights operating system and software that authenticates the source of the software prior to downloading it on the trusted architecture that is the secure electronic appliances.  Rather, Ginter merely refers to a rights operating system that can "securely handle tasks" and has "rights and auditing operating system functions" without offering an adequate explanation as to how these tasks or functions involve the use of a digital certificate.  *See, e.g.*, Pet. 36–37.

We also agree with Patent Owner that, when attesting to the teachings of Ginter, Dr. Prakash applies a new definition of "behavioral integrity" that is different from the Board's previous definition, the definition adopted by

16

IPR2015-00354
Patent 7,774,280 B2

the district court, and the definition adopted for purposes of this proceeding. *See* Prelim. Resp. 47–48.  As we explained above, although Dr. Prakash acknowledges the Board's previous definition of "behavioral integrity" as requiring "software to include a digital certificate in order to be installed in the repository" (Ex. 1003 ¶ 284 (citing Ex. 1041, 13)), he nonetheless applies a new definition for "behavioral integrity" when testifying that Ginter's rights operating system and software controlling the electronic appliances constitute the claimed "repository" (*id.* ¶ 387).  The relevant portion of Dr. Prakash's testimony states that:  "Ginter  . . . includes '*a trusted system that maintains physical, communications and behavioral integrity, and that supports usage rights,' ('repository')* where: . . . 'behavioral integrity' means 'trusted software within a repository that enables control of content use."  *Id.*

Dr. Prakash does not explain why he deviated from the Board's previous definition of "behavioral integrity" (*see, e.g.*, Ex. 1041, 13), which eventually was adopted by the district court (Ex. 2001, 19–21) and adopted for purposes of this proceeding (*see supra* Section II.A.1.).  Nor does Dr. Prakash explain how the new definition of "behavioral integrity" would be understood by one of ordinary skill in the art in light of the specification of the '280 patent.  Absent some underlying facts or data to support Dr. Prakash's new definition of "behavioral integrity," his testimony in this regard is entitled to little, if any, weight.  *See* 37 C.F.R. § 42.65 ("Expert testimony that does not disclose the underlying facts or data on which the opinion is based is entitled to little or no weight.").

In summary, we are not persuaded that Petitioner has presented sufficient evidence to support a finding that Ginter's trusted architecture

including secure electronic appliances does not constitute a claimed "repository" that exhibits "behavioral integrity" because there is no indication Ginter's rights operating system that securely handling tasks, including rights and auditing operating system functions, involves the use of a digital certificate.  Based on the record before us, Petitioner has not demonstrated a reasonable likelihood that it will prevail on its assertion that claims 1–5, 8, 11–16, 19, 22, 24–28, 31, and 34 would have been obvious over Ginter.

## C. *Remaining Obviousness Ground*

Petitioner contends that claims 1–5, 8, 11–16, 19, 22, 24–28, 31, and 34 are unpatentable under 35 U.S.C. § 103(a) over the combination of Ginter and Wiggins.  Pet. 42–59.  In this asserted ground based on obviousness, Petitioner does not apply the teachings of Wiggins in such a way that remedies the deficiencies in Ginter discussed above.  *See generally id.* Therefore, for essentially the same reasons discussed above, Petitioner has not demonstrated a reasonable likelihood that it will prevail on its assertion that claims 1–5, 8, 11–16, 19, 22, 24–28, 31, and 34 would have been obvious over the combination of Ginter and Wiggins.

## III.   CONCLUSION

The Petitioner fails to show there is a reasonable likelihood that it would prevail with respect to at least one of the claims challenged in the Petition.

## IV.   ORDER

Accordingly, it is

ORDERED that the Petition is denied and no trial is instituted.

18

IPR2015-00354
Patent 7,774,280 B2

FOR PETITIONER:

Jeffrey P. Kushan
Sidley Austin LLP
iprnotices@sidley.com

Michael R. Franzinger
Sidley Austin LLP
iprnotices@sidley.com

FOR PATENT OWNER:

Timothy P. Maloney
Fitch, Even, Tabin, & Flannery LLP
tpmalo@fitcheven.com

Nicholas Peters
Fitch, Even, Tabin, & Flannery LLP
ntpete@fitcheven.com

Robert A. Cote
McKool Smith, P.C.
rcots@mckoolsmith.com