**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| CONTENTGUARD HOLDINGS, INC., § § | | |
| Plaintiff, § § | | |
| v. § § | Case No. 2:13-CV-1112-JRG | |
| AMAZON.COM, INC., et al., § § | | |
| Defendants. § § § | | |
| CONTENTGUARD HOLDINGS, INC., § § | | |
| Plaintiff, § § | | |
| v. § § | Case No. 2:14-CV-61-JRG | |
| GOOGLE, INC., § § | | |
| Defendant. § | | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are a number of motions concerning technical expert testimony: (1) Motion to Exclude Portions of the Reports and Testimony of Jean Renard Ward (Dkt. No. 679); (2) Motion to Exclude Portions of the Reports and Testimony of Dr. Brian Noble (Dkt. No. 683); (3) Motion to Exclude Portions of the Reports and Testimony of Dr. Steve White (Dkt. No. 684), (4) Motion to Exclude Portions of the Reports and Testimony of Atul Prakash (Dkt. No. 685), (5) Motion to Exclude Portions of the Noninfringement Reports and Testimony of Paul Clark, Brian Noble, John Kelly, and Gene Tsudik (Dkt. No. 688), (6) Motion to Exclude Portions of the Reports and Testimony of Dr. Paul Clark (Dkt. No. 690), (7) Motion to Exclude Portions of the Reports and Testimony of Dr. John P.J. Kelly (Dkt. No. 692), all filed by Plaintiff ContentGuard Holdings, Inc. Also before the Court is (8) Defendants' Combined Motion to Strike Portions of the Expert Reports

and Testimony of Michael T. Goodrich and David Martin (Dkt. No. 721). At the Court's request, the Defendants consolidated the separate motions filed by various defendants on June 26, 2015, at docket number 232 in Case No. 2:14-cv-61, and docket numbers 665, 668, 673, 675, 677, 687, and 691 in Case No. 2:13-cv-1112 into the Combined Motion to Strike Portions of the Expert Reports and Testimony of Michael T. Goodrich and David Martin (Dkt. No. 721). The Court requested that the parties submit copies of each expert report in dispute, (Dkt. No. 782), which have subsequently been reviewed by the Court. The Court held a hearing on these motions on August 5, 2015. (Dkt. No. 827.) For the reasons set forth below, the motions to strike are **GRANTED** to the extent specified below, and are otherwise **DENIED**.

## I.   Background

On December 18, 2013, ContentGuard filed suit against Amazon, Apple, BlackBerry, Huawei, and Motorola Mobility asserting claims of patent infringement of the patents in this suit. (Dkt. No. 1). On January 17, 2014, ContentGuard filed an amended complaint asserting the same patents against HTC and Samsung. (Dkt. No. 22).

ContentGuard has asserted the following twenty claims from six related patents issued to Mark Stefik: Claims 1, 3, 6, 8, 11, and 13 from U.S. Patent No. 8,393,007 ("the '007 patent"); Claims 1, 7, and 13 from U.S. Patent No. 8,370,956 ("the '956 patent"); Claims 1 and 8 from U.S. Patent No. 7,523,072 ("the '072 patent"); Claims 18, 21, and 34 from U.S. Patent No. 7,269,576 ("the '576 patent"); and Claims 1, 21, and 58 from U.S. Patent No. 6,963,859 ("the '859 patent") (collectively, the "Stefik patents"). ContentGuard has also asserted the following five claims from two related patents issued to Mai Nguyen: Claims 1 and 5 of U.S. Patent No. 7,774,280 ("the '280 patent"); and Claims 1, 3, and 5 from U.S. Patent No. 8,001,053 ("the '053 patent") (collectively, the "Nguyen patents").

## II.     LEGAL STANDARD

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." FED. R. EVID. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–93 (1993). District courts are accorded broad discretion in making Rule 702 determinations. *Kumho Tire*, 526 U.S. at 152 ("[T]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable."). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the common nature of these factors direct the trial court to consider as its ultimate inquiry whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391–92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249–50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under

3

*Daubert*] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a [gatekeeper], a trial court must take care not to transform a *Daubert* hearing into a trial on the merits") (quoting FED. R. EVID. 702 advisory committee note). Instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury so as to be appropriate for the jury's consideration. *See Pipitone*, 288 F.3d at 249–50.  As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

### III.   DISCUSSION

#### A.   Prior Art Related Grounds for the Motions to Strike

##### 1.   Pfleeger References

The Court previously excluded the Pfleeger references from Defendants' invalidity contentions because the Court found that Defendants had not shown good cause sufficient to add a reference to their invalidity contentions late in the litigation when they had previously known about the reference but not asserted it for over a year.  (June 23, 2015, H'rg Tr., Dkt. No. 660, at 35:8–13.)   Plaintiff argues that Defendants Apple, Google, HTC, Huawei, Motorola, and Samsung are now attempting to maneuver around the Court's previous order by including Pfleeger as a state-of-the-art reference, rather than an invalidity reference.  (Dkt. No. 679, at 11–12.)  Defendants argue that even though the Court excluded Pfleeger as an invalidity reference, Pfleeger can still be used to show the state of the art, particularly as it was known to the inventor, at the time the patent was filed.  (Dkt. No. 749, at 15.)  Further, Defendants explicitly affirmed that they would not attempt to show Pfleeger as an anticipation or obviousness reference.  (*Id.*); *see also* (Aug. 5, 2015, H'rg Tr., Dkt. No. 827, at 9:23–10:2.)

The Court is sympathetic to Defendants' position regarding the need to show the state of the prior art and accepts counsel's representation that Defendants would not overtly use Pfleeger as a *per se* invalidity reference.  However, the Court, after considering the briefing and oral argument, finds that the portions of Mr. Ward's report containing discussion of the substance of Pfleeger must be stricken in view of the Court's previous order, including at least from Paragraphs 113, 121, 132, 134, 139, 140, 141, 178, 195, 391-94, 402-05, 511-524, 580, 615-16, 627-28, 641-42, 655-56, 669-70, 683-84, 702-03, 716-17, 739-40, and 746 of Mr. Ward's report. After examining the paragraphs in question, including the paragraphs that Defendants expressly identified as only touching on the state of the prior art, the Court finds it difficult to completely separate the use of Pfleeger as a state-of-the-art reference from the use of Pfleeger as an invalidity reference: the use for one purpose unavoidably bleeds into the other.  Accordingly, the Court **GRANTS** Plaintiff's motion (Dkt. No. 679) as it pertains to the Pfleeger references in the above cited paragraphs.

2.     **VDE References**

The Court previously denied Apple's request to amend its invalidity contentions with any VDE references other than U.S. Patent. No. 5,892,900 ("Ginter"), because the Court found that Apple had not shown an adequate basis to overcome the prejudice to ContentGuard of adding the VDE references this late in litigation. (April 28, 2015, H'rg Tr., Dkt. No. 577, at 44:5–16.)  The Court also granted a subsequent motion to exclude based on its earlier order.  (Dkt. No. 820.) Plaintiff argues that Defendant Apple has never asserted the "VDE system" against the Nguyen patents and is now attempting to circumvent the Court's previous order by "recit[ing] contentions (including two figures) about 'the VDE system' that are based not on anything in the public Ginter patent reference, but on deposition testimony from Mr. Ginter regarding the operation of the precluded VDE system." (Dkt. No. 685, at 14.)  Apple argues that Ginter was

5

always asserted against the Nguyen patents and that the "two embodiments ('traveling objects' and 'stationary objects') described and depicted in paragraph 269 of Dr. Prakash's report, and also described by Mr. Ginter during his deposition, are indeed disclosed in the Ginter patent." (Dkt. No. 748, at 14.)

After considering the briefing and oral argument, the Court finds that the portions of the sentences from Paragraph 269 of Dr. Prakash's report, which contain information about the VDE systems which is not directly from the Ginter patent, including the portions of the report based on information obtained from Mr. Ginter's deposition testimony, must be stricken in view of the Court's previous order. Accordingly, the Court **GRANTS** Plaintiff's motion (Dkt. No. 685) as it pertains to information about the VDE system that is not disclosed directly from the Ginter patent.

### 3. Wyman References

Plaintiff argues that "[d]espite amending their Invalidity Contentions multiple times, Defendants never asserted [U.S. Patent Nos. 5,260,999 (the "'999 Patent") and 5,204,897 (the "'897 Patent") (collectively, "the Wyman patents")] as prior art against the meta-rights patents in their Invalidity Contentions." (Dkt. No. 679, at 11; Dkt. No. 685, at 13.) Plaintiff further argues that Defendants are now attempting to assert "[the Wyman patents] against the meta-rights patents for the first time in [their] expert report[s]." (Dkt. No. 679, at 11; Dkt. No. 685, at 13.) The '999 Patent had previously been asserted against at least the Stefik patents. (Dkt. No. 749, at 14.) The non-Apple Defendants argue that they did not "appreciate the full relevance of [the '999 Patent] to the Nguyen patents," (*id.*), until "ContentGuard asserted an entirely new theory of infringement regarding 'meta-rights' in its April 20, 2015 fifth infringement contentions," (Dkt. No. 805, at 4). Defendants further argue that they "promptly identified [the '999 Patent] as being relevant to the invalidity of the Nguyen patents [upon realizing the '999 Patent's

6

relevance]," (Dkt. No. 749, at 14).  Apple argues that "Dr. Prakash's report does not assert [the '897 Patent] as a § 102 or 103 reference against the Nguyen patents."  (Dkt. No. 748, at 13.)

After considering the briefing and oral argument, the Court finds that assertion of the Wyman patents against the Nguyen patents is untimely, and as a result, those portions of Mr. Ward's report (Paragraphs 882–887 and Exhibits X1 and X2) and Dr. Prakash's report (Paragraphs 182 and 222) should be stricken.  Accordingly, the Court **GRANTS** Plaintiff's motions (Dkt. Nos. 679 and 685) as they pertain to the Wyman patents as invalidity references against the Nguyen patents.

### B.   Claim Construction Related Grounds for the Motions to Strike

Plaintiff argues that portions of Defendants' various experts' reports and testimony are improper because Defendants' respective experts misapply the Court's claim construction.  *See* (Dkt. No. 679, at 5–11; Dkt. No. 683, at 4–12; Dkt. No. 684, at 4–9; Dkt. No. 685, at 5–13; Dkt. No. 690, at 4–13; Dkt. No. 692, at 4–12.)  Similarly, Defendants argue that portions of Plaintiff's experts' reports and testimony are improper because Plaintiff's experts misapply the Court's claim construction.  *See* (Dkt. No. 721, at 1.)

As an initial matter, the Court notes, that during a hearing held on July 27, 2015, the Court asked the parties whether any outstanding claim construction issues needed to be dealt with prior to trial.  *See* (July 27, 2015, H'rg Tr., Dkt. No. 818, at 31:23–32:1.)  Other than one discrete issue that has already been completely briefed (a motion for reconsideration, Dkt. No. 480), no party identified any remaining claim construction issues.  *See* (*id*. at 32:2–13.)  Regarding the particular expert reports and testimony disputes at hand, **IT IS ORDERED** that no experts are to render any conclusions regarding the scope of the patents-in-suit or particular claim limitations that deviate from this Court's Claim Construction Memorandum and Order (Dkt. No. 459).  Accordingly, all experts, whether Plaintiff's or Defendants', are hereby

7

excluded from providing any opinions that violate these constraints, and any portions of their reports in conflict with this Order are stricken.

Further, all experts are hereby excluded from providing any opinions based on an interpretation of the Court's construction that is the equivalent of any construction that the Court previously considered and expressly rejected.  In particular, with regard to the following previously construed claim terms, the identified claim construction arguments have previously been considered and expressly rejected in the Court's Claim Construction Order, and therefore, the Court **ORDERS** that:

- **"rights," "usage rights," "usage rights information"** – No expert may opine or insinuate that a mere association between the content and the usage rights is enough to meet the requirement that the usage rights be "attached" to the content. *See* (Dkt. No. 459, at 33.)  A mere reference, with nothing more to indicate that the usage rights should be attached or treated as attached to the content, is not enough.  The bolded portion from the following sentence from paragraph 48 of Mr. Goodrich's report is an exemplary opinion implicated by this Order and must be stricken: "Thus usage rights may be attached to content by placing them inside the same data structure or file or through the use of links or **references** to the content from the data structure containing the usage right." (Dkt. No. 721-7, at ¶48 (emphasis added).)

- **"rights," "usage rights," "usage rights information"** – No expert may opine or insinuate that the attachment between the content and the usage rights must be permanent.  *See* (Dkt. No. 459, at 33.)  The bolded portion from the following sentences from paragraph 160 of Mr. Ward's report are exemplary opinions

implicated by this Order and must be stricken: "A key feature of the present invention is that usage rights are **permanently** 'attached' to the digital work. . . . Thus, the usage rights and any associated fees assigned by a creator and subsequent distributor will **always** remain with a digital work." (Dkt. No. 679-1, at ¶ 160 (emphasis added).)

- **"repository" and "trusted"** – No expert may opine or insinuate that a "repository" or "trusted device" must maintain the three integrities "at all times." *See* (Dkt. No. 459, at 15.) The bolded portion from the following sentence from paragraph 138 of Mr. Clark's report is an exemplary opinion implicated by this Order and must be stricken: "Thus, if an accused repository, recipient computing device, or recipient apparatus allows access to **any** 'information' by a nontrusted system (including, but not limited to 'content'), then it cannot be found to possess the required 'physical integrity' and, accordingly, cannot be a 'repository,' a 'trusted' device, or 'trusted' apparatus." (Dkt. No. 690-1, at ¶ 138 (emphasis added).)

Accordingly, the Court **GRANTS** Plaintiff's motions (Dkt. No. 679, Dkt. No. 683, Dkt. No. 684, Dkt. No. 685, Dkt. No. 690, Dkt. No. 692) and Defendants' Motion (Dkt. No. 721) only as they relate to the claim construction positions explicitly identified above. The claim construction positions of Plaintiff's motion and Defendants' motions are **DENIED** in all other respects.

### C. Doctrine of Equivalents Related Grounds for the Motions to Strike

Defendants argue that Plaintiff's disclosure of Plaintiff's Doctrine of Equivalents ("DOE") theory is untimely. *See* (Dkt. No. 721, at 25–26.) Defendants also argue that the DOE theory improperly attempts to revive a claim construction position previously rejected by the

Court, vitiates the Court's claim construction ruling, and is barred by prosecution history estoppel ("PHE"). *See* (*id.* at 16–25.) Relatedly, Apple argues that Plaintiff did not adequately or timely disclose that the use of the "Messages" program to transfer files between Apple employees met the "behavioral integrity" requirement of the patents-in-suit. *See* (*id.* at 26–28.) Plaintiff responds that, as an initial matter, Plaintiff properly amended its infringement contentions within 30 days of the Court's Claim Construction Order, as allowed under the Local Rules, and adequately disclosed Plaintiff's infringement theories in its infringement contentions. *See* (Dkt. No. 740, at 18–21.) Further, Plaintiff argues that it is not attempting to revive any rejected claim construction positions and that though the Court rejected Plaintiff's proposed claim construction, the Court did not expressly find that the "behavioral integrity" limitation could not be met through the use of an equivalent to a "digital certificate." *See* (*id.* at 11–14.) Plaintiff also argues that, in regard to Apple, any late disclosure of infringement theories, to the extent that such disclosure was late, was a result of Apple's own "deficient source code production and belated depositions." *See* (*id.* at 20–21.)

The Court will address the PHE arguments later in this Order. After considering the briefing and oral argument, the Court finds the DOE disclosures were timely. Accordingly, the Court **DENIES** Defendants' motion (Dkt. No. 721) as it pertains striking the DOE theories disclosed in Mr. Goodrich's and Mr. Martin's reports. The Court notes, however, that the Court expressly rejected the inclusion of the language, "in other words, an assurance that the software comes from a source known to the repository," in the construction of "behavioral integrity," because the "additional language . . . would tend to broaden the scope of the disputed term." (Dkt. No. 459, at 19–21.) In accordance with that decision, **IT IS ORDERED** that no expert

10

may opine or insinuate that a "digital certificate" is simply "an assurance that the software comes from a source known to the repository."

### D. Prosecution History Estoppel Related Grounds for the Motions to Strike

Plaintiff argues that portions of Dr. Kelly's report improperly raise legal issues, such as ensnarement and PHE, which should not be presented to the jury. *See* (Dkt. No. 692, at 12–13.) Apple specifically responds that Dr. Kelly's report properly discloses the underlying facts necessary to present Apple's PHE arguments. *See* (Dkt. No. 738, at 11–12.) Relatedly, Defendants argue that Mr. Goodrich's and Mr. Martin's theories that "behavioral integrity" is met through the DOE are barred by PHE. *See* (Dkt. No. 721, at 21.) ContentGuard responds by arguing that, procedurally, the PHE arguments have been waived by Defendants' silence prior to the *Daubert* motion and that, substantively, the patentee did not clearly surrender subject matter. *See* (Dkt. No. 740, at 15.) Defendants respond by arguing that the DOE infringement theory was not disclosed until April 20, 2015, a day before the deadline to file the letter briefs for dispositive motions, which is why the PHE arguments were not raised prior to the *Daubert* stage. *See* (Aug. 5, 2015, H'rg Tr., Dkt. No. 827, at 107:11–108:2.)

After considering the briefing and oral argument, the Court finds that PHE arguments are untimely, and as a result, those portions of Dr. Kelly's report (Paragraphs 296–336) are stricken. Though Defendants argue that the PHE arguments are a response to Plaintiff's Amended Infringement Contentions served on the day that the letter briefing was due, Defendants did not request an extension or any relief to rectify the problems which they assert were created by this alleged late amendment. For example, Defendants did not request leave to file a motion for summary judgment in which they could have laid out the particular timing issues at play here. Accordingly, the Court **GRANTS** Plaintiff's motion (Dkt. No. 692) as it pertains to the prosecution history estoppel arguments contained in Dr. Kelly's report and **DENIES**

Defendants' motion (Dkt. No. 721) as it pertains to a prosecution history estoppel bar to ContentGuard's assertion of the doctrine of equivalents.

### E. ContentGuard's *Daubert* Motion to Exclude Portions of the Noninfringement Reports and Testimony Related to Rooting, Jailbreaking, and TunesKit Software

Plaintiff argues that portions of Defendants' noninfringement experts' reports and testimony are improper because Defendants' respective experts relied on facts, including tests, that were not properly disclosed during fact discovery, modified the accused instrumentalities such that any test results are irrelevant, and failed to disclose enough facts to determine whether the tests were reliable. *See* (Dkt. No. 688, at 3–15.) Defendants first respond by arguing that the facts underlying their tests were timely disclosed and that they did not need to disclose their testing methodology. *See, e.g.,* (Dkt. No. 750, at 3–5.) Defendants further argue that their test results are relevant because they prove that the accused instrumentalities do not meet the claim limitations of the Patents-in-Suit, particularly as they relate to the three integrities. *See, e.g.,* (Dkt. No. 721, at 1.) Finally, Defendants argue that the experts provided more than sufficient detail such that the tests could be reproduced and determined reliable. *See, e.g.,* (Dkt. No. 750, at 12–14.).

As an initial matter, the Court does not find the timing of the disclosure of this evidence to be improper. Defendants timely disclosed the facts that are the subject of the tests. However, after considering the briefing and oral argument, the Court does find that the rooting and jailbreaking related modifications made by Dr. Clark, Dr. Noble, and Dr. Kelly render the test results irrelevant and the portions from their respective reports and testimonies relating to such are stricken. After much consideration, the Court has determined that the issue is not whether it is possible to eventually modify the accused instrumentalities so that they no longer meet the claim limitations of the asserted patents. Rather, the question is whether the accused

instrumentalities, as sold, meet all the claim limitations as construed by the Court. Similarly, the Court also finds that the installation of the TunesKit Application renders Dr. Kelly's test results irrelevant and the portions from his report and testimony relating to such are stricken. Accordingly, the Court **GRANTS** Plaintiff's motion (Dkt. No. 688).

## IV. CONCLUSION

Having considered all of Plaintiff's objections, Plaintiff's (1) Motion to Exclude Portions of the Reports and Testimony of Jean Renard Ward (Dkt. No. 679); (2) Motion to Exclude Portions of the Reports and Testimony of Dr. Brian Noble (Dkt. No. 683); (3) Motion to Exclude Portions of the Reports and Testimony of Dr. Steve White (Dkt. No. 684), (4) Motion to Exclude Portions of the Reports and Testimony of Atul Prakash (Dkt. No. 685), (5) Motion to Exclude Portions of the Noninfringement Reports and Testimony of Paul Clark, Brian Noble, John Kelly, and Gene Tsudik (Dkt. No. 688), (6) Motion to Exclude Portions of the Reports and Testimony of Dr. Paul Clark (Dkt. No. 690), (7) Motion to Exclude Portions of the Reports and Testimony of Dr. John P.J. Kelly (Dkt. No. 692) are **GRANTED** as specifically set forth above and **DENIED** in all other respects.

Having considered all of Defendants' objections, Defendants' Combined Motion to Strike Portions of the Expert Reports and Testimony of Michael T. Goodrich and David Martin (Dkt. No. 721) is **GRANTED** as specifically set forth above, **CARRIED** as to Mr. Goodrich's indirect infringement opinions regarding the OEM Defendants, and **DENIED** in all other respects.

Additionally, having ordered further briefing from the Parties regarding the Motion to Exclude Portions of the Reports and Testimony of Dr. John P.J. Kelly (Dkt. No. 692), the Court **CARRIES** that motion specifically in regard to ContentGuard's allegation that Apple relies on evidence unrelated to the Representative Products.

**So ORDERED and SIGNED this 19th day of August, 2015.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE