# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| CONTENTGUARD HOLDINGS, INC., | § § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 2:13-CV-1112-JRG |
| AMAZON.COM, INC., et al., | § § | |
| Defendants. | § § § § | |
| CONTENT GUARD HOLDINGS, INC., | § § § | |
| Plaintiff, | § § § | |
| v. | § § | Case No. 2:14-CV-61-JRG |
| GOOGLE, INC., | § § § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Joint Renewed Motion for Judgment on the Pleadings Declaring All Asserted Patent Claims Invalid Pursuant to 35 U.S.C. § 101 (Dkt. No. 539 in the -1112 case; Dkt. No. 191 in the -61 case) ("Mot.") filed by Defendants Motorola Mobility, LLC, Amazon.com, Inc., Apple Inc., Google, Inc., Huawei Technologies Co., Ltd., Huawei Device USA, Inc., HTC Corp., HTC America, Inc., Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC (collectively, "Defendants"). Plaintiff ContentGuard Holdings, Inc. ("ContentGuard") filed a Response in Opposition to the Motion (Dkt. No. 597 in the -1112 case) ("Resp."). Previously, the Court entered an order denying the Motion and expressly reserving the right to supplement that order with more detailed

analysis. (Dkt. No. 826 in the -1112 case; Dkt. No. 299 in the -61 case.) This Order supersedes and replaces that prior Order. For the reasons stated below, the motion is **DENIED**.

## I. Background

On December 18, 2013, ContentGuard filed suit against Amazon, Apple, Blackberry, Huawei, and Motorola Mobility asserting claims of patent infringement of the patents in this suit. (Dkt. No. 1 in the -1112 case.) On January 17, 2014, ContentGuard filed an amended complaint also bringing suit on the same patents against HTC and Samsung. (Dkt. No. 22 in the -1112 case.)

Defendants Motorola and Amazon each separately filed motions requesting dismissal pursuant to 35 U.S.C. § 101. (Dkt. Nos. 298 and 390 in the -1112 case). The Court held a Markman hearing on February 6, 2015, and issued a 144-page Claim Construction Order (Dkt. No. 459 in the -1112 case) ("Claim Construction Order") on March 20, 2015. On April 9, 2015, the Court denied Defendants' pending § 101 motions without prejudice to re-filing, and directed that the parties re-brief the issue in accordance with the Court's Claim Construction Order. (Dkt. No. 482 in the -1112 case.) On April 24, 2015, Defendants filed this Joint Motion to Dismiss on the Pleadings Under Federal Rule of Civil Procedure ("F.R.C.P.") 12(c) re-raising the § 101 issue. (Mot.) Since both Defendants and Plaintiff submitted evidence outside the scope of what can properly be considered under F.R.C.P. 12(c)[1], pursuant to Rule 12(d), the Court converted the motion to a motion for summary judgment under F.R.C.P. 56. (Dkt. No. 669 in the -1112 case.) The Court heard oral argument from the parties on July 29, 2015.

ContentGuard has asserted the following twenty claims from six related patents issued to Mark Stefik: Claims 1, 3, 6, 8, 11, and 13 from U.S. Patent No. 8,393,007 ("the '007 patent"); Claims 1, 7, and 13 from U.S. Patent No. 8,370,956 ("the '956 patent"); Claims 1 and 8 from

---

[1] *See, e.g.*, (Mot., Ex. 3, Dkt. No. 539-3 in the -1112 case; Resp., Ex. 6, Dkt. No. 597-6 in the -1112 case.)

U.S. Patent No. 7,523,072 ("the '072 patent"); Claims 18, 21, and 34 from U.S. Patent No. 7,269,576 ("the '576 patent"); and Claims 1, 21, and 58 from U.S. Patent No. 6,963,859 ("the '859 patent") (collectively, the "Stefik Patents").  ContentGuard has also asserted the following five claims from two related patents issued to Mai Nguyen: Claims 1 and 5 of U.S. Patent No. 7,774,280 ("the '280 patent"); and Claims 1, 3, and 5 from U.S. Patent No. 8,001,053 ("the '053 patent") (collectively, the "Nguyen Patents").

At a high level, the Stefik Patents are generally directed toward systems and methods for controlling the use and distribution of digital works in accordance with "usage rights" through the use of "trusted" systems.  *See* claim 1 of the '007 Patent ("sending the digital content . . . to the at least one recipient computing device only if the at least one recipient device has been determined to be trusted").  The Court construed "trusted" to require that three types of "integrities"—physical, communication, and behavioral—be maintained.  *See* (Claim Construction Order at 15.)  Similarly, the Nguyen Patents are generally directed toward systems and methods for controlling the use and distribution of digital works in accordance with "usage rights"—and more particularly, "meta-rights"—through the use of "trusted" systems.  The claim language of the '007 Patent is informative in this regard:

For example, Claim 1 of the '007 Patent recites:

1. A computer-implemented method of distributing digital content to at least one recipient computing device to be rendered by the at least one recipient computing device in accordance with usage rights information, the method comprising:

> determining, by at least one sending computing device, if the at least one recipient computing device is trusted to receive the digital content from the at least one sending computing device;

>sending the digital content, by the at least one sending computing device, to the at least one recipient computing device only if the at least one recipient computing device has been determined to be trusted to receive the digital content from the at least one sending computing device; and

>sending usage rights information indicating how the digital content may be rendered by the at least one recipient computing device, the usage rights information being enforceable by the at least on recipient computing device.

Defendants contend that the claims are directed to patent-ineligible subject matter and therefore are invalid under 35 U.S.C. § 101. Specifically, Defendants argue that the Stefik Patents address nothing more than the "abstract idea of enforcing usage rights and restrictions on digital content." (Mot. at 8.) Similarly, Defendants argue that the Nguyen Patents address nothing more than the "abstract idea of enforcing sublicensing rights and restrictions (which the patents name 'meta-rights') on digital content." (*Id.* at 28.)

## II.   LEGAL STANDARD

### A.   Summary Judgment Under Rule 56

Federal Rule of Civil Procedure 56(c) authorizes a Court to grant summary judgment where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." A party moving for summary judgment must satisfy its initial burden by showing that "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986).

### B.   Patent Eligibility Under 35 U.S.C. § 101

Section 101 of the Patent Act defines what is eligible for patent protection. It says: "Whoever invents or discovers any new and useful process, machine, manufacture or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor,

4

subject to the conditions and requirements of this title." 35 U.S.C. § 101.

The Supreme Court has held that there are three specific exceptions to patent eligibility under § 101: laws of nature, natural phenomena, and abstract ideas. *Bilski v. Kappos*, 561 U.S. 593, 601 (2010). In *Mayo*, the Supreme Court articulated a two-step test for "distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent eligible applications of those concepts." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014) (citing *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1296–97 (2012)).

The first step of *Mayo* requires a court to determine if the claims are directed to a law of nature, natural phenomenon, or abstract idea. *Alice*, 134 S. Ct. at 2355. "If not, the claims pass muster under § 101." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 714 (Fed. Cir. 2014). In making this determination, the court looks at what the claims cover. *Ultramercial*, 772 F.3d at 714–15 ("We first examine the claims because claims are the definition of what a patent is intended to cover."); *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1369 (Fed. Cir. 2015) ("At step one of the *Alice* framework, it is often useful to determine the breadth of the claims in order to determine whether the claims extend to cover a 'fundamental . . . practice long prevalent in our system . . . .'").

For example, in *Bilski*, the Supreme Court rejected as a patent-ineligible "Claims 1 and 4 in petitioners' application" because the claims simply "explain[ed] the basic concept of hedging, or protecting against risk." *Bilski*, 561 U.S. at 611. Similarly, in *Ultramercial*, the Federal Circuit rejected as patent-ineligible a claim that included "eleven steps for displaying an advertisement in exchange for access to copyrighted media." *Ultramercial*, 772 F.3d at 714. In *Intellectual Ventures*, the Federal Circuit rejected as patent-ineligible a claim that contained steps

5

"relat[ing]to customizing information based on (1) information known about the user and (2) navigation data." *Intellectual Ventures*, 792 F.3d at 1369.

A court applies the second step of *Mayo* only if it finds in the first step that the claims are directed to a law of nature, natural phenomenon, or abstract idea. *Alice*, 134 S. Ct. at 2355. The second step requires the court to determine if the elements of the claim individually, or as an ordered combination, "transform the nature of the claim" into a patent-eligible application. *Alice*, 134 S. Ct. at 2355. In determining if the claim is transformed, "[t]he cases most directly on point are *Diehr* and *Flook*, two cases in which the [Supreme] Court reached opposite conclusions about the patent eligibility of a process that embodied the equivalent of natural laws." *Mayo*, 132 S. Ct. at 1298; *see also Alice*, 134 S. Ct. at 2355 ("We have described step two of this analysis as a search for an 'inventive concept.'").

In *Diehr*, the Court "found [that] the overall process [was] patent eligible because of the way the additional steps of the process integrated the equation into the process as a whole." *Mayo*, 132 S. Ct. at 1298 (citing *Diamond v. Diehr*, 450 U.S. 175, 187 (1981)); *see also Mayo*, 132 S. Ct. at 1300 ("It nowhere suggested that all these steps, or at least the combination of those steps, were in context obvious, already in use, or purely conventional."). In *Flook*, the Court found that a process was patent-ineligible because the additional steps of the process amounted to nothing more than "insignificant post-solution activity." *Diehr*, 450 U.S. at 191–92 (citing *Parker v. Flook*, 437 U.S. 584 (1978)).

A claim may become patent-eligible when the "claimed process include[s] not only a law of nature but also several unconventional steps . . . that confine[] the claims to a particular, useful application of the principle." *Mayo*, 132 S. Ct. at 1300; *see also DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014) ("In particular, the '399 patent's claims

6

address the problem of retaining website visitors that, if adhering to the routine, conventional functioning of Internet hyperlink protocol, would be instantly transported away from a host's website after 'clicking' on an advertisement and activating a hyperlink."). A claim, however, remains patent-ineligible if it describes only "'post-solution activity' that is purely 'conventional or obvious.'" *Mayo*, 132 S. Ct. at 1299.

### III.   DISCUSSION

In order to prevail on a § 101 challenge, the movant must show that the challenged claims first fail the "ineligible concept" step *and* then also fail the "inventive concept" step of the *Alice* test. In this case, Defendants contend the Patents-in-Suit fail both steps.

#### A.   *Alice* Step One: The Ineligible Concept Step[2]

Defendants argue that the claims of the Patents-in-Suit are directed to the abstract idea of enforcing usage rights and restrictions on digital content. (Mot. at 8.) For example, Defendants contend claim 1 of the '007 Patent fails the first step of the *Alice* test because it is directed to an abstract idea and "recites elements of a process that can be, and has been, performed by humans without computers." *See, e.g.*, (*id.*) Defendants point to the example of a "basic library loan" to illustrate the abstract and common nature of the invention. (*Id.* at 8–9.)

Plaintiff responds by arguing that "[n]owhere do Defendants explain how a bricks-and-mortar library, coupled with a generic computer, meets the three 'integrities' taught by the [Stefik] Patents." (Resp. at 8.) Plaintiff further argues that "Defendants' inability to demonstrate how and why the actual claims of [the Stefik Patents] meaningfully resemble a trip to the library is fatal." (*Id.* at 10.) In particular, Plaintiff argues that the "honor-based code practiced for

---

[2] Because all of the Patents-in-Suit are substantially similar in including the limitations of "trusted repositories" and "usage rights," the Court will only substantively address the '007 Patent in its analysis.

centuries by libraries and their patrons" is not analogous to the actual enforcement of usage rights taught by the Patents-in-Suit. (*Id.* at 10–12.)

Defendants also argue that, because "the Stefik patent specifications make very clear that the integrities/'security levels' for the referenced 'trusted' systems/'repositories' are not fixed or specifically defined," the "'trusted' systems do not require any specific computer programming." (Dkt. No. 605 in the -1112 case ("Repl."), at 6.) Defendants further argue that the "'technology-based solution' purportedly suggested by the asserted claims utilizes only the most conventional and routine of computer actions and functions" and that the "Stefik specifications . . . recognize the prevalence in the prior art of the very techniques purportedly used by the patent claims to maintain the three integrities." (*Id.* at 6–7.)

After consideration of all the evidence and the arguments presented, the Court finds that the Patents-in-Suit are directed toward patent-eligible subject matter. In particular, the Patents-in-Suit are not directed toward an abstract idea, at least because they are directed toward patent-eligible methods and systems of managing digital rights using specific and non-generic "trusted" devices and systems. *See, e.g.*, (Resp. at 13 ("This is significant because it underscores that the subject matter of the Trusted Repository Patents is narrow, i.e., limited to devices that maintain physical, communications, and behavioral integrity, rather than all devices that are capable to receive content via the Internet.").) Though the Patents-in-Suit address problems associated with creating and enforcing usage rights with content, they are directed to non-abstract solutions through the use of trusted systems.

Further, the Court finds Defendants' analogy to library loans unpersuasive. A library cannot effectively enforce usage restrictions on a book once that book has left the library's premises. Though a library may be able to ***punish*** a patron for an unauthorized usage pattern

8

after the fact, it cannot *prevent* such unauthorized usage by a patron. Moreover, a library cannot ensure that its patrons maintain the three integrities required to be considered a "trusted system."

Finally, the Court finds Defendants' arguments regarding whether the Patents-in-Suit required "specific computer programming" and whether the Patents-in-Suit used "conventional" techniques unavailing. Defendants essentially argue that the Patents-in-Suit must disclose detailed levels of security in order to require "specific computer programming." However, the implementation of the invention disclosed in the Patents-in-Suit may require "specific computer programming," even though the Patents-in-Suit may not disclose the particular security levels of that implementation.

Defendants further argue that the Patents-in-Suit used "conventional" techniques. While this question is more appropriately addressed in the Inventive Concept Step of the *Alice* inquiry, the Court is not asked to determine whether the steps or limitations can be performed or implemented using standard or well-known technologies. Instead, the Court considers whether "the function performed by the computer at each step of the process is '[p]urely conventional.'" *See Alice*, 134 S. Ct. at 2359. The Court does not find that all the steps or limitations in the Patents-in-Suit are purely conventional, even though they may be performed using conventional technology.

Accordingly, the Court finds that the Patents-in-Suit are not directed to an abstract idea.

### B.    *Alice* Step Two: The Inventive Concept Step

Defendants argue that claim 1 of the '007 Patent fails the second, "inventive concept" step because "[t]here is no inventive element that renders [it] patentable." *See, e.g.*, (Mot. at 18.) In particular, Defendants argue that the terms in the '007 Patent "merely invoke general and *unspecified* computer programming that permits the use of common computer functionality." (*Id.* at 9 (emphasis in original).) Defendants further argue that the "Stefik patent specification

9

makes clear that the integrities/'security levels' for a 'trusted' system . . . are not even fixed or specifically defined." (*Id.* at 10.) Defendants argue that the Patents-in-Suit do not require "any specific technological or inventive way of maintaining" the three integrities. (*Id.* at 10–13.)

Plaintiff responds by arguing that the "three integrities required to implement a 'trusted repository' are not merely the routine or conventional use of a general-purpose computer." (Resp. at 14.) Plaintiff further argues that "there is no evidence in the record that the 'trusted repository' inventions taught by the Stefik patents are a feat of 'routine,' 'prosaic' engineering, such that they are devoid of an 'inventive' concept." (*Id.* at 15.) Plaintiffs also point to the PTAB's decisions affirming the validity of four of the Patents-in-Suit and "numerous 'objective indicia of non-obviousness' that exist" with regard to the Patents-in-Suit." (*Id.* at 15–16.)

As an initial matter, the Court does not consider the PTAB's decisions or the "objective indicia of non-obviousness" particularly relevant or helpful to the patent-eligibility inquiry. First, the PTAB did not consider the patent-eligibility of the Patents-in-Suit under Section 101. Thus, any relevance to the question currently before the Court is minimal at best. Second, the obviousness and eligibility question require separate and distinct analyses.

However, even if the Court were to find that the Stefik Patents are simply directed to the "abstract idea of enforcing usage rights and restrictions on digital content" as Defendants suggest, which it does not, the claim limitations, individually and "as an ordered combination," are sufficient to ensure that the Patents-in-Suit amount to "significantly more" than a patent simply on that abstract idea. *See Alice*, 134 S. Ct. at 2355.

Similarly, even if the Court were to find that the Nguyen Patents are simply directed to the "abstract idea of enforcing sublicensing rights and restrictions (which the patents name 'meta-rights') on digital content," which it does not, they also contain an "inventive concept."

10

For example, the claims require that the "repository" be a "trusted system" that "maintains . . . behavioral integrity in the support of usage rights" through the use of "digital certificates." *See* (Claim Construction Order at 18–19.) Further, the claims require that "usage rights" are "attached or treated as attached" to the "content" such that the invented methods and systems, through the use of the "trusted systems," enable the creation and effective enforcement of usage permissions. *See* (Resp. at 12.) Without commenting on whether such a solution is novel or obvious, the Court finds that, at the very least, the Patents-in-Suit disclose particular solutions for the problem of "enforcing usage rights and restrictions on digital content" that "(1) [do] not foreclose other ways of solving the problem, and (2) recite[] a specific series of steps that result[] in a departure from the routine and conventional" way of managing digital rights. *Internet Patents Corp. v. Active Network, Inc.*, No. 2014-1048, 2015 WL 3852975, at *6 (Fed. Cir. June 23, 2015).

Finally, as previously stated, the Court does not find that all the steps or limitations in the Patents-in-Suit are conventional, even though they may be performed using conventional technology. Accordingly, the Court finds that the claim limitations of the Patents-in-Suit, individually and as an ordered combination, provide an "inventive concept" sufficient to "transform the nature of the claim" into a patent-eligible application. *Alice*, 134 S. Ct. at 2355.

### IV. CONCLUSION

The Court finds that Defendants have failed to meet their burden to show that the Patents-in-Suit are directed toward an abstract idea and violate "the longstanding rule that '[a]n idea of itself is not patentable.'" *See Alice*, 134 S. Ct. at 2355 (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)). The Court further finds that, even if the Patents-in-Suit were directed to an abstract idea, Defendants have failed to meet their burden to show that the additional elements of

the claims do not "transform the nature of the claim" into patent-eligible subject matter.  *See Alice*, 134 S. Ct. at 2355 (quoting *Mayo*, 132 S. Ct. 1298).

Accordingly, Defendants' Motion for Judgment on the Pleadings (Dkt. No. 539 in the -1112 case; Dkt. No. 191 in the -61 case), having been converted into a motion for summary judgment, is in all things **DENIED**.

**So ORDERED and SIGNED this 5th day of October, 2015.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE