# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| CONTENTGUARD HOLDINGS, INC., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Case No. 2:13-CV-1112-JRG |
| | § | |
| APPLE INC., | § | |
| | § | |
| *Defendant*. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Renewed Motion For Judgment As A Matter Of Law With Respect To The Apple Trial Or, In The Alternative, For A New Trial (Dkt. No. 1106, "Inf. JMOL") filed by Plaintiff ContentGuard Holdings, Inc. ("ContentGuard") and the Renewed Motion For Judgment As A Matter Of Law On Patent Invalidity And Alternative Motion For A New Trial (Dkt. No. 1104, "Inv. JMOL") filed Defendant Apple Inc. ("Apple"). For the reasons set forth below, the Court finds that these motions should both be **DENIED**.

## I. BACKGROUND

The Court held a jury trial in this case, and the jury returned a unanimous verdict on November 20, 2015, that Apple had not infringed United States Patents Nos. 6,963,859 ("'859 Patent"), 7,523,072 ("'072 Patent"), 8,370,956 ("'956 Patent"), and 8,393,007 ("'007 Patent") (collectively, "Trusted Repository Patents" or "Stefik Patents"); and 8,001,053 ("'053 Patent") ( "Meta Rights Patent," "Nguyen/Chen Patent," or "Nguyen Patent") (all, collectively, "patents-in-suit"). The jury also found that Apple had not proved that ContentGuard's patents were invalid. ContentGuard and Apple both respectively assert that, in the approximately 36 hours of testimony and evidence presented at trial, the jury did not have sufficient evidence for its findings.

## II. APPLICABLE LAW

Upon a party's renewed motion for judgment as a matter of law following a jury verdict, the Court asks whether "the state of proof is such that reasonable and impartial minds could reach the conclusion the jury expressed in its verdict." Fed. R. Civ. P. 50(b); *Am. Home Assur. Co. v. United Space Alliance*, 378 F.3d 482, 487 (5th Cir. 2004). "The grant or denial of a motion for judgment as a matter of law is a procedural issue not unique to patent law, reviewed under the law of the regional circuit in which the appeal from the district court would usually lie." *Finisar Corp. v. DirectTV Group, Inc.*, 523 F.3d 1323, 1332 (Fed. Cir. 2008). "A JMOL may only be granted when, 'viewing the evidence in the light most favorable to the verdict, the evidence points so strongly and overwhelmingly in favor of one party that the court believes that reasonable jurors could not arrive at any contrary conclusion.'" *Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255, 1261 (Fed. Cir. 2013) (quoting *Dresser-Rand Co. v. Virtual Automation, Inc.*, 361 F.3d 831, 838 (5th Cir. 2004)).

Pursuant to this Court's regional circuit, a court is to be "especially deferential" to a jury's verdict, and must not reverse the jury's findings unless they are not supported by substantial evidence. *Baisden v. I'm Ready Productions, Inc.*, 693 F.3d 491, 499 (5th Cir. 2012). "Substantial evidence is defined as evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Threlkeld v. Total Petroleum, Inc.*, 211 F.3d 887, 891 (5th Cir. 2000). A motion for judgment as a matter of law must be denied "unless the facts and inferences point so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion." *Baisden* 393 F.3d at 498 (citation omitted). However, "[t]here must be more than a mere scintilla of evidence in the record to prevent judgment as a matter of law in favor of the movant." *Arismendez v. Nightingale*

*Home Health Care, Inc.*, 493 F.3d 602, 606 (5th Cir. 2007).

In evaluating a motion for judgment as a matter of law, a court must "draw all reasonable inferences in the light most favorable to the verdict and cannot substitute other inferences that [the court] might regard as more reasonable." *E.E.O.C. v. Boh Bros. Const. Co., L.L.C.*, 731 F.3d 444, 451 (5th Cir. 2013) (citation omitted). However, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

### III. ANALYSIS

To prove infringement under 35 U.S.C. § 271, a plaintiff must show the presence of every element, or its equivalent, in the accused product or service. *Lemelson v. United States*, 752 F.2d 1538, 1551 (Fed. Cir. 1985). First, the claim must be construed to determine its scope and meaning; and second, the construed claim must be compared to the accused device or service. *Absolute Software, Inc. v. Stealth Signal, Inc.*, 659 F.3d 1121, 1129 (Fed. Cir. 2011) (citing *Carroll Touch, Inc. v. Electro Mech. Sys., Inc.*, 15 F.3d 1573, 1576 (Fed. Cir. 1993)). "A determination of infringement is a question of fact that is reviewed for substantial evidence when tried to a jury." *ACCO Brands, Inc. v. ABA Locks Mfr. Co.*, 501 F.3d 1307, 1311 (Fed. Cir. 2007).

An issued patent is presumed valid. 35 U.S.C. § 282; *Fox Grp., Inc. v. Cree, Inc.*, 700 F.3d 1300, 1304 (Fed. Cir. 2012). Samsung has the burden to show by clear and convincing evidence that the asserted claims were anticipated by or obvious over the prior art. *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2242 (2011). To prevail on judgment as a matter of law, moreover, Samsung must show that no reasonable jury would have a legally sufficient evidentiary basis to find for the Plaintiff. Fed. R. Civ. P. 50. "Generally, a party seeking to

invalidate a patent as obvious must demonstrate by clear and convincing evidence that a skilled artisan would have had reason to combine the teaching of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success from doing so.'' *In re Cyclobenzaprine Hydrochoride*, 676 F.3d 1063 (Fed. Cir. 2012) (internal quotation marks omitted).

### A. ContentGuard's Motion for Judgment of Infringement as a Matter of Law

ContentGuard argues that Apple's non-infringement defenses in regard to the patents-in-suit fail as a matter of law. (Inf. JMOL at 3.) More specifically, ContentGuard argues that because "there is no dispute concerning the structure or operation of the accused device, . . . the issue of whether the claim language reads on the device is purely one of claim construction properly resolved by the Court." *See* (*id.* at 2.) Further, ContentGuard argues that because all of Apple's noninfringement arguments "were contrary to the Court's *Markman* and *Daubert* Orders, and thus legally incorrect," the Court should enter judgment of infringement as a matter of law. *See* (*id.* at 3.) For example, ContentGuard asserts that "Apple's argument that the Stefik Patents require that 'usage rights' and content always travel together cannot be reconciled with the Court's claim constructions." (*Id.* at 13.) Similarly, ContentGuard claims that Apple's noninfringement arguments with regard to the "trusted," "repository," and "meta-right" limitations violated the Court's *Markman* and *Daubert* Orders. *See* (*id.* at 4–12, 14–15.) Finally, ContentGuard argues that Apple's misleading claim construction arguments, discovery issues regarding "rsync" and MAC and PC computers, and testimony from Mr. Fasoli, an Apple employee, with regard to the "kind" and "isrental" fields were so unjust and prejudicial such that a new trial is warranted. *See* (*id.* at 17–21.)

Apple responds by first arguing that "ContentGuard's suggestion that there were no

'relevant factual disputes on infringement' . . . is incorrect, and inconsistent with ContentGuard's earlier opposition to Apple's request for leave to move for summary judgment of non-infringement." *See* (Dkt. No. 1117, "Inf. JMOL Resp.", at 4.) In particular, Apple argues that its witnesses "provided extensive direct testimony concerning the operation of its devices and servers that demonstrated that they did not meet the limitations of the asserted claims, contradicting the testimony of Drs. Goodrich and Martin," ContentGuard's technical experts. (*Id.* at 5.) For example, Apple argues that Mr. Fasoli offered testimony on relevant factual disputes on infringement when he testified that the "usage rights" identified by ContentGuard do not control playback of content and demonstrated that Mr. Smedley, ContentGuard's source code expert, had incorrectly analyzed Apple's source code. *See* (*id.*)

For example, Dr. Goodrich, one of ContentGuard's technical experts, testified as follows regarding infringement:

> QUESTION: What's -- what is it doing -- well, actually, before we go into what is it doing, what does it display? What does the device display to the customer, the owner of that device, when that owner chooses videos and chooses a particular type of video -- let's say rental videos?
>
> ANSWER: Right. So what is going to pop up for them is the choices that they have with respect to that content. And the system, the -- the -- the videos app in this case, consults that media library to then look at that "kind" field and that "isRental" field I talked about and then based on the combination of those two fields and those conditions that go along with it, like explicit and rating and those rental conditions. So based on those indications, plus those conditions, will then only show to the user things that they have a right to watch. It could be a purchased movie that would come up as movies. If it's a rental, it would come up in the rental's tab. If it's a TV show, it would come up in the TV shows. But regardless of what category it's in, the only things that are shown to the user are things that they have a right to watch.

(11/12/2015 P.M. Tr. (Goodrich), Dkt. No. 1068, at 133:19–134:15.) However, Mr. Fasoli testified as follows regarding the usage of the "kind" and "isRental" fields:

> Question: And what does the "isRental" field do with respect to that?

5

> Answer: The "isRental" field allows iTunes to place the movie that has that information set in the rental section of the library.
>
> Question: Does -- there's another field called "rental duration." Do you see that?
>
> Answer: Yes, I do.
>
> Question: Does the iPad use those fields from the "purchase response," "isRental" or "rental duration," does it use those in any way to control the playback of the rented movie?
>
> Answer: No, it doesn't.
>
> Question: Again, if an expert for ContentGuard said that the "isRental" field, the "kind" field, and the "rental duration" fields from this purchase response are used to control or permit playback of a rental movie on an iPad, would that be correct?
>
> Answer: No, that's incorrect.
>
> Question: And what do the "isRental," "rental duration," and "kind" fields do in the Apple system?
>
> Answer: They're used to organize and properly present the movie in the library for the user.

(11/17/2015 A.M. Tr. (Fasoli), Dkt. No. 1076, at 122:15–123:12.)

Apple further asserts that its infringement arguments were within the boundaries set forth by the Court and that ContentGuard failed to object to all but a small portion of the testimony regarding which it now complains. *See* (Inf. JMOL Resp. at 6–7.) Further, Apple argues that the Court previously overruled ContentGuard's objection regarding whether usage rights that travel separately from the content meet the claim construction of "attached or treated as attached." (*Id.*) Additionally, Apple argues that "the undisputed evidence shows that the accused 'usage rights' and content in Apple's system are transmitted separately from different servers, are not sent together, and do not travel together either before they arrive at the destination device or when they are transferred to another device." (*Id.* at 17); *see also* (11/17/2015 AM Tr., Dkt. No. 1076, at 97:20–99:10, 107:7-12; 11/18/2015 AM Tr., Dkt. No. 1078, at 77:7–18.) Apple also argues

that the prejudice associated with the discovery issues identified by ContentGuard, to the extent any such prejudice exited, has already been ameliorated either through additional testimony from ContentGuard's experts or through the striking of certain paragraphs of Dr. Kelly's report. (Inf. JMOL Resp. at 23–27.) Finally, Apple argues that ContentGuard's failure to meet its burden with regard to the infringement issues was unrelated to any alleged discovery problems. (*Id.* at 25–26.)

First, the Court agrees with Apple that its noninfringement arguments were within the scope of the Court's prior orders. ContentGuard has already raised and the Court has previously addressed the claim construction issue in regard to "usage rights." *See, e.g.*, (11/12/2015 A.M. Trial Tr., Dkt. No. 1067, at 70:5–74:14.) The Court declines to revisit that ruling. Further, the jury was properly instructed on the law, was free to judge the credibility of witnesses, and weigh all competing evidence. After consideration of the evidence presented at trial, including evidence that the fields ContentGuard identified as usage rights were not used to control or permit playback of content, the jury found that Apple had not infringed the patents-in-suit. *See, e.g.*, (11/17/2015 A.M. Tr. (Fasoli), Dkt. No. 1076, at 122:15–123:12.) The Court will not supplant the judgment of the jury. The jury, acting under a preponderance of the evidence standard as to this disputed factual issue, unanimously reached a reasoned and supportable decision. The Court does not find that no reasonable jury could have found that Apple had not infringed the patents-in-suit, and thus must deny the motion for judgment as a matter of law on this issue.

Furthermore, the issues raised by ContentGuard do not warrant a new trial. The Court previously ruled in favor of ContentGuard on the issue of Apple's source code production and granted the specific relief requested by striking certain paragraphs within Dr. Kelly's report. *See* (Dkt. No. 1022 at 4.) However, this did not relieve ContentGuard of its burden to show that the

MAC and PC computers infringed the patents-in-suit. Likewise, any possible prejudice caused by the admission of Mr. Fasoli's tests or the alleged "rsync" discovery misconduct did not rise to such a level as to warrant a new trial. Finally, ContentGuard failed to object during trial to the other testimony it now claims is contrary to the Court's *Markman* and *Daubert* orders. Such argument is untimely and has been waived. Considering all of ContentGuard's arguments, the Court does not find that a new trial is warranted in this case. Accordingly, ContentGuard's motion for judgment of infringement as a matter of law or, alternatively, for a new trial is **DENIED** in all respects.

### B. Invalidity of the Patents-in-Suit

Apple requests that the Court overturn the jury's verdict and enter judgment as a matter of law that the patents-in-suit are invalid as obvious. (Inv. JMOL at 5.) Apple argues that "Dr. White's testimony on the combined teachings of Dyad and ABYSS along with the documentary record provide[d] clear and convincing evidence that the asserted Stefik claims are obvious" and that "the attempted rebuttal evidence put forward by ContentGuard is legally insufficient." (*Id.* at 6.) In particular, Apple argues that ContentGuard "advanced only two challenges to Dr. White's testimony:" 1) Dyad and ABYSS did not render a repository or trusted system obvious because the references do not teach behavioral integrity; and 2) Dyad and ABYSS do not render obvious a repository that enforces usage rights. (*Id.* at 5.)

In addressing the first challenge, Apple argues that "Dr. Goodrich failed to address whether the combination of Dyad and ABYSS rendered behavioral integrity obvious" and that "Dr. Goodrich failed to address the record evidence supporting Dr. White's testimony on behavioral integrity, including a Xerox white paper recognizing Dyad and ABYSS are trusted systems, the ABYSS and Dyad articles, and documents explaining that use of digital certificates

to check software before installing it had been well known and obvious since at least 1980." (*Id.* at 5); *see also* (11/18/2015 P.M. Trial Tr. (White), Dkt. No. 1080, at 96:19–98:2, 107:14–108:2.) In regard to ContentGuard's second challenge, Apple argues that "Dr. Goodrich did not challenge that the Right-[t]o-Execute in ABYSS disclosed usage right" but rather "asserted only that Dyad did not disclose that the secure processor enforced the Right-to-Execute." (Inv. JMOL at 6.) Apple further argues that Dr. Goodrich again only challenged the isolated reference rather than the combination of references identified by Dr. White. (*Id.*) Finally, Apple also reurges its argument regarding the patent-eligibility of the patents-in-suit. (*Id.* at 14–15.)

ContentGuard responds by arguing that "Apple (1) failed to show that Dyad and ABYSS teach the 'repository' or 'trusted' limitations common to the asserted claims; (2) failed to show that Dyad and ABYSS teach 'usage rights' enforced by repositories common to the asserted claims; (3) failed to show that Dyad and ABYSS teach multiple claim elements idiosyncratic to each asserted claim; and (4) failed to rebut ContentGuard's objective indicia of non-obviousness." (Dkt. No. 1114, "Inv. JMOL Resp.," at 4.) For example, ContentGuard argues that "[t]he message authentication code identified by Apple and Dr. White does not meet the Court's construction for 'digital certificate,'" as would be required to teach the "repository" or "trusted" limitations. (*Id.*) For example, Dr. Goodrich provided the following testimony regarding whether Apple's prior art taught "behavioral integrity":

> Question: Now, sir, why is it that you think that the ABYSS system described in the article by Dr. White from 1987 doesn't have behavioral integrity?
>
> Answer: Because in the ABYSS system, in order to install software in that system, you were just going to be using a token smart card, a physical thing that you would be using with your device or something called a MAC, M-A-C, which isn't the Mac like an Apple computer but a message authentication code. And neither one of these things are digital certificates. They don't amount to a signed digital message attesting to the identity of the possessor.

9

> Question: And what about in this article by Drs. Tygar and Yee that are describing this thing called Dyad? What did you conclude with respect to whether Dyad exhibited behavioral integrity?
>
> Answer: I also concluded that Dyad does not have behavioral integrity because it explicitly talks about -- in Dyad about how a system administrator would be authorized to update the secure coprocessor software. And then even in the glossary, it talks about how that's just done with passwords. And a person of ordinary skill in the art would not consider just a password as a signed digital message, that it would be attesting to the identity of the possessor. So this would not be a digital certificate way to update the -- the secure coprocessor software.

(11/19/2015 A.M. Trial Tr. (Goodrich), Dkt. No. 1082, at 55:2-56:3.) Dr. Goodrich also testified that he had not "seen anything in the prior art that taught behavioral integrity" and that he believed Dr. Stefik invented "behavioral integrity." *See* (Inv. JMOL Resp. at 6–7); *see also* (11/19/2015 A.M. Trial Tr. (Goodrich), Dkt. No. 1082, at 74:8–23.).

ContentGuard also argues that "[a]t best, Dr. White provided merely conclusory testimony that the combination of Dyad and ABYSS discloses generalized usage rights." (Inv. JMOL Resp. at 8–10.) Additionally, ContentGuard argues that it "provided substantial evidence of the nonobviousness of the asserted Stefik patent claims, including praise by others, long-felt need, skepticism by experts, and licensing." (*Id.* at 12–14.) ContentGuard also points to testimony from Dr. White to support the nonobviousness of the patents-in-suit, including testimony that "none of the more than one hundred researchers who attended the presentation of his ABYSS paper suggested that it would be obvious to add digital certificates to the ABYSS system." (*Id.* at 13); *see also* (11/18/2015 P.M. Trial Tr. (White), Dkt. No. 1080, 129:1–17.) As for the Meta Rights patents, ContentGuard notes that Apple failed to present an expert witness on invalidity and thus "did not provide any evidence from which a reasonable juror could reach a conclusion that any claim of the asserted Meta-Right Patent is invalid." (Inv. JMOL Resp. at 14–17.) Finally, in regard to the issue of patent-eligibility, ContentGuard argues that 1) the motion is

untimely and 2) Apple has provided no reasons for the Court to reconsider its prior order. (*Id.* at 17.)

As an initial matter, the Court notes that a Rule 50 motion is an inappropriate vehicle for Apple's renewed motion under 35 U.S.C. § 101 for two reasons. First, the Court previously denied Apple's motion regarding the eligibility of the patents-in-suit and, in that denial, found that the patents-in-suit were not directed toward an abstract idea and did disclose an "inventive concept." *See* (Dkt. No. 982 at 9, 11.) Perhaps this renewed motion is actually a motion for reconsideration and, if so, Apple has not met its burden to show that such reconsideration is warranted. Second, Federal Rule of Civil Procedure 50 is clear that relief under this Rule may be appropriate **only** "**[i]f a party has been fully heard on an issue during a jury trial**" and if certain other conditions are met. Fed. R. Civ. P. 50(a) (emphasis added). In this case, neither party was heard during trial, let alone fully heard, on the issue of the patent-eligibility of the patents-in-suit. Patent eligibility is a matter of law and is not properly submitted to a fact-finder such as a jury. Apple's attempt to raise the same under Rule 50(a) is nonsensical. Accordingly, the Court finds that Apple's motion with regard to the patent-eligibility of the patents-in-suit should be **DENIED**.

Further, the Court finds that the remaining relief requested in Apple's motion should be **DENIED** as well. After consideration of the evidence presented, including evidence from Dr. Goodrich that neither Dyad nor ABYSS—nor any of the other prior art he had examined—disclosed "behavioral integrity," the jury found that Apple had not proved the patents-in-suit were invalid. *See* (11/19/2015 A.M. Tr. (Goodrich), Dkt. No. 1082, at 74:8–23.) The jury reached a reasoned and supportable decision, and the Court does not find that no reasonable jury could have found that the patents-in-suit are valid. Further, considering the totality of the matters

raised, the Court does not find that a new trial is warranted in this case. Thus, the Court concludes that Apple's motion for judgment as a matter of law or, alternatively, a new trial as to the validity of the patents-in-suit should be **DENIED**.

## IV. CONCLUSION

For the reasons set forth above, the Court finds that the jury's verdicts of noninfringement and no invalidity should stand. The jury's verdict is supported, in both instances, by adequate evidence presented at trial, and it should not be disturbed. Accordingly, ContentGuard's Renewed Motion for Judgment as a Matter of Law as to Non-Infringement and Motion for New Trial (Dkt. No. 1106), and Apple's Renewed Motion for Judgment as a Matter of Law on Patent Invalidity and Alternative Motion for New Trial (Dkt. No. 1104) are hereby **DENIED**.

**So ORDERED and SIGNED this 15th day of April, 2016.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE