# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| CONTENTGUARD HOLDINGS, INC., | § § § | |
| *Plaintiff*, | § § | |
| v. | § § § | Case No. 2:14-CV-61-JRG |
| GOOGLE, INC., | § § | |
| *Defendant*. | § § § | |
| CONTENTGUARD HOLDINGS, INC., | § § § | |
| *Plaintiff*, | § § | |
| v. | § § § | Case No. 2:13-CV-1112-JRG |
| APPLE, INC., | § § | |
| *Defendant*. | § § § | |

## ORDER AND OPINION WITH
## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Before the Court is the Motion for Judgment of Invalidity of Claim 1 of U.S. Patent No. 6,963,859 for Obviousness-Type Double Patenting filed by Defendants Google Inc., Motorola Mobility LLC, Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., HTC America, Inc. and HTC Corp., Huawei Technologies Co., Ltd., and Huawei Device USA, Inc. (collectively, "Defendants") (Dkt. No. 395 in 2:14-cv-61; Dkt. No. 1031 in 2:13-cv-1112). Defendant Apple Inc. joins in the Motion. (Dkt. No. 1095 in 2:13-cv-1112).

Plaintiff ContentGuard Holdings, Inc. ("ContentGuard") brought this suit against Defendants, alleging infringement of a number of patents, including U.S. Patent No. 6,963,859. (Dkt. No. 1 in 2:14-cv-61; Dkt. No. 1 in 2:13-cv-1112). In response, Defendants raised a number

of affirmative defenses, including invalidity of the '859 Patent based on obviousness-type double patenting ("OTDP"). (*See* Dkt. Nos. 491–494, 497, 498 in 2:13-cv-1112.) On April 21, 2015, Defendants requested leave to file a motion for summary judgment that the '859 Patent is invalid for OTDP. On May 28, 2015, the Court denied Defendants' request, finding that summary judgment was inappropriate because there were significant questions of material fact surrounding the dispositive issues. (Dkt. No. 217 in 2:14-cv-61; Dkt. No. 619 in 2:13-cv-1112.)

The issue of invalidity on the basis of OTDP was not presented to the jury during trial. Indeed, the Federal Circuit has held that the issue of OTDP is an issue for the court, not the jury, because it is a question of law that considers whether the same invention is being claimed twice. *Amgen Inc. v. F. Hoffman-La Roche Ltd.*, 580 F.3d 1340, 1352 (Fed. Cir. 2009) ("It is the Court's role, not the jury's, to determine the metes and bounds of the claimed inventions. Accordingly, because '[d]ouble-patenting is altogether a matter of what is claimed,' [OTDP] is an issue for the Court"). *But see St. Jude Medical, Inc. v. Access Closure, Inc.*, 729 F.3d 1369, 1380 (Fed. Cir. 2013) (affirming a jury's finding that the asserted claims were invalid under OTDP, implying that a jury may evaluate OTDP).

The day after jury selection and before the opening statements were given, Defendants filed this motion for judgment of invalidity of Claim 1 of the '859 Patent for OTDP pursuant to Federal Rule of Civil Procedure 52(c). (Dkt. No. 1122 at 2 in 2:13-cv-1112.) Defendant's position is that no hearing or bench trial is needed, and Plaintiffs have not disputed that, even when the Court took up this motion on February 26, 2016 at a hearing on post-trial motions. (Dkt. No. 1122 at 2 in 2:13-cv-1112; Dkt. No. 479 in 2:14-cv-61; Dkt. No. 1142 in 2:13-cv-1112.)

The parties have submitted briefs, supporting documents, expert reports, and proposed findings of fact and conclusions of law. (*See* Dkt. Nos. 395, 454, 460, 468 in 2:14-cv-61; Dkt. Nos. 1031, 1109, 1122, 1132 in 2:13-cv-1112.) The Court, having considered the same, now makes and enters the following findings of fact and conclusions of law relating to Defendants' defense of invalidity of the '859 Patent for OTDP.

## I. FINDINGS OF FACT

1. Plaintiff ContentGuard has asserted Claim 1 of U.S. Patent No. 6,963,859 (" '859 Patent") against Defendants in this lawsuit.

2. The '859 Patent, entitled "Content Rendering Repository," identifies Mark Stefik as an inventor. ('859 Patent, 1.) The '859 Patent has a filing date of January 16, 2003, claims priority to the November 23, 1994 filing of U.S. Patent Application 08/344,760, and issued on November 8, 2005. (*Id.*) Because of delays during prosecution by the patent office, the term of the '859 patent was extended by 78 days, resulting in an expiration date of February 9, 2015. (*Id.*)

3. Claim 1 of the '859 Patent claims as follows:

> **1.** A rendering system adapted for use in a distributed system for managing use of content, said rendering system being operative to rendering content in accordance with usage rights associated with the content, said rendering system comprising:
>
> a rendering device configured to render the content;
>
> and a distributed repository coupled to said rendering device and including a requester mode of operation and <u>server mode of operation</u>,
>
> wherein the <u>server mode of operation</u> is operative to enforce usage rights associated with the content and permit the rendering device to render the content in accordance with a manner of use specified by the usage rights, the requester mode of operation is operative to request access to content from another distributed repository, and
>
> said distributed repository is operative to receive a request to render the content and permit the content to be rendered only if a manner of use

specified in the request corresponds to a manner of use specified in the usage rights.

'859 Patent at 51:16–38 (emphasis added).

4. U.S. Patent No. 5,629,980 ("'980 Patent"), also names Mark Stefik as an inventor. ('980 Patent at 1.) It is entitled "System for Controlling the Distribution and Use of Digital Works." (*Id.*) The '980 Patent was filed on November 23, 1994, issued on May 13, 1997, and expired on November 23, 2014. (*Id.*)

5. Claim 2 of the '980 Patent depends on Claim 1; those claims read as follows:

> **1.** A system for secure distribution and control of digital works between repositories comprising:
>
> means for creating usage rights, each instance of a usage right representing a specific instance of how a digital work may be used or distributed;
>
> means for attaching a created set of usage rights to a digital work;
>
> a communication medium for coupling repositories to enable exchange of repository transaction messages;
>
> a plurality of general repositories for storing and securely exchanging digital works with attached usage rights, each of said general repositories comprising:
>
> a storage means for storing digital works and their attached usage rights;
>
> an identification certificate for indicating that the associated general repository is secure;
>
> an external interface for removably coupling to said communications medium;
>
> a session initiation transaction processing means for establishing a secure and trusted session with another repository, said session initiation transaction processing means using said identification certificate;
>
> a usage transaction processing means having a requester mode of operation for generating usage repository transaction messages to request access to digital works stored in another general repository, said usage repository transaction message specifying a usage right, said usage transaction processing means further having a server mode of operation for determining if a request for access to a digital work stored in said storage means may be granted, said request being granted only if the usage right specified in said request is attached to said digital work; and

an input means coupled to said usage transaction processing means for enabling user created signals to cause generation of a usage repository transaction message to request access to digital works.

**2.** The system as recited in claim 1 further comprising a rendering system, said rendering system comprising:

a <u>rendering repository</u> for securely accessing digital works from a general repository, said rendering repository comprising;

a storage means for storing digital works and their attached usage rights;

an identification certificate, said identification certificate for indicating that the rendering repository is secure;

an external interface for removably coupling to said communications medium;

a session initiation transaction processing means for establishing a secure and trusted session with a general repository, said session initiation transaction processing means using said identification certificate;

a usage transaction processing means for generating usage repository transaction messages to request access to digital works stored in a general repository, said usage repository transaction message specifying a usage right;

an input means coupled to said usage transaction processing means for enabling user created signals to cause generation of usage repository transaction messages to request access to digital works;

a rendering device for rendering digital works.

'980 Patent at 52:44–53:3 (emphasis added).

6.  Both the '859 Patent and the '980 Patent are assigned to ContentGuard, share a priority date of November 23, 1994, and include identical specifications, including the same nineteen figures and identical glossaries. (*Compare* '859 Patent *with* '980 Patent.) The only differences between the patents are the "Summary of the Invention" sections and the patent claims. (*Id.*) This is not a case where the applicant chose to file separate applications for overlapping subject matter and to claim different priority dates for the applications.

7.  This Court has already construed the claim terms of the '859 Patent. (Dkt. No. 459 in 2:13-cv1112.)

8. The Parties agree that no further claim construction is necessary to decide this motion because this Court has already construed the claim terms of the '859 Patent and the '980 patent claim terms should be construed in the same way. (Mot. at 4–5; Resp. at 9).

9. Specifically, the Court construed the term "repository" in the '859 Patent to mean "a trusted system in that it maintains physical, communications, and behavioral integrity in the support of usage rights." (Dkt. No. 459 at 15 in 2:13-cv1112.)

10. The Court construed the terms "requester mode of operation" and "server mode of operation" in the '859 Patent to have their plain meaning. (*Id.* at 42.)

11. The Court construed the term "distributed repository" in the '859 Patent to mean "a repository adapted for use in a distributed system." (*Id.* at 60–61.)

12. In support of this Motion, Defendants have submitted excerpts of the expert report of Mr. Jean Renard Ward (Dkt. No. 1031-4 in 2:13-cv-1112). While the excerpts are not sworn to by Mr. Ward, Defendants submit that, if the Court were to hold a hearing on this Motion, it is undisputed that Mr. Ward could testify consistently with the opinions on OTDP that are expressed in his expert report. (Dkt. No. 1122 at 2 n.2)

13. Mr. Ward submits in his expert report that:

> **829.** The '859 patent further recites a "server mode of operation [] operative to enforce usage rights associated with the content and permit the rendering device to render the content in accordance with a manner of use specified by the usage rights." <u>Claim 2 of the Stefik '980 patent at least implicitly discloses a server mode of operation.</u> For example, claim 2 of the Stefik '980 patent recites a repository including "a rendering device for rendering digital works." Stefik '980 53:3. Claim 2 of the Stefik '980 patent further recites that the repository includes "a storage means for storing digital works and their attached usage rights," where usage rights "represent[] a specific instance of how a digital work may be used or distributed." Stefik '980 52:8-10, 49-50. <u>A person skilled in the art would therefore understand that claim 2 of the Stefik '980 patent discloses a system in which the attached usage rights are enforced before the rendering device is permitted to render the content.</u>

> . . .
>
> **831.** In addition, claim 2 of the Stefik '980 patent recites a "rendering repository." A person skilled in the art would understand that a rendering repository is a repository coupled to a rendering device that permits the rendering device to render content only in accordance with usage rights. Indeed, I have been informed that during his deposition, prosecuting attorney Marc Kaufman testified that "a rendering repository is a repository that controls a rendering device." (Kaufman deposition March 2 2015, 94:3-4.) Mr. Kaufman further testified that "[a] rendering repository is capable of enforcing usage rights, yes." (Kaufman deposition March 2 2015, 94:21-22) I have also been informed that Marc Kaufman was designated as ContentGuard's knowledgeable representative on "[t]he drafting of the applications, including the specifications, for the Patents-In- Suit." Mr. Kaufman's testimony supports my conclusion that a person skilled in the art would understand that Claim 2 of the Stefik '980 Patent, by its use of the term "rendering repository," discloses a server mode of operation for enforcing usage rights.

(Dkt. No. 1031-4 at ¶¶ 829, 831.)

14. In opposition to this Motion and in response to Mr. Ward's report, Plaintiff has submitted excerpts of the expert report of Dr. Michael T. Goodrich (Dkt. No. 1109-5 in 2:13-cv-1112), including the signature page of the report, where Dr. Goodrich declares "under penalty of perjury pursuant to 28 U.S.C. § 1746" that his expert report is true and correct.

15. Dr. Goodrich submits in his expert report that:

> **214.** I further disagree with Mr. Ward's assertion in paragraph 831 that claim 2 of the '980 patent recites a rendering repository with a server mode of operation. Claim 2 of the '980 patent recites "a rendering repository for securely accessing works from a general repository" that comprises "a usage transaction processing means for generating usage repository transaction messages to request access to digital works stored in a general repository." The '980 patent distinguishes between a general repository and a rendering repository. ('980 patent at 53:15–16 ("means for generating identification certificates for general repositories and rendering repositories")). The '980 patent claims are directed to a system in which the rendering repository does not include a server mode of operation, and it would not have been obvious to a person of ordinary skill in the art to disregard the distinctions made in the '980 patent claims between rendering repositories and general repositories and come up with the asserted claims of the '859 patent. . . .

(Dkt. No. 1109-5 at ¶ 214.)

## II. CONCLUSIONS OF LAW

### A. Applicable Law

16. The doctrine of OTDP was created by the courts to "prevent[] a patentee from claiming an obvious variant of what it has previously *claimed,* not what it has previously *disclosed.*" *Eli Lilly & Co. v. Teva Parenteral Meds., Inc.*, 689 F.3d 1368, 1379 (Fed. Cir. 2012) (emphasis in original). Thus, "the non-claim portion of the earlier patent ordinarily does not qualify as prior art against the patentee" in an OTDP inquiry. *Id.*

17. "The ban on double patenting ensures that the public gets the benefit of the invention after the original period of monopoly expires." *Abbvie Inc. v. Mathilda & Terrence Kennedy Inst. of Rheumatology Trust*, 764 F.3d 1366, 1373 (Fed. Cir. 2014). If an inventor could obtain several sequential patents on the same invention, he could maintain the right to exclude the public from use of the patented invention beyond the term awarded to him under the patent laws. *Gilead Scis., Inc. v. Natco Pharma Ltd.*, 753 F.3d 1208, 1212 (Fed. Cir. 2014). When a patent expires, the public is entitled to use the invention disclosed therein, as well as "obvious or patentably indistinct modifications of that invention." *Id.* at 1214.

18. OTDP is a question of law. *Sun Pharm. Indus., Ltd. v. Eli Lilly & Co.*, 611 F.3d 1381, 1384 (Fed. Cir. 2010). The doctrine "is a matter of what is claimed, and therefore is treated like claim construction upon appellate review." *Amgen Inc. v. F. Hoffman-La Roche Ltd.*, 580 F.3d 1340, 1352 (Fed. Cir. 2009).

19. To determine whether there is OTDP, the Court performs two steps:

> First, as a matter of law, the court construes the claim in the earlier patent and the claim in the later patent and determines the differences.
>
> Second, the court determines whether the differences in subject matter between the two claims is such that the claims are patentably distinct. A later claim that is not patentably distinct from an earlier claim in a

> commonly owned patent is invalid for obvious-type double patenting. A later patent claim is not patentably distinct from an earlier patent claim if the later claim is obvious over, or anticipated by, the earlier claim.

*Eli Lilly & Co. v. Barr Labs., Inc.*, 251 F.3d 955, 968 (Fed. Cir. 2001) (citations omitted). A later-expiring claim that is obvious over or anticipated by an earlier-expiring claim is invalid for OTDP. *Abbvie*, 764 F.3d at 1374.

20.     The Court, in performing the OTDP analysis, should limit itself to "a comparison between a patentee's earlier and later claims, with the earlier patent's written description considered only to the extent necessary to construe its claims." *Eli Lilly & Co. v. Teva Parenteral Meds., Inc.*, 689 F.3d at 1378–79. The specification of the early-expiring patent, however, may be used to define claim terms. *In re Hitachi Metals, Ltd.*, 603 Fed. App'x 976, 978 (Fed. Cir. 2015) (nonprecedential) (citing *Application of Vogel*, 422 F.2d 438, 441 (CCPA 1970)).

21.     The Federal Circuit has held that there is, in limited situations, an exception to the general rule that OTDP analysis is limited to the claims. Specifically, in "the situation in which an earlier patent claims a compound, disclosing the utility of that compound in the specification, and a later patent claims a method of using that compound for a particular use described in the specification of the earlier patent," an exception allows limited consideration of teachings in an earlier-issued patent's specification to "determine whether a claim merely defines an obvious variation of what is earlier disclosed and claimed," or to interpret the scope of a claim, *Sun Pharm.*, 611 F.3d at 1387; *Eli Lilly & Co. v. Teva Parenteral Meds., Inc.*, 689 F.3d at 1379–80 (finding that the circumstances in *Sun Pharm.* that gave rise to the exception were unlike the circumstances in *Eli Lilly v. Teva* and therefore declining to apply the exception). Here, the exception to the general rule as articulated in *Sun Pharm.* does not apply because this is not a

situation in which an earlier "patent claims a compound, disclosing the utility of that compound in the specification, and a later patent claims a method of using that compound for a particular use described in the specification of the earlier patent."

22.     Double patenting is an affirmative defense. Therefore, Defendants are required to prove double patenting by clear and convincing evidence. *Symbol Techs., Inc. v. Opticon, Inc.*, 935 F.2d 1569, 1590 (Fed. Cir. 1991).

**B.     OTDP Step 1: The Court Concludes that Claim Construction Is Not Necessary and Determines the Differences Between Claim 1 of the '859 Patent and Claim 2 of the '980 Patent**

23.     This Court has already construed the claim terms of the '859 Patent, thus no further claim construction is necessary. Findings of Fact ¶ 7. The Parties agree that the '980 patent claim terms should be construed in the same way. Findings of Fact ¶ 8. The Court therefore does not consult the earlier-expiring patent's written description to define claim terms. *See Eli Lilly & Co. v. Teva Parenteral Meds., Inc.*, 689 F.3d at 1379.

24.     The Court finds that Defendants' citations to portions of the '980 Patent specification, including the "Summary of the Invention," are inapposite because no claim construction is necessary here and the Court cannot consult the earlier-expiring patent's written description for any purpose other than claim construction. *See Eli Lilly & Co. v. Teva Parenteral Meds., Inc.*, 689 F.3d at 1379. Instead, the Court focuses its analysis on the explicit claim language at issue here.

25.     Claim 1 of the '859 Patent recites "[a] a rendering device configured to render the content; and [b] <u>a distributed repository</u> coupled to said rendering device and <u>including a</u> requester mode of operation and <u>server mode of operation</u> . . . ." Findings of Fact ¶ 3 (emphasis added). Accordingly, the Court finds that Claim 1 of the '859 Patent recites an arrangement

where a *single* distributed repository performs both the "server mode of operation" as well as the "requester mode of operation."

26. In contrast, in the '980 Patent, Claim 2 (the allegedly invalidating claim) redefines the "usage transaction processing means" from independent Claim 1 as something used for "generating usage repository transaction messages to request access to digital works stored in a general repository." Findings of Fact ¶ 5. Accordingly, the Court finds that Claim 2 of the '980 Patent recites an arrangement where a single rendering repository has *only* a requester mode and does not have a server mode of operation.

27. Therefore, the Court finds that key differences exist between Claim 1 of the '859 Patent and the allegedly invalidating Claim 2 of the '980 patent, and that there is not complete overlap between Claim 1 of the '859 Patent and Claim 2 of the '980 Patent.

28. Nonetheless, the fact that the application claims do not overlap with the claims of the prior patent may not defeat an obviousness-type double patenting challenge if the application claims are obvious from the patent claims. *See In re Longi*, 759 F.2d 887, 893 (Fed. Cir. 1985). Instead, the Court must proceed to analyze whether the differences in subject matter between the two claims render the claims patentably distinct. *See id.*; *Eli Lilly & Co. v. Barr Labs., Inc.*, 251 F.3d 955, 968 (Fed. Cir. 2001).

### C. OTDP Step 2: The Court Concludes that the Differences in Subject Matter Between the Two Claims Render the Claims Patentably Distinct

29. In the second step of OTDP analysis,

> [T]he court determines whether the differences in subject matter between the two claims is such that the claims are patentably distinct. A later claim that is not patentably distinct from an earlier claim in a commonly owned patent is invalid for obvious-type double patenting. A later patent claim is not patentably distinct from an earlier patent claim if the later claim is obvious over, or anticipated by, the earlier claim.

*Eli Lilly & Co. v. Barr Labs., Inc.*, 251 F.3d 955 at 968 (citations omitted).

30. As analyzed above, the Court finds that Claim 1 of the '859 Patent is not *anticipated* by Claim 2 of the '980 Patent. Conclusions of Law ¶¶ 23–28. Therefore, the Court proceeds to analyze whether Claim 1 of the '859 Patent is *obvious* in view of Claim 2 of the '980 Patent.

31. Defendants contend that, according to the specification of the '980 Patent, the claim term "repository," which encompasses *both* general and rendering repositories, necessarily includes within its scope two modes of operation—a server mode and a requester mode—and that an ordinarily skilled artisan would have understood that it was both desirable and obvious to include a "server mode of operation" in the "rendering repository" of Claim 2 of the '980 Patent. (Dkt. No. 1122 at 5.) However, the Court has already construed the term "repository" in the '859 Patent—which applies equally to the '980 Patent—to mean "a trusted system in that it maintains physical, communications, and behavioral integrity in the support of usage rights." *See* (Dkt. No. 459 at 15 in 2:13-cv1112); Findings of Fact ¶¶ 7–9. The Court's construction is what a person of ordinary skill in the art would have understood the term to mean. At the time the Parties argued the construction of the term, Defendants could have—but did not—take the position that the claim term "repository" includes within its scope two modes of operation. Therefore, the Court finds that Defendants have not, on this basis, shown that an ordinarily skilled artisan would have understood that it was both desirable and obvious to include a "server mode of operation" in the "rendering repository" of Claim 2 of the '980 Patent.

32. The Court next looks beyond the '980 Patent and the '859 Patent and considers the expert reports and declarations submitted by the Parties. Findings of Fact ¶¶ 12–15. Even considering the expert reports as evidence, the Court finds that both expert reports are conclusory

and unsupported by any extrinsic evidence establishing the understanding of a person of ordinary skill in the art. These conclusory statements, even if otherwise admissible, do not rise to the level of sufficiency that is necessary to meet Defendant's burden of "clear and convincing evidence."

33. Based on the evidence and argument presented, the Court finds that Defendant has not carried its burden to establish a showing of invalidity based on obviousness-type double patenting by clear and convincing evidence.

### III. CONCLUSION

For the reasons set forth above, the Court finds that Defendant has not shown by clear and convincing evidence that Claim 1 of the '859 Patent is invalid for obviousness-type double patenting. Accordingly, judgment shall be entered in favor of ContentGuard and against Defendants on Defendants' motion for judgment of invalidity of Claim 1 of U.S. Patent No. 6,963,859 for obviousness-type double patenting; said motion (Dkt. No. 395 in 2:14-cv-61; Dkt. No. 1031 in 2:13-cv-1112) being in all things **DENIED**.

**So ORDERED and SIGNED this 8th day of July, 2016.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE